**IN THE UNITED STATES FEDERAL COURT
OF NORTHERN DISTRICT OF ILLINOIS**

**ELLEN KOGAN**                                    Case No.  **1:14-cv-09551**
**1173 Bristol Lane**
**Buffalo Grove, IL 60089**
                            **Plaintiff,**
            vs.

**SAS GROUP**
**d/b/a SCANDINAVIAN AIRLINES**
**SAS head office**
**Frösundaviks Allé 1,**
**195 87 Stockholm, Sweden**
 **a foreign corporation**
                            **Defendant.**           **JURY DEMAND ON ALL COUNTS**
_____

**COMPLAINT AT LAW**
_____

     **NOW COMES** the above-named Plaintiff, ELLEN KOGAN**,** by her counsel of

record, Attorney Vladimir M. Gorokhovsky of Gorokhovsky Law Offices LLC, and as

their Complaint at Law pursuant to Articles 17, 19 and 22 of the Montreal Convention for

the Unification of Certain Rules for International Carriage by Air, May 28, 1999 for

compensatory, actual, general, statutory, incidental and consequential damages for

violation of the Articles 17 and 19 of said Montreal Convention for the Unification of

Certain Rules for International Carriage by Air, May 28, 1999 (entered into force on Nov.

4, 2003) (Montreal Convention), *reprinted in* S. Treaty Doc. No. 106-45; against the

above-named Defendant, S.A.S GROUP d/b/a/ SCANDINAVIAN AIRLINES**,**

(hereinafter referred to as "**SAS**") alleges as follows:

I. JURISDICTION:

    1.     That this civil action arises under the Articles 17 and 19 of the Montreal

Convention for the Unification of Certain Rules for International Carriage by Air, May

28, 1999 (entered into force on Nov. 4, 2003) (Montreal Convention), *reprinted in* S. Treaty Doc. No. 106-45, which is the supreme law of this land.

2.     That this action also arises under common law theory of breach of contract for breach of duty imposed under Article 9 of European Union Directive 261/2004, which was incorporated into contract for international airfare transportation of the above-named plaintiff.

3.     That the above-named plaintiffs seek, among other relief, to recover actual, general and special damages in aggregate sum of $7,133.39; as well as statutory damages pursuant to the European Union Directive 261/2004 [1] in the sum of €600 per passenger;  as well as incidental and consequential damages (in the sum not yet certain but to be proven at trial) from the above-named defendant for delay in international air transportation as well as under other legal theories incorporated herein under the doctrine of pendent jurisdiction.

4.     That the above-named Defendant, SAS GROUP d/b/a SCANDINAVIAN AIRLINES is Scandinavian airline with headquarters located at: SAS head office of Frösundaviks Allé 1, 195 87 Stockholm, Sweden, doing business within the jurisdiction of the United States District Court for Northern District of Illinois.

5.     That, upon information and believe, the above-named Defendant, S.A.S GROUP d/b/a SCANDINAVIAN AIRLINES is Scandinavian airline and an air carrier with operational license granted  by European Community Member State in accordance with the provisions of Counsel Regulation (EEC) No. 2407/92 of July 23, 1992 and EU

---

[1]     The official tiles of EC 261 is: Regulation (EC) No. 261/2004 of the European Parliament and of the Council of 11 February 2004 establishing common rules on compensation and assistance to passengers in the event of denied boarding and of cancellation or long delay of flights, and repealing Regulation (EEC) No. 295/91."

Regulation No. 2027/97 as amended by EU Regulation No. 889/ 2002 on licensing of air carriers domiciled or operating within the European Union.

6.      That, upon information and believe, the matter in controversy exceeds $10,000.00 exclusive of interest and costs, in that the above-named plaintiff is alleging actual damages in the combined amount of $7,133.39; as well as statutory damages pursuant to EU 261/ 2004  in the sum of €600 or $751.31 per passenger; as well as compensatory, general, special, incidental and  consequential damages in the sum not yet certain but to be ascertained and proven at trial.

7.      That, additionally, pursuant to the Article 22(5) of the Montreal Convention, the above-named Plaintiffs are also asserting claim for compensatory, additional, general, special, incidental and consequential damages in the excess of the above-referenced cap on damages imposed by the Article 22(1) of the Montreal Convention in the sum not yet certain but to be ascertained and proven at trial recoverable from defendant on the theory of "reckless indifference" of defendant's employees while acting in the scope of their employment and for benefit of their employer.

8.      That the court's jurisdiction is invoked under 28 U.S.C. § 1331, 28 U.S.C. § 1332, 28 U.S.C. § 1337 and the doctrine of pendent jurisdiction.

9.      That additionally, the United States District Court for the Northern District of Illinois shall exercise jurisdiction over the cause of action set forth in this complaint under and pursuant to Art 33(1) of Montreal Convention for the Unification of Certain

Rules for International Carriage by Air, May 28, 1999 (entered into force on Nov. 4, 2003) (Montreal Convention), *reprinted in* S. Treaty Doc. No. 106-45.[2]

10.    That the Article 19 of the Montreal Convention sets forth the private cause of action for aggrieved airfare passenger against an airline for pecuniary damages caused by delay or cancellation of international airfare transportation effectuated between signatories of the Montreal Convention.[3]

11.    That both the United States of America and the Republic of Poland are the signatories to the Montreal Convention.[4]

12.     That the Art 22(2) of the Montreal Convention sets forth the limit of 4694 SDR or approximately $7133.39 per, passenger which can be recovered from defendant airline on each airfare ticket [5], unless the Plaintiff will show willful disregards by an airline to his or her travel-related needs.

13.     That both the above-named defendant airline is soliciting airline passengers by selling airfare tickets and are conducting business within the State of Illinois. Cf. Sachs v. Republic of Austria, No 11-15458 (9tth Cir., December 6, 2013)(a foreign-state owned common  carrier engages in commercial activity in the United States,

---

[2] The Montreal Convention is available in the UNITED STATES CODE SERVICE (U.S.C.S.) volume titled International Agreements at 635 (2007). It is also available at S. Treaty Doc. No. 106-45, 1999 WL 33292734 at 29-45.

[3] See, Article 19 of the Montreal Convention, The carrier is liable for damages occasioned by delay in the carriage by air of passengers, baggage or cargo. Nevertheless, the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures." Id.

[4] http://legacy.icao.int/icao/en/leb/mtl99.pdf

[5] See, Article 19 of the Montreal Convention, The carrier is liable for damages occasioned by delay in the carriage by air of passengers, baggage or cargo. Nevertheless, the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures." Id.

and thus is not immune from suit under the Foreign Sovereign Immunities Act, when it sells tickets in the United States through a travel agent, regardless of whether the travel agent is a direct agent or subagent of the common carrier).[6]

## II. PARTIES:

14.     That the above-named Plaintiff, ELLEN KOGAN, is repeating, re-alleging, and adopting §§ 1-13 of preceding section titled "Jurisdiction" as set forth fully herein and incorporates them by reference:

15.      That, at all times material hereto, and is now the above-named Plaintiff, ELLEN KOGAN was an adult citizen of the USA, residing at: <u>1173 Bristol Lane Buffalo Grove, IL 60089</u>.

16.      That, at all times material hereto, and is now the above-named Plaintiff was and still is a senior citizen with a disability and fragile health.

17.      That the above-named defendant SAS GROUP d/b/a SCANDINAVIAN AIRLINES S.A., is believed to be "community carrier," and an air carrier with valid operational license granted by European Community Member State in accordance with provisions of Counsel Regulation (EEC) No. 2407/92 of July 23, 1992 on licensing of air carriers domiciled within the European Union.

18.      That the above-named defendant SAS GROUP d/b/a SCANDINAVIAN AIRLINES S.A. is believed to be a foreign air transportation carrier, domiciled at a country member of the European Union, operating under auspices of air carrier license issued by the European Union, doing business in the United States and within the State of Illinois.

19.      That the below-identified international airfare occurred between several

---

[6] http://cdn.ca9.uscourts.gov/datastore/opinions/2013/12/09/11-15458%20web%20corrected.pdf

countries – signatories of the Montreal Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 (entered into force on Nov. 4, 2003) *reprinted in* S. Treaty Doc. No. 106-45**.**

20.     That, at all times material hereto, the United States of America was and still is the signatory to the Montreal Convention since 05-28-1999. [7]

21.     That at all times material hereto the Kingdom of Denmark and Kingdom of Sweden were and still are the signatory to the Montreal Convention since 05-28-1999.

### III.   STATEMENT OF CLAIM:

22.     That the above-named Plaintiff is hereby repeating, re-alleging, and adopting §§ 1-13 of "Jurisdiction" and §§ 14-21 of "Parties" sections of this entire Complaint at Law, as set forth fully herein and incorporates them by reference:

23.     That, at all times material hereto, the above-named Plaintiff accepted an offer of international air fare transportation extended to her by the above-named Defendant, S.A.S GROUP d/b/a SCANDINAVIAN AIRLINES S.A**.,** thereby entering into legally binding contract for round-trip international airfare carriage to be performed by the above-named Defendant from the USA to the European Union and back to the USA.

24.     That said international airfare consisted of the following travel segments:

(a)     Travel on July 16, 2014 from Chicago, Illinois, USA to Moscow, Russian Federation via connecting stop at Stockholm, Sweden.

(b)      Return flight on August 24, 2014 from Moscow, Russia back to Chicago, Illinois, USA via connecting stop at Copenhagen, Denmark.

---

[7] http://legacy.icao.int/icao/en/leb/mtl99.pdf

25.     That the true and correct copy of Plaintiff's international travel intermarries is appended herewith marked as Exhibit A, incorporated by reference and made a part of this entire Complaint at Law.

26.     That, at all times material hereto, the above-named Plaintiff received confirmed airfare tickets, reflecting the above-identified travel arrangements.

27.     That said agreement for international airfare transportation was entered into at the above-stated place of plaintiff's domicile located within the Lake County, Illinois, USA.

28.     That in accordance with the above-referenced international airfare arrangement on August 24, 2014 the above-named Plaintiff was confirmed to depart from Copenhagen to Chicago on the board of SAS flight SK 943.

29.     That true and correct copy of Plaintiff's boarding pass is appended herewith marked as Exhibit B, incorporated by reference and made a part of this entire Complaint at Law.

30.     That, upon information and believe, due to unknown reasons, timely departure of defendant's flight SK 943 on August 24, 2014 from Copenhagen, Denmark was initially delayed for excess of five (5) hours.

31.     That due to such delay, cancellation and frustration of travel plans, the above-named Plaintiff arrived o Chicago Illinois at approximately 11:30PM instead of 5:30PM.

32.     That while subjecting the above-named Plaintiff to extensive delay of international airfare in excess of almost 5 hours, the above-named defendant did not

provided to her with meaningful and or sufficient care or assistance, as mandated by Art. 9 of the EU 261/2004.

33.     That, while being subjected to the above-identified delays the above-named Plaintiff was subjected to travel related stress of additional travel time in excess of 5 hours, as well as to physical inconvenience and bodily exhaustion resulting, in subsequent incapacitation for period of several days.

34.     That, likewise, due to the above-identified cancelation of international airfare by the above-named Defendant, the above-named Plaintiff was subjected to extensive walking through an airport exacerbated by hand-carrying of luggage, and subsequently developed a fracture in her foot.

35.     That such ilness cause the above-named Plaintiff to miss several days of her work.

36.     That such ilness cause the above-named Plaintiff to miss important business meetings causing further loss of wages.

37.     That, at all times material hereto, the above-named Plaintiff was not provided by SAS with any meaningful and or sufficient travel-related assistance, which was at all times material hereto mandated by Art 9 of the EU 261/2004.

38.     That, subsequently upon late arrival to Chicago the above-named Plaintiffs timely lodged with the local office of the above-named defendant their grievance and demand for compensation mandated by Art 19 of the Montreal Convention and by  Art. 7 of the EU Regulation 261/2004.

39.     That, upon information and believe, said pre-suit demand was ignored by the above-named defendant.

**COUNT ONE:**
**Cause of Action Pursuant to Articles 19 of the Montreal Convention**

As a separate cause of action against the above-named Defendant, S.A.S GROUP d/b/a SCANDINAVIAN AIRLINES S.A.**,** the above-named Plaintiff, ELLEN KOGAN, is hereby alleging as follows:

40.     That the above-named Plaintiff is repeating, re-alleging, and adopting §§ 1-13 of "Jurisdiction" and §§ 14-21 of "Parties"; §§ 22-39 of "Statement of Claim" sections of this entire Complaint as set forth fully herein and incorporates them by reference:

41.      That on or about August 24, 2014 the flight No. 943 operated by SAS from Copenhagen to Chicago was delayed on departure for approximately 5.5 hours.

42.     That, upon information and believe, delay of the above-referenced defendant's flight was not caused by extraordinary circumstances, which could have been avoided in due exercise of due diligence or another pertinent legal standard of care by the above-named defendants.

43.     That, upon information and believe, the above-named defendant did not pursue all meaningful actions required to avoid or mitigate impact of extraordinary circumstances. Cf., Ronald Huzar v. Jer2.com Limited, [2014] EWCA Civ. 791**,** Case No. Case No: B2/2013/3277/CCRTF (Royal Courts of Justice, London, England, 11 June 2014)(holding that technical problems, which may be unforeseeable, but are

ultimately caused by an event inherent in the running of an aircraft, and cannot therefore be considered to be an extraordinary circumstance). [8]

44.    That the term "extraordinary circumstances" as evolved under the Montreal Convention jurisprudence is very limited and applies only in certain circumstances where the airline can prove the cancellation or delay was caused by political instability, meteorological conditions incompatible with the operation of the flight concerned, security risks, unexpected flight safety shortcomings and strikes that affect the operation of an operating aircraft." Wallentin-Hermann v. Alitalia, European Court of Justice, Case No C-549/07, Judgment of December 22, 2008, ¶22 (emphasis added).

45.    That moreover, even the listed events do not "themselves constitute extraordinary circumstances, but only . . . *may* produce such circumstances." Id.

46.    That "extraordinary circumstances" do *not* include technical or mechanical problems except in the rare instances where the airline can prove those problems are due to hidden, inherent manufacturing defects or aircraft damage caused by sabotage.  *Id.* at ¶26 (mechanical problems may constitute extraordinary circumstances only when "it was revealed by the manufacturer of the aircraft compromising the fleet of the air carrier concerned, or by competent authority, that those aircraft, although already in service, are affected by a hidden manufacturing defect which impinges on the flight safety" or where there was "damage to aircraft caused by acts of sabotage); *see also* Sturgeon v. Condor Flugdienst GmbH, European Court of Justice, Case No. C-402/7,

---

[8] http://www.bailii.org/cgi-bin/markup.cgi?doc=/ew/cases/EWCA/Civ/2014/791.html&query=huzar+and+jet2&method=boolean

Judgment of November 19, 2009 (reiterating that technical problems are not extraordinary circumstances in context of "technical faults on the plane and illness among the crew").

47. That in accordance with Article 19 of the Montreal Convention and or Article 21 of the Warsaw Convention, the above-identified defendant is liable for damages caused by delay and or cancellation of international air carriage of passengers. [9]

48. That, likewise the above-named defendant is responsible for damages caused by delay or cancellation of international airfare. as asserted in relevant portion of Art. 15.1. of its General Condition of Carriage, which states in pertinent part as follows:

> 15.1.1 Unless otherwise stated herein, Carriage hereunder is subject to the provisions relating to the liability established by the Convention, even where such Carriage is not international Carriage to which the Convention mandatory applies. [10]

49. That, as a direct and proximate cause of delayed departure of flight No. 943 operated by SAS from Copenhagen to Chicago was delayed on departure for approximately 5.5 hours, the above-named plaintiff was subjected to actual, general, special, incidental and consequential pecuniary damages, including but not limited to travel cancellation expenses, loss of benefit of his travel bargain, inconvenience, physical discomfort, pain, exhaustion, loss of time, frustration of purpose to travel, anxiety,

---

[9] El Al Isr. Airlines, Ltd. v. Tsui Yuan Tseng, 525 U.S. 155, 176 (1999)(holding that the United States is a party to the Montreal Convention, which governs the international air carriage of passengers, baggage, and cargo. The Convention provides an airline passenger's exclusive remedy; a passenger may not maintain "an action for personal injury damages under local law when her claim does not satisfy the conditions for liability under the Convention."

[10] http://www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf

frustration, uncertainty, loss of use of money and other cognizable legal damages, losses and injuries.[11]

50.     That under the Article 19 of the Montreal Convention, and par 15.4 of its General Condition of Carriage, the above-identified common carrier S.A.S. is liable for damages caused by delay and or cancellation of international airfare and international carriage of airline passengers.

51.      That this liability for damages caused by delay and or cancellation of international airfare pursuant to Articles 19 and 22(1) of the Montreal Convention is limited by the of 4560 SDR.

52.     That, while being estranged at Copenhagen International Airport, the above-named Plaintiff sought to obtain travel-related assistance from the above-named defendant, but employees of said defendant was recklessly indifferent to plaintiff's travel related and health-related needs.

53.     That, at all times material hereto, defendant's employees stationed at Copenhagen International Airport did not offer any meaningful assistance to the above-named plaintiff while they were estranged at Copenhagen International Airport for approximately six (6) hours.

---

[11] Cf., Ikekpeazu v. Air France, No. 3:04cv00711 (RNC), 2004 U.S. Dist. LEXIS 24580 at *4 (D. Conn. Dec. 6, 2004) (recognizing financial injury as a cognizable claim, but not emotional injury)(also holding that if Plaintiff can prove that his lost days of work were occasioned by the delay and resulted in financial injury, Plaintiff can recover for this economic loss under the Montreal Convention).

54.     That, while being subjected to the above-identified delays, the above-named Plaintiff were subjected to psychical inconvenience, exhaustion and travel stress of additional travel time in excess of almost 5 hours.

55.     That as a direct and proximate cause of delay and or cancellation of international airfare for more than 5 hours on August 24, 2014, the above-named Plaintiff suffered physical discomfort resulting in physical exhaustion, fatigue and arrhythmia.

56.     That subsequent to Plaintiff's late arrival to Chicago, her daily living activities were severely limited for several days due to continuing arrhythmia.

57.     That, upon information and believe, upon plaintiff's late arrival to Chicago she contacted the above-named defendant with her claim for compensation against SAS in accordance with Article 22(6) of Montreal Convention for damages caused by delay and or cancellation of international airfare flight SK 943.

58.     That, upon information and believe, said notice of claim was ignored by the above-named defendant.

59.     That due to failure to answer pre-suit settlement claims on the part of all the above-named defendant, the above-named Plaintiff is entitle to reasonable attorney's fees pursuant to the Article 22(6) of the Montreal Convention. [12]

---

[12] Montreal Convention preserved the so-called "settlement inducement provision" contained in Article 22(4) of the Hague Protocol amendments. To that extent settlement inducement provision" contained in Article 22(4) of the Hague Protocol amendments was codified in the Article 22(6) of the Montreal Convention, which states as follows:

> "The limits prescribed in Article 21 and in this Article shall not prevent the court from awarding, in accordance with its own law [12], in addition, the whole or part of the court costs and of the other expenses of the litigation incurred by the plaintiff, including interest. The foregoing provision shall not apply if the amount of the damages awarded, excluding court costs and other expenses of litigation, does not exceed the sum which the carrier has offered in writing to the plaintiff within a period of six months from the date of the occurrence

**WHEREFORE** the above-named Plaintiff is hereby respectfully requesting this Honorable Court to award her a final order of judgment for damages in the sum of $7,536.37 pursuant to Art. 19 of the Montreal Convention; as well as an amount of general, special, incidental and consequential damages caused by defendant's reckless indifference to plaintiff's medical and health – related problems in the sum to be determined at trial; and reasonable amount of attorney's fees pursuant to Article 22(6) of Montreal Convention for failure to respond to written pre-suit settlement offer; and costs and disbursements of this action; and such other and further relief as the Court may deem just and proper.

### COUNT TWO
### Cause of Action for Breach of Contract: Breach of Voluntary Self –Imposed Contractual Duty to Compensate for Delay as Mandated by Article 6 of EU Directive No. 261/2004

As a separate cause of action against the above-named Defendant, S.A.S GROUP d/b/a SCANDINAVIAN AIRLINES S.A., the above-named Plaintiff, ELLEN KOGAN, is hereby alleging as follows:

60.     That the above-named Plaintiff is hereby repeating, re-alleging, and adopting §§ 1-13 of Jurisdiction and §§ 14-21 of Parties; §§ 22-39 of Statement of Claim; §§ 40-59 of Count One sections of this entire Complaint at Law as set forth fully herein and incorporates them by reference:

61.     That, at all time material hereto, the European Union Regulation No. 261 was adopted by the European Parliament and the Council of the European Union on

_____

causing the damage, or before the commencement of the action, if that is later."

February 11, 2004.[13]

62.     That the purpose of EU Regulation 261/ 2004 is, in part, to provide standardized compensation - separate from individualized compensation which may be provided by other laws upon individualized proof - for the "serious trouble and inconvenience" inevitably suffered by all passengers who experience flight cancellations or lengthy delays, particularly on international carrier routes.

63.     That pursuant to Article 3, EU Regulation 261 applies to passengers with confirmed reservations on (a) flights departing from an airport located in the territory of a member state of the European Union, and (b) flights departing from a country outside the European Union to an airport in the territory of a member state of the European Union, if the operating carrier of the flight concerned is an air carrier with an operating license granted by a member state of the European Union.

64.     That pursuant to Article 5, confirmed passengers on flights covered by Article 3, in case of cancellation of the flight "have the right to compensation by the operating air carrier in accordance with Article 7 of the Regulation unless:  (a) they are informed of the cancellation at least two weeks before the scheduled time of departure; or (b) they are informed of the cancellation between two weeks and seven days before the scheduled time of departure and are offered re-routing, allowing them to depart no more than two hours before the scheduled time of departure and to reach their final destination less than four hours after the scheduled time of arrival; or (c) they are informed of the cancellation less than seven days before the scheduled time of departure and are offered

---

[13]   Regulation (EC) No 261/2004 of the European Parliament and of the Council of 11 February 2004 establishing common rules on compensation and assistance to passengers in the event of denied boarding and of cancellation or long delay of flights (OJ 2004 L 46, p. 1).

re-routing, allowing them to depart no more than one hour before the scheduled time of departure and to reach their final destination less than two hours after the scheduled time of arrival."

65.     That also under Article 3, an "operating air carrier shall not be obliged to pay compensation in accordance with Article 7, if it can prove that the cancellation is caused by extraordinary circumstances which could not have been avoided even if all reasonable measures had been taken."

66.     That pursuant to Article 7, passengers eligible under Articles 3 and 5 on flights that were cancelled, "shall receive compensation amounting to:  (a) EUR 250 for all flights of 1500 kilometers or less; (b) EUR 400 for all intra-Community flights of more than 1500 kilometers, and for all other flights between 1500 and 3500 kilometers; (c) EUR 600 for all flights not falling under (a) or (b)."

67.     That Article 7 also provides that the operating carrier may reduce the compensation amounts by 50% when "passengers are offered re-routing to their final destination on an alternative flight, the arrival time of which does not exceed the scheduled arrival time of the flight originally booked (a) by two hours, in respect of all flights of 1500 kilometers or less; or (b) by three hours, in respect of all intra-Community flights of more than 1500 kilometers and for all other flights between 1500 and 3500 kilometers; or (c) by four hours, in respect of all flights not falling under (a) or (b)."

68.     That on November 19, 2009, in *Sturgeon v. Condor Flugdienst GmbH,* the European Court of Justice ruled that "Article 5, 6 and 7 of Regulation No 261/2004 must be interpreted as meaning that passengers whose flights are delayed may be treated, for the purposes of the application of the right to compensation, as passengers whose

flights are cancelled and may thus rely on the right to compensation laid down in Article 7 of the regulation where they suffer, on account of a flight delay, a loss of time equal to or in excess of three hours."

69.     That in addition, the European Court of Justice ruled that "Article 5(3) of Regulation No 261/2004 must be interpreted as meaning that a technical problem in an aircraft which leads to the cancellation or delay of a flight is not covered by the concept of "extraordinary circumstances" within the meaning of that provision, unless that problem stems from events which, by their nature or origin, are not inherent in the normal exercise of the activity of the air carrier concerned and are beyond its actual control."

70.     That in its recent opinion dated May 15, 2012 Advocate General of the Court of Justice of the European Union proposed to the High Court to confirm its prior decision in *Sturgeon v. Condor Flugdienst GmbH* dated November 19, 2009, whereby the European Court of Justice ruled that "Article 5, 6 and 7 of Regulation No 261/2004 must be interpreted as meaning that passengers whose flights are delayed may be treated, for the purposes of the application of the right to compensation, as passengers whose flights are cancelled and may thus rely on the right to compensation laid down in Article 7 of the regulation where they suffer, on account of a flight delay, a loss of time equal to or in excess of three hours." [14]

71.     That the right to compensation under Article 7 of EU Regulation 261 is separate from any right to compensation or damages, based upon individualized proof, any passenger may have premised on a separate cause of action under separate law.

---

[14] http://curia.europa.eu/jcms/upload/docs/application/pdf/2012-05/cp120063en.pdf

72.     That, at all times material hereto, the above-named defendant failed to tender to the above-named plaintiffs compensation required to be tendered by Articles 7 of the EU Directive 261/2004 despite the fact that such compensation for delay in performance of "community carrier" is mandated pursuant to *Sturgeon v. Condor Flugdienst GmbH.*

73.     That upon information and believe said duty to compensate for delay or cancellation of international airfare pursuant to Articles 6 and 7 of EU 261 is incorporated or should have been incorporated into the Tariff and Art. 15.4 of its Contract of General Condition of Carriage as publicly posted by the above-named defendant on its webpage and as filed by the above-named defendant with pertinent U.S. federal agencies.[15]

74.      That such contractual term constitutes voluntary undertaking by the above-named defendant.

75.     That at all times material hereto the above-named defendant perpetrated material breach of Art. 15.4 of its General Conditions of Carriage and further breached entire contract for international airfare by failing to tender to the Plaintiff the compensation in the sum of 600 Euro.

76.     That said breach of self-imposed obligation incorporated in Art. 15.4 of defendant's General Condition of Carriage was a material breach of contractual condition subsequent, which was imposed upon the above-named Parties by terms of their entire contractual undertaking.

---

[15] www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf

77.     That as a direct and proximate cause of the above-identified failure of defendant to compensate the above-named Plaintiff for damages caused by delay on departure of its flight No. 943 on August 24, 2014, the above-named Plaintiff incurred pecuniary damages in the aggregated sum of 600 euros.

**WHEREFORE,**  the above-named Plaintiff is hereby requesting this Court to award her a final order of judgment in the amount of statutory damages in the sum 600 Euros or $761.45 pursuant to Article 7 of EU Directive 261/2004; and costs and disbursements of this action; and such other and further relief as the Court may deem just and proper.

**COUNT THREE**
**Cause of Action: Breach of Self – Imposed Voluntary Contractual "Duty of Inform"**
**as Mandated by Article 14 of EU Directive No. 261/2004**

As a separate cause of action against the above-named Defendant, S.A.S. GROUP d/b/a SCANDINAVIAN AIRLINES S.A., the above-named Plaintiff, ELLEN KOGAN, is alleging as follows:

78.     That the above-named Plaintiff is hereby repeating, re-alleging, and adopting §§ 1-13 of Jurisdiction and §§ 14-21 of Parties; §§ 22-39 of Statement of Claim; §§ 40-59 of Count One; §§ 60-77 of Count Two sections of this entire Complaint- at-Law as set forth fully herein and incorporates them by reference:

79.      That at all times material hereto the above-named defendant owed to the above-named Plaintiff the "duty to inform " as promulgated by Art. 14 of the Regulation of European Union No. 261/2004.

80.     That, at all times material hereto, Art. 14 of EU 261/2004 included the following language:

"Article 14 Obligation to inform passengers of their rights

1. The operating air carrier shall ensure that at check-in a clearly legible notice containing the following text is displayed in a manner clearly visible to passengers: 'If you are denied boarding or if your flight is cancelled or delayed for at least two hours, ask at the check-in counter or boarding gate for the text stating your rights, particularly with regard to compensation and assistance'.

2. An operating air carrier denying boarding or canceling a flight shall provide each passenger affected with a written notice setting out the rules for compensation and assistance in line with this Regulation. It shall also provide each passenger affected by a delay of at least two hours with an equivalent notice. The contact details of the national designated body referred to in Article 16 shall also be given to the passenger in written form.

3. In respect of blind and visually impaired persons, the provisions of this Article shall be applied using appropriate alternative means." [16]

81.     That at all times material hereto the above-named Defendant breached said duty by failing to adequately and meaningfully inform the above-named Plaintiff of particulars of delays and or cancellation of her flight and of all remedies available to her.

82.     That upon information and believe said "duty to inform" as promulgated and mandated by Article 14 of EU 261 was incorporated into the Tariff and par. 9.3 of defendant's General Condition and Contract of Carriage as publicly posted by the above-named defendant on its webpage and as filed by the above-named defendant with pertinent U.S. federal agencies.[17]

83.     That the above-identified reckless indifference and withholding of "duty to inform" on the part of S.A.S. constituted breach of self-imposed contractual obligation as evidenced by defendant's filed Tariff and Contract of Carriage.[18]

84.     That such contractual term constitutes voluntary undertaking by the above-named defendant.

---

[16] Official Text of the Regulation of European Union 261/2004 entered into force on 17 February 2005 at http://eurlex.europa.eu/ LexUriServ/LexUriServ.do?uri =OJ:L:2004: 046:0001:0007:EN:PDF
[17] http://www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf
[18] EU Directive 261/2004 is applicable to S.A.S.  because of its domiciliary status at the country member of European Union.

85.     That such voluntarily assumed contractual "duty to inform" is a material contractual term and contractual covenant.

86.     That such voluntarily assumed "duty of care" is a condition subsequent covenant of entire contractual undertaking voluntarily assumed by the above-named defendant

87.     That by withholding of performance of voluntarily assumed contractual "duty to inform", the above-named defendant perpetrated material breach of parties' contract of international airfare carriage.

88.     That, at all times material hereto, the above-named Defendant breached said "duty to inform" by failing to adequately and meaningfully inform the above-named Plaintiff of particulars of delays and or cancellation of their flight and of all remedies available to them.

89.     That, as a direct and proximate cause of the above-identified failure of the above-named defendant to tender its contractual performance due on material contractual term of "duty to inform,"  the above-named Plaintiff incurred actual, general, special, incidental and consequential damages in the sum to be ascertained and proven at trial.

**WHEREFORE,** the above-named Plaintiff is hereby respectfully requesting this Honorable Court to award her a final order of judgment in the sum of damages in the sum in the sum to be determined at trial pursuant to Article 14 of EU Directive 261/2004; and costs and disbursements of this action; and such other and further relief as the Court may deem just and proper.

### COUNT FOUR

**Cause of Action for Breach of Contract: Breach of Voluntary Self- Imposed Contractual Duty of Care as Mandated by Article 9 of EU Directive 261/2004**

As a separate cause of action against the above-named Defendant, S.A.S. GROUP d/b/a SCANDINAVIAN AIRLINES S.A., the above-named Plaintiff, ELLEN KOGAN, is alleging as follows:

90.     That the above-named Plaintiff is hereby repeating, re-alleging, and adopting §§ 1-13 of Jurisdiction and §§ 14-21 of Parties; §§ 22-39 of Statement of Claim; §§ 40-59 of Count One; §§ 60-77 of Count Two; §§ 78-89 of Count Three sections of this entire Complaint as set forth fully herein and incorporates them by reference:

91.     That European Community Directive 261/2004 is latest strict liability international consumer protection law enacted by European Parliament in 2004.

92.     That said Directive applies to any and all airlines domiciled within the European Union, as well as to airlines arriving or departing from any airports within the European Community.

93.     That said Directive applies to in-bound and out-bound as well as intra-community flights operated by "community carriers" such as the above-named defendant.

94.      That said Directive provides private right of action for any passengers who are entitle to compensation pursuant to Articles 7 and 9 of said Directive.

95.      That Article 9 of said Directive establishes the right of estranged passengers to receive certain care from airline at airline expense such as local lodging, food coupons, telecommunication services and etc.

96.      That despite clear obligation to provide the above-named plaintiff with food, local shelter and other assistance as mandated by Article 9 of EU 261/2004, at all times material hereto the above-named defendant willfully breached said obligation of

care and refused to render any aid required to be rendered under Article 9 of EU

261/2004.

      97.    That, Art. 9 of European Union Regulation 261/2004 states at

following:

> "Article 9: Right to care
> 1. Where reference is made to this Article, passengers shall be offered free of charge:
>    (a) meals and refreshments in a reasonable relation to the waiting time;
>    (b) hotel accommodation in cases— where a stay of one or more nights becomes
>       necessary, or — where a stay additional to that intended by the passenger
>       becomes necessary;
>    (c) transport between the airport and place of accommodation (hotel or other).
> 2. In addition, passengers shall be offered free of charge two telephone calls, telex or
>    ax messages, or e-mails.
> 3. In applying this Article, the operating air carrier shall pay particular attention to the
>    needs of persons with reduced mobility and any persons accompanying them, as
>    well as to the needs of unaccompanied children."[19]

      98.    That upon information and believe, compliance of Scandinavia Airlines

with EU 261/2004 is a condition precedent of holding valid license issued by pertinent

European air-transportation authorities.

      99.    That likewise the above-named defendant is obligated to render "duty of

care" pursuant to recently pronounced controlling legal authorities.[20]

     100.    That at that times material hereto the above-named plaintiffs were not

rendered any care required by the Article 9 of the EU 261/2004, which is applicable to

defendant due to its domicile within European Community.

     101.    That despite clear legal obligation to provide the above-named plaintiff

with food, water, refreshments, telecommunication services and local shelter and other

---

[19] Official Text of the Regulation of European Union 261/2004 entered into force on 17
February 2005 at http://eur
lex.europa.eu/LexUriServ/LexUriServ.do?uri=OJ:L:2004:046:0001:0007:EN:PDF
[20] http://curia.europa.eu/jcms/upload/docs/application/pdf/2012-03/cp120032en.pdf

assistance as mandated by Article 9 of EU 261/2004, at all times material hereto the above-named defendant willfully breached said obligation of care and refused to render any aid required to be rendered under Article 9 of EU 261/2004.

102.    That recently the "duty of care" toward its passengers on the part of the above-named defendant was reaffirmed in the case of <u>Denise McDonagh v Ryanair Ltd</u>., European Court of Justice Case C-12/11,[21] which is now controlling legal precedent within European Community. [22]

103.    That said "duty of care" as promulgated and mandated by Article 14 of EU 261 was incorporated into the Tariff and par. 9.3 of defendant's General Condition and Contract of Carriage as publicly posted by the above-named defendant on its

---

[21] http://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=CELEX:62011CJ0012:EN:HTML

[22] *See*, <u>Denise McDonagh v Ryanair Airlines Ltd</u>, case C -11/12 (holding that Article 5 of Regulation (EC) No 261/2004 of the European Parliament and of the Council of 11 February 2004 establishing common rules on compensation and assistance to passengers in the event of denied boarding and of cancellation or long delay of flights, and repealing Regulation (EEC) No 295/91, must be interpreted as meaning that circumstances such as the closure of part of European airspace as a result of the eruption of the Eyjafjallajökull volcano constitute 'extraordinary circumstances' within the meaning of that regulation which do not release air carriers from their obligation laid down in Articles 5(1)(b) and 9 of the regulation to provide care);(also holding that Articles 5(1)(b) and 9 of Regulation No 261/2004 must be interpreted as meaning that, in the event of cancellation of a flight due to 'extraordinary circumstances' of a duration such as that in the main proceedings, the obligation to provide care to air passengers laid down in those provisions must be complied with, and the validity of those provisions is not affected);(however, an air passenger may only obtain, by way of compensation for the failure of the air carrier to comply with its obligation referred to in Articles 5(1)(b) and 9 of Regulation No 261/2004 to provide care, reimbursement of the amounts which, in the light of the specific circumstances of each case, proved necessary, appropriate and reasonable to make up for the shortcomings of the air carrier in the provision of care to that passenger, a matter which is for the national court to assess).

webpage and as filed by the above-named defendant with pertinent the U.S. federal agencies.[23]

104.     That at all times material hereto defendant's customer services at Copenhagen International Airport was very poorly organized by Scandinavian Airlines, the employees of which were non-responsive and visibly indifferent to a travel-related needs of this elderly disable passenger.

105.     That such reckless indifference and withholding of "right to care" on the part of the above-named defendant constituted breach of statutory "duty of care" imposed by Art. 9 of the EU 261. [24]

106.     That such reckless indifference and withholding of "right to care" on the part of S.A.S. also constituted breach of self-imposed contractual obligation as evidenced by Art. 9.1. and Art 9.3. of defendant's filed Tariff and General Condition of Carriage.[25]

107.      That such reckless indifference was manifested in the following:

(a)       Plaintiff was not offered any pecuniary compensation due under Article 5, 7 and 9 of the EU Directive No. 261/2004; or

---

[23] http://www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf
[24] The European Union Directive No. 261/2004 is applicable to S.A.S. because of its domiciliary status at the Kingdom of Sweden, which is a country-member of the European Community, which is subsequent to the Treaty of Rome of 1957 as amended by the Treaty of Lisbon of 2009 presently known as the European Union.
[25] Conditions of Carriage as published on website of S.A.S. pursuant to the art. 205 sec. 3 of the Act of 3 July 2002 Aviation Law.(Journal of Laws of 2002, No. 130, item 1112) is outdated and appears to be in conflict with EU Directive 261/2004.

(b)     Plaintiff was not offered meaningful comparable re-routing options or compensation due to him pursuant to Article 7(1)(c) of EU 261/2004 in the sum of €600 per passenger due under terms of EU Directive 261/2004;

(c)     Airline did not offer any food, water, meals and refreshments in violation "duty to care" set forth by Article 9 of EU Directive 261/2004.

108.     That at all times material hereto said "duty of care" as promulgated and mandated by Article 9 of EU 261 was incorporated into the Tariff and Condition and Art. 10.2 of defendant's General Condition of Carriage as publicly posted by the above-named defendant on its webpage and as filed by the above-named defendant with pertinent U.S. federal agencies.[26]

109.     That the above-identified reckless indifference and withholding of "duty of care" on the part of S.A.S. Airline constituted breach of self-imposed contractual obligation as evidenced by defendant's filed Tariff and Art. 10.2 of its Contract of Carriage.[27]

110.     That such contractual term constitutes voluntary undertaking by the above-named defendant.

111.     That such voluntarily assumed contractual "duty of care" is a material contractual term and covenant.

---

[26] http://www.lot.com/us/en/conditions-of-carriage

[27] EU Directive 261/2004 is applicable to LOT Polish Airlines pursuant to the art. 205 sec. 2a of the Act of 3 July 2002 Aviation Law (Journal of Laws 02.130.1112).

112.     That such voluntarily assumed "duty of care" is a condition subsequent covenant of entire contractual undertaking voluntarily assumed by the above-named defendant

113.     That by withholding of performance of voluntarily assumed contractual "duty of care", the above-named defendant perpetrated material breach of its contract of international airfare carriage.

114.      That as direct and proximate cause of said breach of voluntarily assumed duty of care and subsequent material breach of contract of international airfare carriage perpetrated by the above-named defendant, the above-named Plaintiff was forced to purchase local meals, food, refreshment and water for their needs at her own expense, thereby incurring actual, general, special, incidental and consequential damages in the sum to be proven at trial.

**WHEREFORE,** the above-named Plaintiff is respectfully requesting an award of final order of judgment in the sum of statutory damages in the sum to be determined at trial; pursuant to Articles 5 and 9 of EU Directive 261/2004 and pursuant to Art. 9.3 of defendant's General Condition of Carriage; as well as an amount of special, incidental and consequential damages in the additional sum to be determined at trial; and reasonable amount of attorney's fees pursuant to Article 22(6) of Montreal Convention for failure to respond to written pre-suit settlement offer; and costs and disbursements of this action; and such other and further relief as the Court may deem just and proper..

### COUNT FIVE
### Cause of Action for Breach of International Contract of Carriage: Breach Voluntarily Assumed of Self-Imposed Contractual Duties

As a separate cause of action against the above-named Defendant, SAS GROUP d/b/a SCANDINAVIAN AIRLINES S.A., the above-named Plaintiff, ELLEN KOGAN, is alleging as follows:

115.    That the above-named Plaintiff is hereby repeating, re-alleging, and adopting §§ 1-13 of Jurisdiction and §§ 14-21 of Parties; §§ 22-39 of Statement of Claim; §§ 40-59 of Count One; §§ 60-77 of Count Two; §§ 78-89 of Count Three; §§ 90-114 of Count Four of this entire Complaint as set forth fully herein and incorporates them by reference:

116.    That, at all times material hereto, the above-named parties entered into binding legal agreement for international airfare transportation of the above-named Plaintiff by the above-named Defendant from Chicago, Illinois to Moscow, Russian Federation via connecting stop at Copenhagen Denmark, and than on August 24, 2014 back to the USA via connecting stop at Copenhagen, Denmark.

117.    That at all times material hereto the above-referenced contract incorporated the following defendant's duties

(a)    "duty to compensate" for delay or cancellation of the international airfare as promulgated by Art. 19 of the Montreal Convention, as incorporated by Art. 9.3.1. and Art. 15.1.1 of defendant's General Condition of Carriage;

(b)    "duty to compensate" for delay or cancellation of the international airfare as promulgated by Art. 5 of EU 261/2004, as incorporated by Art. 15.4 of defendant's General Condition of Carriage;

(c)    "duty to render care" as set forth in Art 9 of the EU Regulation 261/2004, as incorporated by Art. 9.3 of defendant's General Condition of Carriage;

(d)        "duty to inform" as set forth by Art 14 of the EU Regulation 261/2004, as incorporated by Art. 2.4 of defendant's General Condition of Carriage;

118.        That, at all times material hereto, all the above-identified contractual legal duties were voluntarily assumed and self-imposed by S.A.S.

119.        That, at all times material hereto, all the above-numerated legal duties were incorporated in defendant's Contract of Carriage published by SAS via http://www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf .

120.        That, at all times material hereto, all the above-numerated legal duties were incorporated in defendant's Tariff filed by defendant with pertinent governmental agencies.

121        That, at all times material hereto, said legal duty was published on defendant's home page titled as "General Condition of Carriage" http:// http://www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf.

122.        That said contract for international airfare transportation and carriage was formed and entered into at the place of plaintiff's domicile at Chicago, Illinois, USA.

123.        That at all times material hereto the above-named defendant breached said contractual voluntarily assumed and self-imposed contractual duties by:

(a)        refusing to compensate the Plaintiff for delay on departure of flight No. 943 on or about August 24, 2013 in contravention of Art. 15.1.1 of its Contract of Carriage;

(b)        failing to adequately inform the Plaintiff in regard to cause of such scheduling irregularities as well as subsequent changes of their travel itineraries; and

(c)      failing to tender its contractual performance of rendition of meaningful and suitable assistance of local lodging, food and pier dime expenses to the above-named plaintiff while he was estranged at Copenhagen International Airport for more than 5 days due to delay on departure of defendant's flight No. 943.

124.     That by failing to tender it contractual performance of duties set forth by Art. 5, 6, 7, 9 and 14 of EU 261/2004, the above-named defendant perpetrated material breach of pertinent contractual covenants, which were incorporated into said contractual agreement for international airfare transportation of the above-named plaintiff on August 24, 2014 from Copenhagen to Chicago, USA.

125.     That this breach of self - imposed voluntary contractual duties by the above-named defendant on August 24, 2014 was a material breach of essential condition precedent imposed upon the above-named defendant by operation of parties contract of carriage in lieu of international airfare transportation.

126.     That alternatively said breach of contractual duties by the above-named defendant was material breach of essential *ex contractu* condition subsequent imposed upon the above-named defendant by operation of said contract.

127.     That, at all times material hereto, the above-named plaintiff duly performed all conditions and covenants required to be performed by said contract o carriage in lieu of international airfare transportation.

128.     That as a direct and proximate cause of said material breach of contract perpetrated by the above-named defendant on August 24, 2014, the above-named plaintiff incurred actual, general, special, incidental and consequential damages in the sum to be determined at trial.

129.    That pursuant to <u>Wolens</u> doctrine, as recently affirmed by <u>Northwest, Inc.</u>
<u>v. S. Binyomin Ginsberg</u> (2014 US __),  the common law cause of action *ex contractu*
against the above-named defendant is not preempted by the Airline Deregulation Act,
(ADA), 49 USC § 41713 (2010)(Public Law No. 95-504). [28]

130.    That pursuant to binding legal authority of the <u>Narkiewicz-Laine</u> doctrine,
the common law cause of action for breach of contract is not preempted by the Montreal
Convention.[29]

**WHEREFORE,** the above-named Plaintiff, ELLEN KOGAN, is hereby
respectfully requesting this Honorable Court to award her a final order of judgment
against the above-named Defendant, S.A.S GROUP d/b/a SCANDINAVIAN
AIRLINES, jointly and severally, for all the above-stated causes of action as follows:

1.    Pursuant to Art. 19 and 22 of the Montreal Convention, an amount of
actual and general damages in the sum of 4694 SDR[30] (Special Drawing Rights) or in
the sum of $7,133.39; and

2.    Pursuant to the Rule 54(d)(2) of Federal Rules of Civil Procedure, an
award of reasonable amount of attorney's fees in accordance with "settlement
inducement provision" contained in Article 22(4) of the Hague Protocol amendments as

---

[28] <u>American Airlines, Inc. v. Wolens</u>,115 S.Ct. 817, 513 U.S. 219, 130 L.Ed.2d 715, 63
USLW 4066 (U.S.Ill.,1995)(holding that Airline Deregulation Act did not preempt action
against airline based on state contract law).
[29] <u>Narkiewicz-Laine v. Scandinavian Airlines Sys.</u>, 587 F. Supp. 2d 888, 890 (N.D. Ill.
2008)(holding that "claims may be brought under the Montreal Convention or they may
be brought 'in contract or in tort or otherwise' but such claims are subject to an
affirmative defense based on the conditions and limits of liability set out in the Montreal
Convention.") (*quoting* Montreal Convention, art. 29); *accord* <u>Cosgrove-Goodman v.</u>
<u>UAL Corp.</u>, No. 10 CV 1908, 2010 WL 2197674, at *3 (N.D. Ill. June 2, 2010).
[30] On June 30, 2009, ICAO adjusted the liability limits set forth in Articles 21 and 22 of
the Montreal Convention due to inflation. Accordingly, effective December 30, 2009, the
liability limit set forth in Article 22(2) was increased from 4150 SDRs to 4694  SDR.

incorporated by Article 22(6) of Montreal Convention for defendant's failure to meaningfully consider and or to respond to demand for compensation and or notice of claim and to pre-suit settlement demand; and

3.    Pursuant to the Art. 4 of the EU Regulation 261/2004, an amount to be determined at trial; and

4.    Pursuant to the Art. 9 of the EU Regulation 261/2004, an amount of €600 or an equivalent sum of $750; and

5.    Pursuant to the Art. 9 of the EU Regulation 261/ 2004, an amount of pecuniary compensation in the sum to be determined at trial or in the sum due to the above-named Plaintiff for defendant's breach of "duty of care" imposed by the Art. 9 of the European Union Regulation No. 261/ 2004; and

6.    Pursuant to the Rule 54(d)(2) of Federal Rules of Civil Procedure, an award of attorney's fees costs and disbursements of this action; and

7.    Plaintiff also moves this Court for scheduling of evidentiary hearing on the issue of award of attorney's fees and costs upon entry of order of judgment pursuant to Rule 54 (d)(1) and (2) of Federal Rules of Civil Procedure; and

8.    Such other and further relief as the Court may deem just and proper.

PLEASE TAKE NOTICE that the above-named Plaintiff, ELLEN KOGAN, is hereby respectfully requesting the trial by jury on all counts asserted herein.

Dated this Complaint-at-Law on this 29th day of November 2014.

Respectfully submitted by
GOROKHOVSKY LAW OFFICE, L.L.C.
Attorneys for Plaintiff


BY: *Vladimir M. Gorokhovsky, Esq.*
     /S/ VLADIMIR M. GOROKHOVSKY, LL.M.
     WIS. SBN: 1036040


**P.O. Business Address:**
Gorokhovsky Law Office, LLC
10919 North Hedgewood Ln.
Mequon,  WI 53092
Telephone: (414)-581-1582
gorlawoffice@yahoo.com

**Exhibit A:**

**ERosa@sasair.com**
To me

Dear Ms. Kogan:

We offer our regrets for the inconvenience you experienced as a consequence of the delay of SAS Flight 943 on August 24 from Copenhagen to Chicago. This was due to a technical malfunction.

It is our intention to minimize the strain and consequences imposed on our passengers in such a situation, and we extend our regrets in the lapse in service.

We can advise you that the EU compensation does not apply if the delay is caused by an extraordinary circumstance. Specifically, that the delay could not have been avoided, although all reasonable measures had been taken. If you have incurred any direct expenses such as the telephone calls, meals, we kindly request you forward the receipts for consideration of reimbursement. They can be sent via email or fax. Our fax number is 201-896-3735.

Again, we apologize for the lapse in service on this occasion and the inconvenience caused to you. We hope we shall have another opportunity of serving you again in the future and of meriting your full faith in our performance.

In the interim, SAS remains at your service.

Kind regards,

**Ellen Rosa**
SAS Customer Care
301 Rt. 17 North,  Suite 500
Rutherford, NJ  07070