IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| ELLEN KOGAN | x<br>:<br>: | Case No.  1:14-cv-09551 |
|  | :<br>: |  |
| Plaintiff, | :<br>: | Honorable Elaine  E. Bucklo |
|  | :<br>: |  |
| vs. | :<br>: | Magistrate Michael Mason |
|  | :<br>: |  |
| SAS GROUP | :<br>: |  |
| d/b/a SCANDINAVIAN AIRLINES | : |  |
| SAS head office | : |  |
| Frösundavikas Allé 1, | : |  |
| 195 87 Stockholm, Sweden | : |  |
| A foreign corporation | :<br>: |  |
|  | : |  |
| Defendant. | :<br>:<br>x |  |

## SCANDINAVIAN AIRLINES SYSTEM'S (incorrectly sued as SAS GROUP D/B/A SCANDINAVIAN AIRLINES) ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Defendant SCANDINAVIAN AIRLINES SYSTEM (incorrectly sued as SAS GROUP D/B/A SCANDINAVIAN AIRLINES and hereafter "SAS"), by and through its attorneys, Joseph F. Spitzzeri of Johnson and Bell, Ltd. and Bartholomew Banino and Allison M. Surcouf of Condon & Forsyth LLP, for its Answer and Affirmative Defenses to Plaintiff's Complaint states as follows:

## AS TO JURISDICTION

1.     That this civil action arises under the Articles 17 and 19 of the Montreal Convention for the Unification of Certain Rules for International Carriage by Air, May28, 1999 (entered into force on Nov. 4, 2003) (Montreal Convention), reprinted in S. Treaty Doc. No. 106-45, which is the supreme law of this land.

ANSWER:     Admit that plaintiff's claims are exclusively governed by a treaty of the United States known as the Convention for the Unification of Certain Rules Relating to

1

International Carriage by Air, concluded at Montreal, Canada, opened for signature on May 28, 1999, *reprinted in* S. Treaty Doc. 106-45, CCH Av. L. Rep. ¶ 27,400-59, 1999 WL 33292734 (1999) ("Montreal Convention") and otherwise refers all questions of law to be decided by the Court.

2.      That this action also arises under common law theory of breach of contract for breach of duty imposed under Article 9 of European Union Directive 261/2004, which was incorporated into contract for international airfare transportation of the above-named plaintiff.

ANSWER:      To the extent paragraph 2 of the Complaint contains factual allegations, denies such allegations and otherwise refers all questions of law to be decided by the Court.

3.      That the above-named plaintiffs seek, among other relief, to recover actual, general and special damages in aggregate sum of $7,133.39; as well as statutory damages pursuant to the European Union Directive 261/2004 [1] in the sum of €600 per passenger; as well as incidental and consequential damages (in the sum not yet certain but to be proven at trial) from the above-named defendant for delay in international air transportation as well as under other legal theories incorporated herein under the doctrine of pendent jurisdiction.

ANSWER:      To the extent paragraph 3 of the Complaint contains factual allegations, denies such allegations and otherwise refers all questions of law to be decided by the Court.

4.      That the above-named Defendant, SAS GROUP d/b/a SCANDINAVIAN AIRLINES is Scandinavian airline with headquarters located at: SAS head office of Frösundaviks Allé 1, 195 87 Stockholm, Sweden, doing business within the jurisdiction of the United States District Court for Northern District of Illinois.

ANSWER:      As an answer to paragraph 4 of the Complaint, admits that the principal place of business of defendant SAS is in Stockholm, Sweden and that defendant SAS conducts business within the jurisdiction of the United States District Court for the Northern District of Illinois.

---

[1] The official tiles of EC 261 is: Regulation (EC) No. 261/2004 of the European Parliament and of the Council of 11 February 2004 establishing common rules on compensation and assistance to passengers in the event of denied boarding and of cancellation or long delay of flights, and repealing Regulation (EEC) No. 295/91."

5.      That, upon information and believe, the above-named Defendant, S.A.S GROUP d/b/a SCANDINAVIAN AIRLINES is Scandinavian airline and an air carrier with operational license granted by European Community Member State in accordance with the provisions of Counsel Regulation (EEC) No. 2407/92 of July 23, 1992 and EU Regulation No. 2027/97 as amended by EU Regulation No. 889/ 2002 on licensing of air carriers domiciled or operating within the European Union.

ANSWER:      As an answer to paragraph 5 of the Complaint, admits that defendant SAS

is the major air carrier in Scandinavia and otherwise refers all questions of law to be decided by

the Court.

6.      That, upon information and believe, the matter in controversy exceeds $10,000.00 exclusive of interest and costs, in that the above-named plaintiff is alleging actual damages in the combined amount of $7,133.39; as well as statutory damages pursuant to EU 261/ 2004 in the sum of €600 or $751.31 per passenger; as well as compensatory, general, special, incidental and consequential damages in the sum not yet certain but to be ascertained and proven at trial.

ANSWER:      To the extent paragraph 6 contains factual allegations, denies such

allegations and otherwise refers all questions of law to be decided by the Court.

7.      That, additionally, pursuant to the Article 22(5) of the Montreal Convention, the above-named Plaintiffs are also asserting claim for compensatory, additional, general, special, incidental and consequential damages in the excess of the above-referenced cap on damages imposed by the Article 22(1) of the Montreal Convention in the sum not yet certain but to be ascertained and proven at trial recoverable from defendant on the theory of "reckless indifference" of defendant's employees while acting in the scope of their employment and for benefit of their employer.

ANSWER:      As an answer to paragraph 7 of the Complaint, admits that the rights and

liabilities of the parties are exclusively governed by the provisions of the Montreal Convention

and otherwise denies any factual allegations contained in paragraph 7 of the Complaint.

8.      That the court's jurisdiction is invoked under 28 U.S.C. § 1331, 28 U.S.C. § 1332, 28 U.S.C. § 1337 and the doctrine of pendent jurisdiction.

ANSWER:      As an answer to paragraph 8 of the Complaint, admits that this Court

retains jurisdiction of plaintiff's claims pursuant to 28 U.S.C. § 1331.

9. That additionally, the United States District Court for the Northern District of Illinois shall exercise jurisdiction over the cause of action set forth in this complaint under and pursuant to Art 33(1) of Montreal Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 (entered into force on Nov. 4, 2003) (Montreal Convention), reprinted in S. Treaty Doc. No. 106-45.[2]

ANSWER: As an answer to paragraph 9 of the Complaint, admits that the rights and liabilities of the parties are exclusively governed by the provisions of the Montreal Convention and otherwise refers all questions of law to be decided by the Court.

10. That the Article 19 of the Montreal Convention sets forth the private cause of action for aggrieved airfare passenger against an airline for pecuniary damages caused by delay or cancellation of international airfare transportation effectuated between signatories of the Montreal Convention.[3]

ANSWER: As an answer to paragraph 10 of the Complaint, admits that the rights and liabilities of the parties are exclusively governed by the provisions of the Montreal Convention and otherwise refers all questions of law to be decided by the Court.

11. That both the United States of America and the Republic of Poland are the signatories to the Montreal Convention.4

ANSWER: As an answer to paragraph 11 of the Complaint, admits that the rights and liabilities of the parties are exclusively governed by the provisions of the Montreal Convention and otherwise refers all questions of law to be decided by the Court.

12. That the Art 22(2) of the Montreal Convention sets forth the limit of 4694 SDR or approximately $7133.39 per, passenger which can be recovered from defendant airline on each

---

[2] The Montreal Convention is available in the UNITED STATES CODE SERVICE (U.S.C.S.) volume titled International Agreements at 635 (2007). It is also available at S. Treaty Doc. No. 106-45, 1999 WL 33292734 at 29-45.

[3] See, Article 19 of the Montreal Convention, The carrier is liable for damages occasioned by delay in the carriage by air of passengers, baggage or cargo. Nevertheless, the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures." Id.

[4] http://legacy.icao.int/icao/en/leb/mtl99.pdf

airfare ticket[5], unless the Plaintiff will show willful disregards by an airline to his or her travel-related needs.

ANSWER:    As an answer to paragraph 12 of the Complaint, admits that the rights and liabilities of the parties are exclusively governed by the provisions of the Montreal Convention and otherwise refers all questions of law to be decided by the Court.

13.    That both the above-named defendant airline is soliciting airline passengers by selling airfare tickets and are conducting business within the State of Illinois. Cf. Sachs v. Republic of Austria, No 11-15458 (9th Cir., December 6, 2013)(a foreign-state owned common carrier engages in commercial activity in the United States, and thus is not immune from suit under the Foreign Sovereign Immunities Act, when it sells tickets in the United States through a travel agent, regardless of whether the travel agent is a direct agent or subagent of the common carrier).[6]

ANSWER:    As an answer to paragraph 13 of the Complaint, admits that plaintiff's claims are based upon a commercial activity and otherwise refers all questions of law to be decided by the Court.

## AS TO PARTIES

14.    That the above-named Plaintiff, ELLEN KOGAN, is repeating, re- alleging, and adopting §§ 1-13 of preceding section titled "Jurisdiction" as set forth fully herein and incorporates them by reference:

ANSWER:    As an answer to paragraph 14 of the Complaint, repeats, reiterates and realleges each and every admission and denial made in response to the paragraphs identified therein with the same force and effect as if set forth herein at length.

15.    That, at all times material hereto, and is now the above-named Plaintiff, ELLEN KOGAN was an adult citizen of the USA, residing at: 1173 Bristol Lane Buffalo Grove, IL 60089.

ANSWER:    As an answer to paragraph 15 of the Complaint, lacks knowledge or

---

[5] See, Article 19 of the Montreal Convention, The carrier is liable for damages occasioned by delay in the carriage by air of passengers, baggage or cargo. Nevertheless, the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures." Id.

[6] http://cdn.ca9.uscourts.gov/datastore/opinions/2013/12/09/11-15458%20web%20 corrected.pdf

information sufficient to form a belief as to the truth of the allegations therein.

16.     That, at all times material hereto, and is now the above-named Plaintiff was and still is a senior citizen with a disability and fragile health.

ANSWER:     As an answer to paragraph 16 of the Complaint, lacks knowledge or

information sufficient to form a belief as to the truth of the allegations therein.

17.     That the above-named defendant SAS GROUP d/b/a SCANDINAVIAN AIRLINES S.A., is believed to be "community carrier," and an air carrier with valid operational license granted by European Community Member State in accordance with provisions of Counsel Regulation (EEC) No. 2407/92 of July 23, 1992 on licensing of air carriers domiciled within the European Union.

ANSWER:     As an answer to paragraph 17 of the Complaint, admits that defendant

SAS conducts valid operations pursuant to the laws and regulations of all relevant civil aviation

authorities and otherwise refers all questions of law to be decided by the Court.

18.     That the above-named defendant SAS GROUP d/b/a SCANDINAVIAN AIRLINES S.A. is believed to be a foreign air transportation carrier, domiciled at a country member of the European Union, operating under auspices of air carrier license issued by the European Union, doing business in the United States and within the State of Illinois.

ANSWER:     As an answer to paragraph 18 of the Complaint, admits that defendant

SAS conducts valid operations pursuant to the laws and regulations of all relevant civil aviation

authorities and admits that defendant SAS conducts business within the State of Illinois and

otherwise refers all questions of law to be decided by the Court.

19.     That the below-identified international airfare occurred between several countries – signatories of the Montreal Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 (entered into force on Nov. 4, 2003) reprinted in S. Treaty Doc. No. 106-45.

ANSWER:     As an answer to paragraph 19, admits that the rights and liabilities of the

parties are exclusively governed by the provisions of the Montreal Convention and otherwise

refers all questions of law to be decided by the Court.

20.     That, at all times material hereto, the United States of America was and

still is the signatory to the Montreal Convention since 05-28-1999. [7]

ANSWER:      As an answer to paragraph 20, admits that the rights and liabilities of the parties are exclusively governed by the provisions of the Montreal Convention and otherwise refers all questions of law to be decided by the Court.

21.      That at all times material hereto the Kingdom of Denmark and Kingdom of Sweden were and still are the signatory to the Montreal Convention since 05-28-1999.

ANSWER:      As an answer to paragraph 21, admits that the rights and liabilities of the parties are exclusively governed by the provisions of the Montreal Convention and otherwise refers all questions of law to be decided by the Court.

## AS TO STATEMENT OF CLAIM

22.      That the above-named Plaintiff is hereby repeating, re-alleging, and adopting §§ 1-13 of "Jurisdiction" and §§ 14-21 of "Parties" sections of this entire Complaint at Law, as set forth fully herein and incorporates them by reference:

ANSWER:      As an answer to paragraph 22 of the Complaint, repeats, reiterates and realleges each and every admission and denial made in response to the paragraphs identified therein with the same force and effect as if set forth herein at length.

23.      That, at all times material hereto, the above-named Plaintiff accepted an offer of international air fare transportation extended to her by the above-named Defendant, S.A.S GROUP d/b/a SCANDINAVIAN AIRLINES S.A., thereby entering into legally binding contract for round-trip international airfare carriage to be performed by the above-named Defendant from the USA to the European Union and back to the USA.

ANSWER:      As an answer to paragraph 23 of the Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein and otherwise refers all questions of law to be decided by the Court.

24.      That said international airfare consisted of the following travel segments:

(a)      Travel on July 16, 2014 from Chicago, Illinois, USA to Moscow, Russian

---

[7] http://legacy.icao.int/icao/en/leb/mtl99.pdf

Federation via connecting stop at Stockholm, Sweden.

(b)   Return flight on August 24, 2014 from Moscow, Russia back to Chicago,

Illinois, USA via connecting stop at Copenhagen, Denmark.

ANSWER:     As an answer to paragraph 24 of the Complaint, lacks knowledge or

information sufficient to form a belief as to the truth of the allegations therein.

25.     That the true and correct copy of Plaintiff's international travel intermarries is
appended herewith marked as Exhibit A, incorporated by reference and made a part of this entire
Complaint at Law.

ANSWER:     As an answer to paragraph 25 of the Complaint, lacks knowledge or

information sufficient to form a belief as to the truth of the allegations therein.

26.     That, at all times material hereto, the above-named Plaintiff received confirmed
airfare tickets, reflecting the above-identified travel arrangements.

ANSWER:     As an answer to paragraph 26 of the Complaint, lacks knowledge or

information sufficient to form a belief as to the truth of the allegations therein.

27.     That said agreement for international airfare transportation was entered into at the
above-stated place of plaintiff's domicile located within the Lake County, Illinois, USA.

ANSWER:     As an answer to paragraph 27 of the Complaint, lacks knowledge or

information sufficient to form a belief as to the truth of the allegations therein.

28.     That in accordance with the above-referenced international airfare arrangement on
August 24, 2014 the above-named Plaintiff was confirmed to depart from Copenhagen to Chicago
on the board of SAS flight SK 943.

ANSWER:     As an answer to paragraph 28 of the Complaint, lacks knowledge or

information sufficient to form a belief as to the truth of the allegations therein.

29.     That true and correct copy of Plaintiff's boarding pass is appended herewith
marked as Exhibit B, incorporated by reference and made a part of this entire Complaint at Law.

ANSWER:     As an answer to paragraph 29 of the Complaint, lacks knowledge or

information sufficient to form a belief as to the truth of the allegations therein.

8

30.     That, upon information and believe, due to unknown reasons, timely departure of defendant's flight SK 943 on August 24, 2014 from Copenhagen, Denmark was initially delayed for excess of five (5) hours.

ANSWER:     As an answer to paragraph 30 of the Complaint, admits that Flight SK 943 on August 24, 2014 experienced a delay in the originally scheduled departure time.

31.     That due to such delay, cancellation and frustration of travel plans, the above-named Plaintiff arrived o Chicago Illinois at approximately 11:30PM instead of 5:30PM.

ANSWER:     As an answer to paragraph 31 of the Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

32.     That while subjecting the above-named Plaintiff to extensive delay of international airfare in excess of almost 5 hours, the above-named defendant did not provided to her with meaningful and or sufficient care or assistance, as mandated by Art. 9 of the EU 261/2004.

ANSWER:     As an answer to paragraph 32 of the Complaint, denies the allegations therein.

33.     That, while being subjected to the above-identified delays the above- named Plaintiff was subjected to travel related stress of additional travel time in excess of 5 hours, as well as to physical inconvenience and bodily exhaustion resulting, in subsequent incapacitation for period of several days.

ANSWER:     As an answer to paragraph 33 of the Complaint, denies the allegations therein.

34.     That, likewise, due to the above-identified cancelation of international airfare by the above-named Defendant, the above-named Plaintiff was subjected to extensive walking through an airport exacerbated by hand-carrying of luggage, and subsequently developed a fracture in her foot.

ANSWER:     As an answer to paragraph 34 of the Complaint, denies the allegations therein.

35.     That such illness cause [*sic*] the above-named Plaintiff to miss several days of her work.

ANSWER:    As an answer to paragraph 35 of the Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

36.    That such illness cause [*sic*] the above-named Plaintiff to miss important business meetings causing further loss of wages.

ANSWER:    As an answer to paragraph 36 of the Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

37.    That, at all times material hereto, the above-named Plaintiff was not provided by SAS with any meaningful and or sufficient travel-related assistance, which was at all times material hereto mandated by Art 9 of the EU 261/2004.

ANSWER:    As an answer to paragraph 37 of the Complaint, denies the allegations therein.

38.    That, subsequently upon late arrival to Chicago the above-named Plaintiffs timely lodged with the local office of the above-named defendant their grievance and demand for compensation mandated by Art 19 of the Montreal Convention and by  Art. 7 of the EU Regulation 261/2004.

ANSWER:    As an answer to paragraph 38 of the Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

39.    That, upon information and believe, said pre-suit demand was ignored by the above-named defendant.

ANSWER:    As an answer to paragraph 39 of the Complaint, lacks the allegations therein.

## AS TO COUNT I

40.    That the above-named Plaintiff is repeating, re-alleging, and adopting §§ 1-13 of "Jurisdiction" and §§ 14-21 of "Parties"; §§ 22-39 of "Statement of Claim" sections of this entire Complaint as set forth fully herein and incorporates them by reference:

ANSWER:    As an answer to paragraph 40 of the Complaint, repeats, reiterates and realleges each and every admission and denial made in response to the paragraphs identified

therein with the same force and effect as if set forth herein at length.

41.     That on or about August 24, 2014 the flight No. 943 operated by SAS from Copenhagen to Chicago was delayed on departure for approximately 5.5 hours.

ANSWER:     As an answer to paragraph 41 of the Complaint, admits that Flight SK 943

on August 24, 2014 experienced a delay in the originally scheduled departure time.

42.     That, upon information and believe, delay of the above-referenced defendant's flight was not caused by extraordinary circumstances, which could have been avoided in due exercise of due diligence or another pertinent legal standard of care by the above-named defendants.

ANSWER:     As an answer to paragraph 42 of the Complaint, denies the factual

allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

43.     That, upon information and believe, the above-named defendant did not pursue all meaningful actions required to avoid or mitigate impact of extraordinary circumstances. Cf., Ronald Huzar v. Jer2.com Limited, [2014] EWCA Civ. 791, Case No. Case No: B2/2013/3277/CCRTF (Royal Courts of Justice, London, England, 11 June 2014)(holding that technical problems, which may be unforeseeable, but are ultimately caused by an event inherent in the running of an aircraft, and cannot therefore be considered to be an extraordinary circumstance).[8]

ANSWER:     As an answer to paragraph 43 of the Complaint, denies the factual

allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

44.     That the term "extraordinary circumstances" as evolved under the Montreal Convention jurisprudence is very limited and applies only in certain circumstances where the airline can prove the cancellation or delay was caused by political instability, meteorological conditions incompatible with the operation of the flight concerned, security risks, unexpected flight safety shortcomings and strikes that affect the operation of an operating aircraft." Wallentin-Hermann v. Alitalia, European Court of Justice, Case No C-549/07, Judgment of December 22, 2008, ¶22 (emphasis added).

ANSWER:     As an answer to paragraph 44 of the Complaint, denies the factual

allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

---

[8]                                                       http://www.bailii.org/cgi-bin/markup.cgi?doc=/ew/cases/EWCA/Civ/2014/791.html&query=huzar+and+jet2&method=boolean

45.     That moreover, even the listed events do not "themselves constitute extraordinary circumstances, but only . . . may produce such circumstances." Id.

ANSWER:     As an answer to paragraph 45 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

46.     That "extraordinary circumstances" do not include technical or mechanical problems except in the rare instances where the airline can prove those problems are due to hidden, inherent manufacturing defects or aircraft damage caused by sabotage. Id. at ¶26 (mechanical problems may constitute extraordinary circumstances only when "it was revealed by the manufacturer of the aircraft compromising the fleet of the air carrier concerned, or by competent authority, that those aircraft, although already in service, are affected by a hidden manufacturing defect which impinges on the flight safety" or where there was "damage to aircraft caused by acts of sabotage); see also Sturgeon v. Condor Flugdienst GmbH, European Court of Justice, Case No. C-402/7, Judgment of November 19, 2009 (reiterating that technical problems are not extraordinary circumstances in context of "technical faults on the plane and illness among the crew").

ANSWER:     As an answer to paragraph 46 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

47.     That in accordance with Article 19 of the Montreal Convention and or Article 21 of the Warsaw Convention, the above-identified defendant is liable for damages caused by delay and or cancellation of international air carriage of passengers.[9]

ANSWER:     As an answer to paragraph 47 of the Complaint, admits that the rights and liabilities of the parties are exclusively governed by the provisions of the Montreal Convention and otherwise refers all questions of law to be decided by the Court.

48.     That, likewise the above-named defendant is responsible for damages caused by delay or cancellation of international airfare. as asserted in relevant portion of Art. 15.1. of its General Condition of Carriage, which states in pertinent part as follows:

> 15.1.1 Unless otherwise stated herein, Carriage hereunder is subject to the provisions relating to the liability established by the Convention, even where such Carriage is not international Carriage to which the Convention mandatory applies.[10]

_____

[9] ElAlIsr.Airlines,Ltd.v.TsuiYuanTseng, 525 U.S. 155, 176 (1999)(holding that the United States is a party to the Montreal Convention, which governs the international air carriage of passengers, baggage, and cargo. The Convention provides an airline passenger's exclusive remedy; a passenger may not maintain "an action for personal injury damages under local law when her claim does not satisfy the conditions for liability under the Convention."

ANSWER:    As an answer to paragraph 48 of the Complaint, denies the allegations therein.

49.    That, as a direct and proximate cause of delayed departure of flight No. 943 operated by SAS from Copenhagen to Chicago was delayed on departure for approximately 5.5 hours, the above-named plaintiff was subjected to actual, general, special, incidental and consequential pecuniary damages, including but not limited to travel cancellation expenses, loss of benefit of his travel bargain, inconvenience, physical discomfort, pain, exhaustion, loss of time, frustration of purpose to travel, anxiety, frustration, uncertainty, loss of use of money and other cognizable legal damages, losses and injuries.[11]

ANSWER:    As an answer to paragraph 49 of the Complaint, denies the allegations therein.

50.    That under the Article 19 of the Montreal Convention, and par 15.4 of its General Condition of Carriage, the above-identified common carrier S.A.S. is liable for damages caused by delay and or cancellation of international airfare and international carriage of airline passengers.

ANSWER:    As an answer to paragraph 50 of the Complaint, denies the allegations therein.

51.    That this liability for damages caused by delay and or cancellation of international airfare pursuant to Articles 19 and 22(1) of the Montreal Convention is limited by the of 4560 SDR.

ANSWER:    As an answer to paragraph 51 of the Complaint, admits that the rights and liabilities of the parties are exclusively governed by the provisions of the Montreal Convention and otherwise refers all questions of law to be decided by the Court.

52.    That, while being estranged at Copenhagen International Airport, the above-named Plaintiff sought to obtain travel-related assistance from the above-named defendant, but

---

[10] http://www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf
[11] Cf., Ikekpeazu v. Air France, No. 3:04cv00711 (RNC), 2004 U.S. Dist. LEXIS 24580 at *4 (D. Conn. Dec. 6, 2004) (recognizing financial injury as a cognizable claim, but not emotional injury)(also holding that if Plaintiff can prove that his lost days of work were occasioned by the delay and resulted in financial injury, Plaintiff can recover for this economic loss under the Montreal Convention).

employees of said defendant was recklessly indifferent to plaintiff's travel related and health-related needs.

ANSWER:    As an answer to paragraph 52 of the Complaint, denies the allegations

therein.

53.    That, at all times material hereto, defendant's employees stationed at Copenhagen International Airport did not offer any meaningful assistance to the above- named plaintiff while they were estranged at Copenhagen International Airport for
approximately six (6) hours.

ANSWER:    As an answer to paragraph 53 of the Complaint, denies the allegations

therein.

54.    That, while being subjected to the above-identified delays, the above- named Plaintiff were subjected to psychical inconvenience, exhaustion and travel stress of additional travel time in excess of almost 5 hours.

ANSWER:    As an answer to paragraph 54 of the Complaint, denies the allegations

therein.

55.    That as a direct and proximate cause of delay and or cancellation of international airfare for more than 5 hours on August 24, 2014, the above-named Plaintiff suffered physical discomfort resulting in physical exhaustion, fatigue and arrhythmia.

ANSWER:    As an answer to paragraph 55 of the Complaint, denies the allegations

therein.

56.    That subsequent to Plaintiff's late arrival to Chicago, her daily living activities were severely limited for several days due to continuing arrhythmia.

ANSWER:    As an answer to paragraph 56 of the Complaint, lacks knowledge or

information sufficient to form a belief as to the truth of the allegations therein.

57.    That, upon information and believe, upon plaintiff's late arrival to Chicago she contacted the above-named defendant with her claim for compensation against SAS in accordance with Article 22(6) of Montreal Convention for damages caused by delay and or cancellation of international airfare flight SK 943.

ANSWER:    As an answer to paragraph 57 of the Complaint, lacks knowledge or

information sufficient to form a belief as to the truth of the allegations therein.

58.     That, upon information and believe, said notice of claim was ignored by the above-named defendant.

ANSWER:     As an answer to paragraph 58 of the Complaint, denies the allegations

therein.

59.     That due to failure to answer pre-suit settlement claims on the part of all the above-named defendant, the above-named Plaintiff is entitle to reasonable attorney's fees pursuant to the Article 22(6) of the Montreal Convention.[12]

ANSWER:     As an answer to paragraph 59 of the Complaint, denies the allegations

therein.

## AS TO COUNT II

60.     That the above-named Plaintiff is hereby repeating, re-alleging, and adopting §§ 1-13 of Jurisdiction and §§ 14-21 of Parties; §§ 22-39 of Statement of Claim; §§ 40-59 of Count One sections of this entire Complaint at Law as set forth fully herein and incorporates them by reference:

ANSWER:     As an answer to paragraph 60 of the Complaint, repeats, reiterates and

realleges each and every admission and denial made in response to the paragraphs identified

therein with the same force and effect as if set forth herein at length.

61.     That, at all time material hereto, the European Union Regulation No. 261 was adopted by the European Parliament and the Council of the European Union on February 11, 2004.[13]

---

[12] Montreal Convention preserved the so-called "settlement inducement provision" contained in Article 22(4) of the Hague Protocol amendments.  To that extent settlement inducement provision" contained in Article 22(4) of the Hague Protocol amendments was codified in the Article 22(6) of the Montreal Convention, which states as follows:

> "The limits prescribed in Article 21 and in this Article shall not prevent the court from awarding, in accordance with its own law [12], in addition, the whole or part of the court costs and of the other expenses of the litigation incurred by the plaintiff, including interest.  The foregoing provision shall not apply if the amount of the damages awarded, excluding court costs and other expenses of litigation, does not exceed the sum which the carrier has offered in writing to the plaintiff within a period of six months from the date of the occurrence causing the damage, or before the commencement of the action, if that is later."

ANSWER:     As an answer to paragraph 61 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

62.     That the purpose of EU Regulation 261/ 2004 is, in part, to provide standardized compensation - separate from individualized compensation which may be provided by other laws upon individualized proof - for the "serious trouble and inconvenience" inevitably suffered by all passengers who experience flight cancellations or lengthy delays, particularly on international carrier routes.

ANSWER:     As an answer to paragraph 62 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

63.     That pursuant to Article 3, EU Regulation 261 applies to passengers with confirmed reservations on (a) flights departing from an airport located in the territory of a member state of the European Union, and (b) flights departing from a country outside the European Union to an airport in the territory of a member state of the European Union, if the operating carrier of the flight concerned is an air carrier with an operating license granted by a member state of the European Union.

ANSWER:     As an answer to paragraph 63 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

64.     That pursuant to Article 5, confirmed passengers on flights covered by Article 3, in case of cancellation of the flight "have the right to compensation by the operating air carrier in accordance with Article 7 of the Regulation unless:  (a) they are informed of the cancellation at least two weeks before the scheduled time of departure; or (b) they are informed of the cancellation between two weeks and seven days before the scheduled time of departure and are offered re-routing, allowing them to depart no more than two hours before the scheduled time of departure and to reach their final destination less than four hours after the scheduled time of arrival; or (c) they are informed of the cancellation less than seven days before the scheduled time of departure and are offered re-routing, allowing them to depart no more than one hour before the scheduled time of departure and to reach their final destination less than two hours after the scheduled time of arrival."

ANSWER:     As an answer to paragraph 64 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

---

[13] Regulation (EC) No 261/2004 of the European Parliament and of the Council of 11 February 2004 establishing common rules on compensation and assistance to passengers in the event of denied boarding and of cancellation or long delay of flights (OJ 2004 L 46, p. 1).

65.    That also under Article 3, an "operating air carrier shall not be obliged to pay compensation in accordance with Article 7, if it can prove that the cancellation is caused by extraordinary circumstances which could not have been avoided even if all reasonable measures had been taken."

ANSWER:    As an answer to paragraph 65 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

66.    That pursuant to Article 7, passengers eligible under Articles 3 and 5 on flights that were cancelled, "shall receive compensation amounting to: (a) EUR 250 for all flights of 1500 kilometers or less; (b) EUR 400 for all intra-Community flights of more than 1500 kilometers, and for all other flights between 1500 and 3500 kilometers; (c) EUR 600 for all flights not falling under (a) or (b)."

ANSWER:    As an answer to paragraph 66 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

67.    That Article 7 also provides that the operating carrier may reduce the compensation amounts by 50% when "passengers are offered re-routing to their final destination on an alternative flight, the arrival time of which does not exceed the scheduled arrival time of the flight originally booked (a) by two hours, in respect of all flights of 1500 kilometers or less; or (b) by three hours, in respect of all intra-Community flights of more than 1500 kilometers and for all other flights between 1500 and 3500 kilometers; or (c) by four hours, in respect of all flights not falling under (a) or (b)."

ANSWER:    As an answer to paragraph 67 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

68.    That on November 19, 2009, in Sturgeon v. Condor Flugdienst GmbH, the European Court of Justice ruled that "Article 5, 6 and 7 of Regulation No 261/2004 must be interpreted as meaning that passengers whose flights are delayed may be treated, for the purposes of the application of the right to compensation, as passengers whose flights are cancelled and may thus rely on the right to compensation laid down in Article 7 of the regulation where they suffer, on account of a flight delay, a loss of time equal to or in excess of three hours."

ANSWER:    As an answer to paragraph 68 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

69.    That in addition, the European Court of Justice ruled that "Article 5(3) of Regulation No 261/2004 must be interpreted as meaning that a technical problem in an aircraft which leads to the cancellation or delay of a flight is not covered by the concept of

17

"extraordinary circumstances" within the meaning of that provision, unless that problem stems from events which, by their nature or origin, are not inherent in the normal exercise of the activity of the air carrier concerned and are beyond its actual control."

ANSWER:    As an answer to paragraph 69 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

70.    That in its recent opinion dated May 15, 2012 Advocate General of the Court of Justice of the European Union proposed to the High Court to confirm its prior decision in Sturgeon v. Condor Flugdienst GmbH dated November 19, 2009, whereby the European Court of Justice ruled that "Article 5, 6 and 7 of Regulation No 261/2004 must be interpreted as meaning that passengers whose flights are delayed may be treated, for the purposes of the application of the right to compensation, as passengers whose flights are cancelled and may thus rely on the right to compensation laid down in Article 7 of the regulation where they suffer, on account of a flight delay, a loss of time equal to or in excess of three hours." [14]

ANSWER:    As an answer to paragraph 70 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

71.    That the right to compensation under Article 7 of EU Regulation 261 is separate from any right to compensation or damages, based upon individualized proof, any passenger may have premised on a separate cause of action under separate law.

ANSWER:    As an answer to paragraph 71 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

72.    That, at all times material hereto, the above-named defendant failed to tender to the above-named plaintiffs compensation required to be tendered by Articles 7 of the EU Directive 261/2004 despite the fact that such compensation for delay in performance of "community carrier" is mandated pursuant to Sturgeon v. Condor Flugdienst GmbH.

ANSWER:    As an answer to paragraph 72 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

73.    That upon information and believe said duty to compensate for delay or cancellation of international airfare pursuant to Articles 6 and 7 of EU 261 is incorporated or should have been incorporated into the Tariff and Art. 15.4 of its Contract of General Condition of Carriage as publicly posted by the above-named defendant on its webpage and as filed by the above-named defendant with pertinent U.S. federal agencies. [15]

---

[14] http://curia.europa.eu/jcms/upload/docs/application/pdf/2012-05/cp120063en.pdf.

[15] www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf.

ANSWER:    As an answer to paragraph 73 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

74.    That such contractual term constitutes voluntary undertaking by the above-named defendant.

ANSWER:    As an answer to paragraph 74 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

75.    That at all times material hereto the above-named defendant perpetrated material breach of Art. 15.4 of its General Conditions of Carriage and further breached entire contract for international airfare by failing to tender to the Plaintiff the compensation in the sum of 600 Euro.

ANSWER:    As an answer to paragraph 75 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

76.    That said breach of self-imposed obligation incorporated in Art. 15.4 of defendant's General Condition of Carriage was a material breach of contractual condition subsequent, which was imposed upon the above-named Parties by terms of their entire contractual undertaking.

ANSWER:    As an answer to paragraph 76 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

77.    That as a direct and proximate cause of the above-identified failure of defendant to compensate the above-named Plaintiff for damages caused by delay on departure of its flight No. 943 on August 24, 2014, the above-named Plaintiff incurred pecuniary damages in the aggregated sum of 600 euros.

ANSWER:    As an answer to paragraph 77 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

## AS TO COUNT III

78.    That the above-named Plaintiff is hereby repeating, re-alleging, and adopting §§ 1-13 of Jurisdiction and §§ 14-21 of Parties; §§ 22-39 of Statement of Claim; §§ 40-59 of Count One; §§ 60-77 of Count Two sections of this entire Complaint- at-Law as set forth fully herein and incorporates them by reference:

ANSWER:    As an answer to paragraph 78 of the Complaint, repeats, reiterates and realleges each and every admission and denial made in response to the paragraphs identified therein with the same force and effect as if set forth herein at length.

79.    That at all times material hereto the above-named defendant owed to the above-named Plaintiff the "duty to inform " as promulgated by Art. 14 of the Regulation of European Union No. 261/2004.

ANSWER:    As an answer to paragraph 79 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

80.    That, at all times material hereto, Art. 14 of EU 261/2004 included the following language:
"Article 14 Obligation to inform passengers of their rights

1.    The operating air carrier shall ensure that at check-in a clearly legible notice containing the following text is displayed in a manner clearly visible to passengers:
'If you are denied boarding or if your flight is cancelled or delayed for at least two hours, ask at the check-in counter or boarding gate for the text stating your rights, particularly with regard to compensation and assistance'.

2.    An operating air carrier denying boarding or canceling a flight shall provide each passenger affected with a written notice setting out the rules for compensation and assistance in line with this Regulation. It shall also provide each passenger
affected by a delay of at least two hours with an equivalent notice. The contact details of the national designated body referred to in Article 16 shall also be given to the passenger in written form.

3. In respect of blind and visually impaired persons, the provisions of this Article shall be applied using appropriate alternative means." [16]

ANSWER:    As an answer to paragraph 80 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

---

[16] Official Text of the Regulation of European Union 261/2004 entered into force on 17 February 2005 at http://eurlex.europa.eu/ LexUriServ/LexUriServ.do?uri =OJ:L:2004: 046:0001:0007:EN:PDF

81.     That at all times material hereto the above-named Defendant breached said duty by failing to adequately and meaningfully inform the above-named Plaintiff of particulars of delays and or cancellation of her flight and of all remedies available to her.

ANSWER:     As an answer to paragraph 81 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

82.     That upon information and believe said "duty to inform" as promulgated and mandated by Article 14 of EU 261 was incorporated into the Tariff and par. 9.3 of defendant's General Condition and Contract of Carriage as publicly posted by the above- named defendant on its webpage and as filed by the above-named defendant with pertinent U.S. federal agencies.[17]

ANSWER:     As an answer to paragraph 82 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

83.     That the above-identified reckless indifference and withholding of "duty to inform" on the part of S.A.S. constituted breach of self-imposed contractual obligation as evidenced by defendant's filed Tariff and Contract of Carriage.[18]

ANSWER:     As an answer to paragraph 83 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

84.     That such contractual term constitutes voluntary undertaking by the above-named defendant.

ANSWER:     As an answer to paragraph 84 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

85.     That such voluntarily assumed contractual "duty to inform" is a material contractual term and contractual covenant.

ANSWER:     As an answer to paragraph 85 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

86.     That such voluntarily assumed "duty of care" is a condition subsequent covenant of entire contractual undertaking voluntarily assumed by the above-named defendant.

---

[17] http://www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf.
[18] EU Directive 261/2004 is applicable to S.A.S. because of its domiciliary status at the country member of European Union.

ANSWER:    As an answer to paragraph 86 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

87.    That by withholding of performance of voluntarily assumed contractual "duty to inform", the above-named defendant perpetrated material breach of parties' contract of international airfare carriage.

ANSWER:    As an answer to paragraph 87 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

88.    That, at all times material hereto, the above-named Defendant breached said "duty to inform" by failing to adequately and meaningfully inform the above-named Plaintiff of particulars of delays and or cancellation of their flight and of all remedies available to them.

ANSWER:    As an answer to paragraph 88 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

89.    That, as a direct and proximate cause of the above-identified failure of the above-named defendant to tender its contractual performance due on material contractual term of "duty to inform," the above-named Plaintiff incurred actual, general, special, incidental and consequential damages in the sum to be ascertained and proven at trial.

ANSWER:    As an answer to paragraph 89 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

## AS TO COUNT IV

90.    That the above-named Plaintiff is hereby repeating, re-alleging, and adopting §§ 1-13 of Jurisdiction and §§ 14-21 of Parties; §§ 22-39 of Statement of Claim; §§ 40-59 of Count One; §§ 60-77 of Count Two; §§ 78-89 of Count Three sections of this entire Complaint as set forth fully herein and incorporates them by reference:

ANSWER:    As an answer to paragraph 90 of the Complaint, repeats, reiterates and realleges each and every admission and denial made in response to the paragraphs identified therein with the same force and effect as if set forth herein at length.

91.    That European Community Directive 261/2004 is latest strict liability international consumer protection law enacted by European Parliament in 2004.

22

ANSWER:    As an answer to paragraph 91 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

92.    That said Directive applies to any and all airlines domiciled within the European Union, as well as to airlines arriving or departing from any airports within the European Community.

ANSWER:    As an answer to paragraph 92 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

93.    That said Directive applies to in-bound and out-bound as well as intra-community flights operated by "community carriers" such as the above-named defendant.

ANSWER:    As an answer to paragraph 93 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

94.    That said Directive provides private right of action for any passengers who are entitle to compensation pursuant to Articles 7 and 9 of said Directive.

ANSWER:    As an answer to paragraph 94 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

95.    That Article 9 of said Directive establishes the right of estranged passengers to receive certain care from airline at airline expense such as local lodging, food coupons, telecommunication services and etc.

ANSWER:    As an answer to paragraph 95 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

96.    That despite clear obligation to provide the above-named plaintiff with food, local shelter and other assistance as mandated by Article 9 of EU 261/2004, at all times material hereto the above-named defendant willfully breached said obligation of care and refused to render any aid required to be rendered under Article 9 of EU 261/2004.

ANSWER:    As an answer to paragraph 96 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

97.    That, Art. 9 of European Union Regulation 261/2004 states at following:

"Article 9: Right to care

1.     Where reference is made to this Article, passengers shall be offered free of charge:
(a) meals and refreshments in a reasonable relation to the waiting time;
(b) hotel accommodation in cases— where a stay of one or more nights becomes necessary, or — where a stay additional to that intended by the passenger becomes necessary;
(c) transport between the airport and place of accommodation (hotel or other).

2. In addition, passengers shall be offered free of charge two telephone calls, telex or ax messages, or e-mails.

3. In applying this Article, the operating air carrier shall pay particular attention to the needs of persons with reduced mobility and any persons accompanying them, as well as to the needs of unaccompanied children."[19]

ANSWER:     As an answer to paragraph 97 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

98.     That upon information and believe, compliance of Scandinavia Airlines with EU 261/2004 is a condition precedent of holding valid license issued by pertinent European air-transportation authorities.

ANSWER:     As an answer to paragraph 98 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

99.     That likewise the above-named defendant is obligated to render "duty of care" pursuant to recently pronounced controlling legal authorities.[20]

ANSWER:     As an answer to paragraph 99 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

100.     That at that times material hereto the above-named plaintiffs were not rendered any care required by the Article 9 of the EU 261/2004, which is applicable to defendant due to its domicile within European Community.

ANSWER:     As an answer to paragraph 100 of the Complaint, denies the factual

---

[19] Official Text of the Regulation of European Union 261/2004 entered into force on 17 February                                             2005                                             at http://eurex.europa.eu/LexUriServ/LexUriServ.do?uri=OJ:L:2004:046:0001:0007:EN:PDF.
[20] http://curia.europa.eu/jcms/upload/docs/application/pdf/2012-03/cp120032en.pdf.

allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

101.    That despite clear legal obligation to provide the above-named plaintiff with food, water, refreshments, telecommunication services and local shelter and other assistance as mandated by Article 9 of EU 261/2004, at all times material hereto the above-named defendant willfully breached said obligation of care and refused to render any aid required to be rendered under Article 9 of EU 261/2004.

ANSWER:    As an answer to paragraph 101 of the Complaint, denies the factual

allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

102.    That recently the "duty of care" toward its passengers on the part of the above-named defendant was reaffirmed in the case of Denise McDonagh v Ryanair Ltd., European Court of Justice Case C-12/11,[21] which is now controlling legal precedent within European Community. [22]

ANSWER:    As an answer to paragraph 102 of the Complaint, denies the factual

allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

103.    That said "duty of care" as promulgated and mandated by Article 14 of EU 261 was incorporated into the Tariff and par. 9.3 of defendant's General Condition and Contract of Carriage as publicly posted by the above-named defendant on its webpage and as filed by the

---

[21] http://eur- lex.europa.eu/LexUriServ/LexUriServ.do?uri=CELEX:62011CJ0012:EN:HTML

[22] See, Denise McDonagh v Ryanair Airlines Ltd, case C -11/12 (holding that Article 5 of Regulation (EC) No 261/2004 of the European Parliament and of the Council of 11 February 2004 establishing common rules on compensation and assistance to passengers in the event of denied boarding and of cancellation or long delay of flights, and repealing Regulation (EEC) No 295/91, must be interpreted as meaning that circumstances such as the closure of part of European airspace as a result of the eruption of the Eyjafjallajökull volcano constitute 'extraordinary circumstances' within the meaning of that regulation which do not release air carriers from their obligation laid down in Articles 5(1)(b) and 9 of the regulation to provide care);(also holding that Articles 5(1)(b) and 9 of Regulation No 261/2004 must be interpreted as meaning that, in the event of cancellation of a flight due to 'extraordinary circumstances' of a duration such as that in the main proceedings, the obligation to provide care to air passengers laid down in those provisions must be complied with, and the validity of those provisions is not affected);(however, an air passenger may only obtain, by way of compensation for the failure of the air carrier to comply with its obligation referred to in Articles 5(1)(b) and 9 of Regulation No 261/2004 to provide care, reimbursement of the amounts which, in the light of the specific circumstances of each case, proved necessary, appropriate and reasonable to make up for the shortcomings of the air carrier in the provision of care to that passenger, a matter which is for the national court to assess).

above-named defendant with pertinent the U.S. federal agencies.[23]

    ANSWER:    As an answer to paragraph 103 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

    104.    That at all times material hereto defendant's customer services at Copenhagen International Airport was very poorly organized by Scandinavian Airlines, the employees of which were non-responsive and visibly indifferent to a travel-related needs of this elderly disable passenger.

    ANSWER:    As an answer to paragraph 104 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

    105.    That such reckless indifference and withholding of "right to care" on the part of the above-named defendant constituted breach of statutory "duty of care" imposed by Art. 9 of the EU 261. [24]

    ANSWER:    As an answer to paragraph 105 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

    106.    That such reckless indifference and withholding of "right to care" on the part of S.A.S. also constituted breach of self-imposed contractual obligation as evidenced by Art. 9.1. and Art 9.3. of defendant's filed Tariff and General Condition of Carriage.[25]

    ANSWER:    As an answer to paragraph 106 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

    107.    That such reckless indifference was manifested in the following:

---

[23]http://www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf
[24] The European Union Directive No. 261/2004 is applicable to S.A.S. because of its domiciliary status at the Kingdom of Sweden, which is a country-member of the European Community, which is subsequent to the Treaty of Rome of 1957 as amended by the Treaty of Lisbon of 2009 presently known as the European Union.
[25] Conditions of Carriage as published on website of S.A.S. pursuant to the art. 205 sec. 3 of the Act of 3 July 2002 Aviation Law.(Journal of Laws of 2002, No. 130, item 1112) is outdated and appears to be in conflict with EU Directive 261/2004.

(a)     Plaintiff was not offered any pecuniary compensation due under Article 5, 7 and 9 of the EU Directive No. 261/2004; or

(b)     Plaintiff was not offered meaningful comparable re-routing options or compensation due to him pursuant to Article 7(1)(c) of EU 261/2004 in the sum of €600 per passenger due under terms of EU Directive 261/2004;

(c)     Airline did not offer any food, water, meals and refreshments in violation "duty to care" set forth by Article 9 of EU Directive 261/2004.

ANSWER:    As an answer to paragraph 107 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

108.    That at all times material hereto said "duty of care" as promulgated and mandated by Article 9 of EU 261 was incorporated into the Tariff and Condition and Art. 10.2 of defendant's General Condition of Carriage as publicly posted by the above- named defendant on its webpage and as filed by the above-named defendant with pertinent U.S. federal agencies.[26]

ANSWER:    As an answer to paragraph 108 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

109.    That the above-identified reckless indifference and withholding of "duty of care" on the part of S.A.S. Airline constituted breach of self-imposed contractual obligation as evidenced by defendant's filed Tariff and Art. 10.2 of its Contract of Carriage.[27]

ANSWER:    As an answer to paragraph 109 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

110.    That such contractual term constitutes voluntary undertaking by the above-named defendant.

ANSWER:    As an answer to paragraph 110 of the Complaint, denies the factual

---

[26] http://www.lot.com/us/en/conditions-of-carriage
[27] EU Directive 261/2004 is applicable to LOT Polish Airlines pursuant to the art. 205 sec. 2a of the Act of 3 July 2002 Aviation Law (Journal of Laws 02.130.1112).

allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

111.    That such voluntarily assumed contractual "duty of care" is a material contractual term and covenant.

ANSWER:    As an answer to paragraph 111 of the Complaint, denies the factual

allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

112.    That such voluntarily assumed "duty of care" is a condition subsequent covenant of entire contractual undertaking voluntarily assumed by the above-named defendant.

ANSWER:    As an answer to paragraph 112 of the Complaint, denies the factual

allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

113.    That by withholding of performance of voluntarily assumed contractual "duty of care", the above-named defendant perpetrated material breach of its contract of international airfare carriage.

ANSWER:    As an answer to paragraph 113 of the Complaint, denies the factual

allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

114.    That as direct and proximate cause of said breach of voluntarily assumed duty of care and subsequent material breach of contract of international airfare carriage perpetrated by the above-named defendant, the above-named Plaintiff was forced to purchase local meals, food, refreshment and water for their needs at her own expense, thereby incurring actual, general, special, incidental and consequential damages in the sum to be proven at trial.

ANSWER:    As an answer to paragraph 114 of the Complaint, denies the factual

allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

## AS TO COUNT V

115.    That the above-named Plaintiff is hereby repeating, re-alleging, and adopting §§ 1-13 of Jurisdiction and §§ 14-21 of Parties; §§ 22-39 of Statement of Claim; §§ 40-59 of Count One; §§ 60-77 of Count Two; §§ 78-89 of Count Three; §§ 90-114 of Count Four of this entire Complaint as set forth fully herein and incorporates them by reference:

ANSWER:    As an answer to paragraph 115 of the Complaint, repeats, reiterates and

28

realleges each and every admission and denial made in response to the paragraphs identified therein with the same force and effect as if set forth herein at length.

116.    That, at all times material hereto, the above-named parties entered into binding legal agreement for international airfare transportation of the above-named Plaintiff by the above-named Defendant from Chicago, Illinois to Moscow, Russian Federation via connecting stop at Copenhagen Denmark, and than [*sic*] on August 24, 2014 back to the USA via connecting stop at Copenhagen, Denmark.

ANSWER:    As an answer to paragraph 116 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

117.    That at all times material hereto the above-referenced contract incorporated the following defendant's duties

(a)    "duty to compensate" for delay or cancellation of the international airfare as promulgated by Art. 19 of the Montreal Convention, as incorporated by Art.

9.3.1. and Art. 15.1.1 of defendant's General Condition of Carriage;

(b)    "duty to compensate" for delay or cancellation of the international airfare as promulgated by Art. 5 of EU 261/2004, as incorporated by Art. 15.4 of defendant's General Condition of Carriage;

(c)    "duty to render care" as set forth in Art 9 of the EU Regulation 261/2004, as incorporated by Art. 9.3 of defendant's General Condition of Carriage;

(d)    "duty to inform" as set forth by Art 14 of the EU Regulation 261/2004, as incorporated by Art. 2.4 of defendant's General Condition of Carriage;

ANSWER:    As an answer to paragraph 117 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

118.    That, at all times material hereto, all the above-identified contractual legal duties were voluntarily assumed and self-imposed by S.A.S.

29

ANSWER:    As an answer to paragraph 118 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

119.    That, at all times material hereto, all the above-numerated legal duties were incorporated in defendant's Contract of Carriage published by SAS via http://www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf.

ANSWER:    As an answer to paragraph 119 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

120.    That, at all times material hereto, all the above-numerated legal duties were incorporated in defendant's Tariff filed by defendant with pertinent governmental agencies.

ANSWER:    As an answer to paragraph 120 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

121.    That, at all times material hereto, said legal duty was published on defendant's home page titled as "General Condition of Carriage" http:// http://www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf.

ANSWER:    As an answer to paragraph 121 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

122.    That said contract for international airfare transportation and carriage was formed and entered into at the place of plaintiff's domicile at Chicago, Illinois, USA.

ANSWER:    As an answer to paragraph 122 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

123.    That at all times material hereto the above-named defendant breached said contractual voluntarily assumed and self-imposed contractual duties by:

(a)    refusing to compensate the Plaintiff for delay on departure of flight No. 943 on or about August 24, 2013 in contravention of Art. 15.1.1 of its Contract of Carriage;

(b)    failing to adequately inform the Plaintiff in regard to cause of such

30

scheduling irregularities as well as subsequent changes of their travel itineraries; and

(c)    failing to tender its contractual performance of rendition of meaningful

and suitable assistance of local lodging, food and pier dime expenses to the above-named

plaintiff while he was estranged at Copenhagen International Airport for more than 5

days due to delay on departure of defendant's flight No. 943.

ANSWER:    As an answer to paragraph 123 of the Complaint, denies the factual

allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

124.    That by failing to tender it contractual performance of duties set forth by Art. 5, 6, 7, 9 and 14 of EU 261/2004, the above-named defendant perpetrated material breach of pertinent contractual covenants, which were incorporated into said contractual agreement for international airfare transportation of the above-named plaintiff on August 24, 2014 from Copenhagen to Chicago, USA.

ANSWER:    As an answer to paragraph 124 of the Complaint, denies the factual

allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

125.    That this breach of self - imposed voluntary contractual duties by the above-named defendant on August 24, 2014 was a material breach of essential condition precedent imposed upon the above-named defendant by operation of parties contract of carriage in lieu of international airfare transportation.

ANSWER:    As an answer to paragraph 125 of the Complaint, denies the factual

allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

126.    That alternatively said breach of contractual duties by the above-named defendant was material breach of essential *ex contractu* condition subsequent imposed upon the above-named defendant by operation of said contract.

ANSWER:    As an answer to paragraph 126 of the Complaint, denies the factual

allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

127.    That, at all times material hereto, the above-named plaintiff duly performed all conditions and covenants required to be performed by said contract o carriage in lieu of international airfare transportation.

31

ANSWER:    As an answer to paragraph 127 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

128.    That as a direct and proximate cause of said material breach of contract perpetrated by the above-named defendant on August 24, 2014, the above-named plaintiff incurred actual, general, special, incidental and consequential damages in the sum to be determined at trial.

ANSWER:    As an answer to paragraph 128 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

129.    That pursuant to Wolens doctrine, as recently affirmed by Northwest, Inc. v. S. Binyomin Ginsberg (2014 US ___), the common law cause of action ex contractu against the above-named defendant is not preempted by the Airline Deregulation Act, (ADA), 49 USC § 41713 (2010)(Public Law No. 95-504). [28]

ANSWER:    As an answer to paragraph 129 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

130.    That pursuant to binding legal authority of the Narkiewicz-Laine doctrine, the common law cause of action for breach of contract is not preempted by the Montreal Convention.[29]

ANSWER:    As an answer to paragraph 130 of the Complaint, denies the factual allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

131.    The Complaint fails to state a claim upon which relief can be granted.

---

[28] American Airlines, Inc. v. Wolens, 115 S.Ct. 817, 513 U.S. 219, 130 L.Ed.2d 715, 63 USLW 4066 (U.S.Ill.,1995)(holding that Airline Deregulation Act did not preempt action against airline based on state contract law).

[29] Narkiewicz-Laine v. Scandinavian Airlines Sys., 587 F. Supp. 2d 888, 890 (N.D. Ill. 2008)(holding that "claims may be brought under the Montreal Convention or they may be brought 'in contract or in tort or otherwise' but such claims are subject to an affirmative defense based on the conditions and limits of liability set out in the Montreal Convention.") (quoting Montreal Convention, art. 29); accord Cosgrove-Goodman v. UALCorp., No. 10 CV 1908, 2010 WL 2197674, at *3 (N.D. Ill. June 2, 2010).

32

**AS AND FOR A SECOND AFFIRMATIVE DEFENSE**

132.    The transportation out of which the subject matter of this action arose was "international carriage" within the meaning of the Montreal Convention, and the rights and liabilities of the parties in this action are governed by the provisions of said Montreal Convention.

133.    Pursuant to Article 17 of the Montreal Convention, SAS is not liable to plaintiff because the alleged damage was not caused by an "accident."

**AS AND FOR A THIRD AFFIRMATIVE DEFENSE**

134.    Defendant SAS repeats, reiterates and realleges each and every allegation in paragraph 132 of this Answer with the same force and effect as if herein set forth in full.

135.    Pursuant to Article 19 of the Montreal Convention, defendant SAS is not liable for the damage caused by plaintiff's delay because SAS took all measures that could reasonably be required to avoid the damage.

**AS AND FOR A FOURTH AFFIRMATIVE DEFENSE**

136.    Defendant SAS repeats, reiterates and realleges each and every allegation in paragraph 132 of this Answer with the same force and effect as if herein set forth in full.

137.    Pursuant to Article 19 of the Montreal Convention, defendant SAS is not liable to plaintiff for any non-economic damages.

**AS AND FOR A FIFTH AFFIRMATIVE DEFENSE**

138.    Defendant SAS repeats, reiterates and realleges each and every allegation in paragraph 132 of this Answer with the same force and effect as if herein set forth in full.

139.    Pursuant to Articles 20, 21 and 22 of the Montreal Convention, as well as the tariffs on file with the U.S. Department of Transportation and the conditions of carriage as set

forth in the relevant contract of transportation, defendant SAS is not liable to plaintiff, or, in the alternative, SAS's liability is limited.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

140.    SAS has no legal or contractual duty to pay compensation in accordance with EU 261 as EU 261 does not provide a cause of action that can be brought in the United States and in any event the liability of SAS, if any, with respect to the damages allegedly sustained by Plaintiff is limited or excluded in accordance with the terms of EU 261.

WHEREFORE, defendant SCANDINAVIAN AIRLINES SYSTEM demands judgment dismissing the Complaint of ELLEN KOGAN in its entirety or, alternatively, judgment limiting its liability pursuant to the foregoing, together with costs and disbursements and such other and further relief as this Court deems just and proper.

JOHNSON & BELL, LTD.


By:/s/ Joseph F. Spitzzeri
            33 West Monroe Street
            Suite 2700
            Chicago, Illinois 60603-5404
            (312) 372-0770

                    -and-

            CONDON & FORSYTH LLP
            7 Times Square
            New York, New York 10036
            (212) 490-9100

            *Attorneys for Defendant*
*SCANDINAVIAN AIRLINES SYSTEM*

TO:    GOROKHOVSKY LAW OFFICE, L.L.C.
            10919 North Hedgewood Ln.
            Mequon, WI 53092
            Tel: (414) 581-1582
            *Attorneys for Plaintiff*