**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | x | |
| **ELLEN KOGAN** | : | **Case No.   1:14-cv-09551** |
| | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Honorable Elaine E. Bucklo** |
| **vs.** | : | |
| | : | **Magistrate Michael Mason** |
| **SAS GROUP** | : | |
| **d/b/a SCANDINAVIAN AIRLINES,** | : | |
| **A foreign corporation** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |
| | : | |
| | x | |

**DEFENDANT SCANDINAVIAN AIRLINES SYSTEM's
ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT**

Defendant SCANDINAVIAN AIRLINES SYSTEM (incorrectly sued as SAS GROUP D/B/A SCANDINAVIAN AIRLINES and hereafter "SAS"), by and through its attorneys, Bartholomew J. Banino of Condon & Forsyth LLP and Joseph F. Spitzzeri of Johnson & Bell, Ltd., for its Answer and Affirmative Defenses to Plaintiff's Amended Class Action Complaint herein states as follows:

**AS TO JURISDICTION**

1.     That this civil action arises under the Treaty of the United States known as the Convention for the Unification of Certain Rules Relating to International Transportation by Air, concluded at Warsaw, Poland, October 12, 1929 ("Warsaw Convention"), 49 Stat. 3000, T.S. No. 876, 137 L.N.T.S. 11 (1934), reprinted in note following 49 U.S.C. § 1502 (1976)[1] or in alternative under Article 19 of the Montreal Convention for the Unification of Certain Rules for

---

[1] Convention for the Unification of Certain Rules Relating to International Carriage by Air, signed at Warsaw on 12 October 1929, as amended and supplemented by the Hague Protocol of 28 September 1955, the Guadalajara Convention of 18 September 1961, the Guatemala Protocol of 8 March 1971, and the four additional Montreal Protocols of 25 September 1975.

International Carriage by Air, May 28, 1999 (entered into force on Nov. 4, 2003) (Montreal Convention), reprinted in S. Treaty Doc. No. 106-45, which is the supreme law of this land.[2]

> ANSWER: Admit that plaintiff's claims are exclusively governed by a treaty of the United States known as the Convention for the Unification of Certain Rules Relating to International Carriage by Air, concluded at Montreal, Canada, opened for signature on May 28, 1999, *reprinted in* S. Treaty Doc. 106-45, CCH Av. L. Rep. ¶ 27,400-59, 1999 WL 33292734 (1999) ("Montreal Convention") and otherwise refers all questions of law to be decided by the Court.

2. That, at all times material hereto, the above-named Plaintiff accepted an offer of international air fare transportation extended to her by the above-named Defendant, SCANDINAVIAN AIRLINES SYSTEM., thereby entering into legally binding contract for round-trip international airfare carriage to be performed by the above-named Defendant from the USA to the European Union and back to the USA.

> ANSWER: As an answer to paragraph 2 of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein and otherwise refers all questions of law to be decided by the Court.

3. That said international airfare consisted of the following travel segments:

   (a) Travel on July 16, 2014 from Chicago, Illinois, USA to Moscow, Russian Federation via connecting stop at Stockholm, Sweden.

   (b) Return flight on August 24, 2014 from Moscow, Russia back to Chicago, Illinois, USA via connecting stop at Copenhagen, Denmark.

> ANSWER: As an answer to paragraph 3 of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

4. That the true and correct copy of Plaintiff's international travel intermarries is appended herewith marked as Exhibit A, incorporated by reference and made a part of this entire Complaint at Law.

---

[2] http://www.state.gov/e/eb/rls/othr/ata/114157.htm

ANSWER:    As an answer to paragraph 4 of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

5.    That, at all times material hereto, the above-named Plaintiff received confirmed airfare tickets, reflecting the above-identified travel arrangements..

ANSWER:    As an answer to paragraph 5 of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

6.    That said agreement for international airfare transportation was entered into at the above-stated place of plaintiff's domicile located within the Cook County, Illinois, USA.

ANSWER:    As an answer to paragraph 6 of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

7.    That in accordance with the above-referenced international airfare arrangement on August 24, 2014 the above-named Plaintiff was confirmed to depart from Copenhagen to Chicago on the board of SAS flight SK 943.

ANSWER:    As an answer to paragraph 7 of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

8.    That the true and correct copy of SAS General Condition and Contract of Carriage is appended herewith marked as Exhibit B, incorporated by reference and made a part of this entire First Amended Class Action Complaint at Law.

ANSWER:    As an answer to paragraph 8 of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

9.     That, upon information and believe, due to unknown reasons, timely departure of defendant's flight SK 943 on August 24, 2014 from Copenhagen, Denmark was initially delayed for excess of five (5) hours.

ANSWER:     As an answer to paragraph 9 of the First Amended Class Action Complaint, admits that Flight SK 943 on August 24, 2014 experienced a delay in the originally scheduled departure time.

10.     That due to such delay, cancellation and frustration of travel plans, the above-named Plaintiff arrived o Chicago Illinois at approximately 11:50PM instead of 5:30PM.

ANSWER:     As an answer to paragraph 10 of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

11.     That while subjecting the above-named Plaintiff to extensive delay of international airfare in excess of 5 hours, the above-named defendant did not provided to her with meaningful and or sufficient care or assistance, as mandated by Art. 9 of the EU 261/2004.

ANSWER:     As an answer to paragraph 11 of the First Amended Class Action Complaint, denies the allegations therein.

12.     That, while being subjected to the above-identified delay the above- named Plaintiff was subjected to travel related stress of additional travel time in excess of 5 hours, as well as to physical inconvenience and bodily exhaustion resulting, in subsequent incapacitation for period of several days.

ANSWER:     As an answer to paragraph 12 of the First Amended Class Action Complaint, denies the allegations therein.

13.     That such illness cause the above-named Plaintiff to miss several days of her work upon her late arrival to Chicago, Illinois, USA.

ANSWER:     As an answer to paragraph 13 of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

4

## AS TO PARTIES

14.     That such ilness cause the above-named Plaintiff to miss important business meetings causing further loss of wages.

ANSWER:     As an answer to paragraph 14 of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

15.     That, at all times material hereto, the above-named Plaintiff was not provided by SAS with any meaningful and or sufficient travel-related assistance, which was at all times material hereto mandated by Art 9 of the EU 261/2004.

ANSWER:     As an answer to paragraph 15 of the First Amended Class Action Complaint, denies the allegations therein.

16.     That the above-identified circumstances of delay or cancellation of plaintiff's international airfare transportation flight No. 943 on August 24, 2014 is actionable pursuant to Article 19 of the Montreal Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 (entered into force on Nov. 4, 2003) (Montreal Convention), reprinted in S. Treaty Doc. No. 106-45; 49 U.S.C.A.App. § 1502 (49 USCA § 40105, et. seq.).

ANSWER:     As an answer to paragraph 16 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

17.     That as a direct and proximate cause of said delayed departure of international air flight No. 943, the above-named plaintiff incurred actual out-of-pocket expenses in approximate sum of $250, as well as general, special, incidental and consequential damages in the sum to be proven at trial.

ANSWER:     As an answer to paragraph 17 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

18.     That, as a direct and proximate cause of the above-identified willful indifference by the above-named defendant, and delay of international airfare in excess of multiple hours the above-named Plaintiff incurred actual, general, special, incidental and consequential damages including but not limited to per diem expenses in the sum to be proven at trial.

5

ANSWER: As an answer to paragraph 18 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

19. That as a direct and proximate cause of delayed departure of flight No 943, the above-named Plaintiff was needlessly subjected to compensable actual, general, special, incidental and consequential pecuniary damages, including but not limited to travel cancellation expenses, loss of vacation time, loss of benefit of their bargain, per diem and lodging expenses, indifferent treatment, inconvenience, physical discomfort, exhaustion, loss of time, delay, anxiety, frustration, uncertainty, loss of use of money and other legally cognizable damages, losses and injuries.

ANSWER: As an answer to paragraph 19 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

20. That as a direct and proximate cause of delayed departure of international air flight No. 943 on August 24, 2014, the above-named Plaintiff was subjected to additional lodging and per diem expenses, spoliation of her memorable trip, severe and needless physical inconvenience, financial injury, physical discomfort, loss of time, loss of use of her monies, and was subjected to various actual, general, special, incidental and consequential damages in the sum to be ascertained at trial.

ANSWER: As an answer to paragraph 20 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

21. That, at all times material hereto, the above-named defendant was recklessly indifferent to travel-related needs of the above-named plaintiff and to its own voluntarily assumed contractual obligations.

ANSWER: As an answer to paragraph 21 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

## AS TO STATEMENT OF CLAIM

22. That, upon information and believe, delay of the above-referenced defendant's flight was not caused by extraordinary circumstances, which could not have been avoided in due

exercise of due diligence or another pertinent legal standard of care by the above-named defendant.

ANSWER:    As an answer to paragraph 22 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

23.    That, upon information and believe, the above-named defendant did not pursue all meaningful actions required to avoid or mitigate impact of extraordinary circumstances. Cf., Ronald Huzar v. Jer2.com Limited, [2014] EWCA Civ. 791, Case No. Case No: B2/2013/3277/CCRTF (Royal Courts of Justice, London, England, 11 June 2014)(holding that technical problems, which may be unforeseeable, but are ultimately caused by an event inherent in the running of an aircraft, and cannot therefore be considered to be an extraordinary circumstance).[3]

ANSWER:    As an answer to paragraph 23 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

24.    That the term "extraordinary circumstances" as evolved under the Montreal Convention jurisprudence is very limited and applies only in certain circumstances where the airline can prove the cancellation or delay was caused by political instability, meteorological conditions incompatible with the operation of the flight concerned, security risks, unexpected flight safety shortcomings and strikes that affect the operation of an operating aircraft."[4]

ANSWER:    As an answer to paragraph 24 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

25.    That "extraordinary circumstances" do not include technical or mechanical problems except in the rare instances where the airline can prove those problems are due to hidden, inherent manufacturing defects or aircraft damage caused by sabotage.[5]

---

[3] http://www.bailii.org/cgi-bin/markup.cgi?doc=/ew/cases/EWCA/Civ/2014/791.html&query=huzar+and+jet2&method=boolean

[4] Wallentin-Hermann v. Alitalia, European Court of Justice, Case No C-549/07, Judgment of December 22, 2008, ¶22 (emphasis added).

[5] Id. at ¶26 (mechanical problems may constitute extraordinary circumstances only when "it was revealed by the manufacturer of the aircraft compromising the fleet of the air carrier concerned, or by competent authority, that those aircraft, although already in service, are affected by a

<u>ANSWER</u>:     As an answer to paragraph 25 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

26.     That therefore the above-named plaintiff is now seeking, among other relief, to recover actual, general and special damages in aggregate sum of $6,652.94 or in the sum to ascertained and proven at trial; as well as incidental and consequential damages (in the sum not yet certain but to be proven at trial) from the above-named defendant for delay in international air transportation as well as under other legal theories incorporated herein under the doctrine of pendent jurisdiction.

<u>ANSWER</u>:     As an answer to paragraph 26 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

27.     That, additionally, pursuant to the Article 22(5) of the Montreal Convention, the above-named Plaintiff on her own behalf and on behalf of entire class of passengers is also asserting the claim for compensatory, additional, general, special, incidental and consequential damages in the excess of the above-referenced cap on damages imposed by the Article 22(1) of the Montreal Convention in the sum not yet certain but to be ascertained and proven at trial recoverable from defendant on the theory of "reckless indifference" of defendant's employees while acting in the scope of their employment and for benefit of their employer.

<u>ANSWER</u>:     As an answer to paragraph 27 of the First Amended Class Action Complaint, admits that the rights and liabilities of the parties are exclusively governed by the provisions of the Montreal Convention and otherwise denies any factual allegations contained in paragraph 27 of the First Amended Class Action Complaint.

28.     That in accordance with Article 19 of the Montreal Convention and or Article 21 of the Warsaw Convention, the above-identified defendant is liable for damages caused by delay and or cancellation of international air carriage of passengers.[6]

---

hidden manufacturing defect which impinges on the flight safety" or where there was "damage to aircraft caused by acts of sabotage"); see also Sturgeon v. Condor Flugdienst GmbH, European Court of Justice, Case No. C-402/7 Judgment of November 19, 2009 (reiterating that technical problems are not extraordinary circumstances in context of "technical faults on the plane and illness among the crew").

[6] El Al Isr. Airlines, Ltd. v. Tsui Yuan Tseng, 525 U.S. 155, 176 (1999) (holding that the United States is a party to the Montreal Convention, which governs the international air carriage of

ANSWER: As an answer to paragraph 28 of the First Amended Class Action Complaint, denies the allegations therein.

29. That accordingly the above-named Plaintiff, on her own behalf and on behalf of all similarly situated members of Class of Passengers of canceled air flight are bringing this action for compensation of damages caused by delay and or cancellation of international airfare flight and defendant's intentional failure to discharge its self – imposed and voluntarily assumed contractual duty to compensate its passengers for damages caused by delay or cancellation of international airfare as incorporated by pertinent articles of SAS General Conditions and Contract of Carriage.

ANSWER: As an answer to paragraph 29 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

30. That the above-named Plaintiff is repeating, re-alleging, and adopting §§ 1-29 of preceding section titled "Nature of this Civil Action" section of this entire First Amended Class Action Complaint at Law, as set forth fully herein and incorporates them by reference:

ANSWER: As an answer to paragraph 30 of the First Amended Class Action Complaint, repeats, reiterates and realleges each and every admission and denial made in response to the paragraphs identified therein with the same force and effect as if set forth herein at length.

31. That the court's subject matter jurisdiction is invoked under 28 U.S.C. § 1331, 28 U.S.C. § 1332, 28 U.S.C. § 1337, as well as the doctrine of pendent jurisdiction.

ANSWER: As an answer to paragraph 31 of the First Amended Class Action Complaint, admits that this Court retains jurisdiction of plaintiff's claims pursuant to 28 U.S.C. § 1331.

32. That, additionally the United States District Court for the Northern District of Illinois shall exercise jurisdiction over the cause of action set forth in this complaint under and pursuant to Art 33(1) of Montreal Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 (entered into force on Nov. 4, 2003) (Montreal

passengers, baggage, and cargo. The Convention provides an airline passenger's exclusive remedy; a passenger may not maintain "an action for personal injury damages under local law when her claim does not satisfy the conditions for liability under the Convention."

Convention), reprinted in S. Treaty Doc. No. 106-45.[7]

ANSWER:    As an answer to paragraph 32 of the First Amended Class Action Complaint, admits that the rights and liabilities of the parties are exclusively governed by the provisions of the Montreal Convention and otherwise refers all questions of law to be decided by the Court.

33.    That Art. 19 of the Montreal Convention sets forth the private cause of action for money damages caused by delay or cancellation of international airfare transportation against the above-named defendant.[8]

ANSWER:    As an answer to paragraph 33 of the First Amended Class Action Complaint, admits that the rights and liabilities of the parties are exclusively governed by the provisions of the Montreal Convention and otherwise refers all questions of law to be decided by the Court.

34.    That the United States is signatory to Warsaw Convention of 1929 and Montreal Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 (entered into force on Nov. 4, 2003) reprinted in S. Treaty Doc. No. 106-45, since 05-28-1999.[9]

ANSWER:    As an answer to paragraph 34 of the First Amended Class Action Complaint, admits that the rights and liabilities of the parties are exclusively governed by the provisions of the Montreal Convention and otherwise refers all questions of law to be decided by the Court.

35.    That the United States and Kingdom of Denmark (also commonly known as the Danish Realm or the Commonwealth of the Realm) are signatories to the Montreal Convention of 1999.

---

[7] The Montreal Convention is available in the UNITED STATES CODE SERVICE (U.S.C.S.) volume titled International Agreements at 635 (2007). It is also available at S. Treaty Doc. No. 106-45, 1999 WL 33292734 at 29-45.

[8] See, Article 19 of the Montreal Convention, The carrier is liable for damages occasioned by delay in the carriage by air of passengers, baggage or cargo. Nevertheless, the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures." Id.

[9] http://legacy.icao.int/icao/en/leb/mtl99.pdf

ANSWER:    As an answer to paragraph 35, admits that the rights and liabilities of the parties are exclusively governed by the provisions of the Montreal Convention and otherwise refers all questions of law to be decided by the Court.

36.    That this class action also arises under 28 U.S.C. § 1331, 28 U.S.C. § 1332, 28 U.S.C. § 1337, as well as the Class Action Fairness Act, 28 U.S.C. § 1332(d); as well as under the doctrine of pending jurisdiction.

ANSWER:    As an answer to paragraph 36 of the First Amended Class Action Complaint, admits that this Court retains jurisdiction of plaintiff's claims pursuant to 28 U.S.C. § 1331.

37.    That the court's jurisdiction is also invoked under Article 28 of the Warsaw Convention, as amended by Art 33 of the Montreal Convention, and the doctrine of pendent jurisdiction.

ANSWER:    As an answer to paragraph 37 of the First Amended Class Action Complaint, admits that the rights and liabilities of the parties are exclusively governed by the provisions of the Montreal Convention and otherwise refers all questions of law to be decided by the Court.

38.    That, upon information and believe, the matter in controversy, exclusive of interest and costs, far exceeds the sum or value of $1,995.882.00 or alternatively the sum of $60,000.00, and is a class action in which some of the members of the Class of plaintiffs, whose number exceeds 100, are citizens of states different from the above- named defendant.

ANSWER:    As an answer to paragraph 38 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

39.    That further, greater than two-thirds of the class members reside in states other than the states in which Defendants are a citizen.

ANSWER:    As an answer to paragraph 39 of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

## AS TO COUNT I

40.     That venue is proper in this Court under 28 U.S.C. § 1391 as well as Art. 33 of the Montreal Convention because all the above and below alleged actions of defendant took place, in whole or in part, within this District, as well as plaintiff's domiciliary within this District.

ANSWER:     As an answer to paragraph 40 of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein and otherwise leaves all questions of law to the Court.

41.     That the above-named defendant SCANDINAVIAN AIRLINES SYSTEM is doing business and are soliciting airline passengers by selling airfare tickets and are conducting its business of air transportation[10] within the State of Illinois.[11]

ANSWER:     As an answer to paragraph 41 of the First Amended Class Action Complaint, admits that Defendant SAS conducts business within the State of Illinois and otherwise refers all questions of law to the Court.

42.     That the above-named Plaintiff is domiciled at the State of Illinois within the jurisdiction of the United States District Court for Northern District of Illinois

ANSWER:     As an answer to paragraph 42 of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

43.     That the above-named Plaintiff, on her own behalf and on behalf of all Class Members, is seeking, among other relief, to recover actual, general and special damages in aggregate sum of $6,652.94 per passenger in aggregated sum of $1,958.882; or in alternative the sum of $200 per passenger in aggregated amount of $60,000.00; as well as incidental and consequential damages (in the sum not yet certain but to be proven at trial) from the above-named

---

[10] Cf. Sachs v. Republic of Austria, No 11-15458 (9th Cir., December 6, 2013)(a foreign-state owned common carrier engages in commercial activity in the United States, and thus is not immune from suit under the Foreign Sovereign Immunities Act, when it sells tickets in the United States through a travel agent, regardless of whether the travel agent is a direct agent or subagent of the common carrier).

[11] http://cdn.ca9.uscourts.gov/datastore/opinions/2013/12/09/11-15458%20web%20 corrected.pdf

defendant, jointly and severally, for delay and cancellation of international air flight No. 943 and other similarly delayed or cancelled international airfare flights.

ANSWER:    As an answer to paragraph 43 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

44.    That, upon information and believe, the matter in controversy exceeds $1,995.882 exclusive of interest and costs, in that the above-named plaintiff is alleging actual damages in the sum of $6,652.94 per passenger and member of purported Class, or in alternative the sum of $200 per passenger in aggregated amount of $60,000.00; as well as compensatory, actual, general, special, incidental and consequential damages in the sum not yet certain but to be ascertained and proven at trial.

ANSWER:    As an answer to paragraph 44 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

45.    That, additionally, pursuant to Article 22(5) of Montreal Convention, the above-named Plaintiff on her own behalf and on behalf of all other Class Members is also asserting claim for compensatory, additional, general, special, incidental and consequential damages in the excess of the above-referenced cap on damages imposed by Warsaw Convention and or by Article 22(1) of Montreal Convention in the sum not yet certain but to be ascertained and proven at trial recoverable from all the above-named defendants, jointly and severally, on the theory of "reckless indifference" by the above- named defendants to plaintiff's travel-related ordeal allegedly perpetrated by certain employees of the above-named defendants while acting in the scope of their employment and for benefit of their employer.

ANSWER:    As an answer to paragraph 45 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

46.    That additionally this Court has jurisdiction over this class action matter pursuant to 28 U.S.C. § 1337 as well as the Class Action Fairness Act, 28 U.S.C. § 1332 (d), in that:

(a)    This is a class action involving 100 or more class members; and

(b)    Plaintiffs, permanent residents of Illinois, are diverse in citizenship to the defendant SAS, which is a foreign airfare airline incorporated under laws of Sweden, Norway and the Kingdom of Denmark.

13

ANSWER:    As an answer to paragraph 46 of the First Amended Class Action Complaint, admits that SAS is incorporated under the laws of Sweden, Norway, and Denmark and otherwise refers all questions of law to the Court.

47.    This case is properly maintainable as a class action pursuant to and in accordance with Rule 23(a) of the Federal Rules of Civil Procedure in that:

      (a)    The Class is so numerous that joinder of all members is impractical;

ANSWER:    As an answer to paragraph 47(a) of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

      (b)    There are substantial questions of law and fact common to the Class including those set forth in greater particularity below;

ANSWER:    As an answer to paragraph 47(b) of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

      (c)    This case is properly maintainable as a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

ANSWER:    As an answer to paragraph 47(c) of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

      i.    Questions of law and fact enumerated below, which are all common to the Class, predominate over any questions of law or fact affecting only individual members of the Class;

      ii.    A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

      iii.    The relief sought in this class action will effectively and efficiently provide relief to all members of the class; and

iv.     There are no unusual difficulties foreseen in the management of this class action.

ANSWER:     As an answer to paragraph 47 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

48.     That this Court has personal jurisdiction over the above-named defendant, Scandinavian Airlines Systems, who is maintaining at least minimum contacts with the State of Illinois through a conduct of air transportation business within State of Illinois and by otherwise availing themselves of Illinois' markets through their air travel operations, offices, logistical services, sales, and marketing efforts.

ANSWER:     As an answer to paragraph 48 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

49.     That as to their individual claims the above-named plaintiffs are seeking, among other relief, to recover their actual, general and special damages in aggregate sum exceeding $6,652.94 per passenger or in aggregated sum of $1,995.882; or in alternative the sum of $200 per passenger in aggregated amount of $60,000.00; or in the sum to be proven at trial; as well as their incidental and consequential damages (in the sum not yet certain but to be proven at trial) from all the above-named defendant SAS, jointly and severally, for delay in international air transportation; as well as under other legal theories incorporated herein under the doctrine of pendent jurisdiction.

ANSWER:     As an answer to paragraph 49 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

50.     That the above-named Plaintiff, ELLEN KOGAN, is repeating, re- alleging, and adopting §§ 1-29 of preceding section titled "Nature of this Action"; §§ 30-49 of preceding section titled "Jurisdiction"; as set forth fully herein and incorporates them by reference:

ANSWER:     As an answer to paragraph 50 of the First Amended Class Action Complaint, repeats, reiterates and realleges each and every admission and denial made in response to the paragraphs identified therein with the same force and effect as if set forth herein

at length.

51.     That, at all times material hereto, and is now the above-named Plaintiff, ELLEN KOGAN was an adult citizen of the USA, residing at: 1173 Bristol Lane Buffalo Grove, IL 60089.

ANSWER:     As an answer to paragraph 51 of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

52.     That the above-named defendant SCANDINAVIAN AIRLINES SYSTEM, is believed to be "community carrier," and an air carrier with valid operational license granted by European Community Member State in accordance with provisions of Counsel Regulation (EEC) No. 2407/92 of July 23, 1992 on licensing of air carriers domiciled within the European Union.

ANSWER:     As an answer to paragraph 52 of the First Amended Class Action Complaint, admits that defendant SAS conducts valid operations pursuant to the laws and regulations of all relevant civil aviation authorities and otherwise refers all questions of law to be decided by the Court.

53.     That the above-named defendant SCANDINAVIAN AIRLINES SYSTEM is believed to be a foreign air transportation carrier, domiciled at a country member of the European Union, operating under auspices of air carrier license issued by the European Union, doing business in the United States and within the State of Illinois.

ANSWER:     As an answer to paragraph 53 of the First Amended Class Action Complaint, admits that defendant SAS conducts valid operations pursuant to the laws and regulations of all relevant civil aviation authorities and admits that defendant SAS conducts business within the State of Illinois and otherwise refers all questions of law to be decided by the Court.

54.     That the below-identified international airfare occurred between several countries – signatories of the Montreal Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 (entered into force on Nov. 4, 2003) reprinted in S. Treaty Doc. No. 106-45.

ANSWER:     As an answer to paragraph 54 of the First Amended Class Action

Complaint, admits that the rights and liabilities of the parties are exclusively governed by the provisions of the Montreal Convention and otherwise refers all questions of law to be decided by the Court.

55.     That, the United States of America is the signatory to the Montreal Convention since 05-28-1999.[12]

ANSWER:     As an answer to paragraph 55, admits that the rights and liabilities of the parties are exclusively governed by the provisions of the Montreal Convention and otherwise refers all questions of law to be decided by the Court.

56.     That the Kingdom of Denmark, Kingdom of Sweden and Norway were and still are the signatory to the Montreal Convention since 05-28-1999.

ANSWER:     As an answer to paragraph 56, admits that the Kingdom of Denmark, the Kingdom of Sweden, and Norway are signatories to the Montreal Convention, but otherwise refers all questions of law to be decided by the Court.

57.     That the flight sue sponte involves international airfare transportation between countries signatories to the Montreal Convention.[13]

ANSWER:     As an answer to paragraph 57 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

58.     That the flight sue sponte is governed by the terms set forth by the Montreal Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 (entered into force on Nov. 4, 2003) (Montreal Convention), reprinted in S. Treaty Doc. No. 106-45.

---

[12] http://legacy.icao.int/icao/en/leb/mtl99.pdf

[13] "The decision to ratify the Montreal Convention, which introduces a modernized and uniform legal framework governing airline companies' liability in the event of damage caused to passengers, baggage or goods during international journeys, codified by Council Decision 2001/539/EC of 5 April 2001 on the conclusion by the European Community of the Convention for the Unification of Certain Rules for International Carriage by Air" (the Montreal Convention) [Official       Journal       L       194       of       18.07.2001];       see http://europa.eu/legislation_summaries/transport/air_transport/l24255_en.htm

ANSWER: As an answer to paragraph 58 of the First Amended Class Action Complaint, admits that the rights and liabilities of the parties are exclusively governed by the Montreal Convention and otherwise refers all questions of law to the Court.

59. That in addition to the Montreal Convention the duties and responsibilities of the above-named Plaintiff is governed by EU Regulation 261/2004.

ANSWER: As an answer to paragraph 59 of the First Amended Class Action Complaint, denies the allegations therein.

## AS TO COUNT II

60. That the United States District Court for the Northern District of Illinois shall exercise jurisdiction over the cause of action set forth in this complaint under and pursuant to Art 33(1) of Montreal Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 (entered into force on Nov. 4, 2003) (Montreal Convention), reprinted in S. Treaty Doc. No. 106-45, and pursuant to 28 U.S.C. § 1337.

ANSWER: As an answer to paragraph 60 of the First Amended Class Action Complaint, admits that the rights and liabilities of the parties are exclusively governed by the Montreal Convention and otherwise refers all questions of law to the Court.

61. That the above-named defendant SCANDINAVIAN AIRLINE SYSTEM is doing business within the jurisdiction of the United States District Court for Northern District of Illinois.

ANSWER: As an answer to paragraph 61 of the First Amended Class Action Complaint, admits that Defendant SAS conducts business within the State of Illinois and otherwise refers all questions of law to the Court.

62. That the United States is a signatory to the Warsaw Convention of 1929 as well as of the Montreal Convention of 1999.

ANSWER: As an answer to paragraph 62, admits that the rights and liabilities of the parties are exclusively governed by the provisions of the Montreal Convention and otherwise refers all questions of law to be decided by the Court.

63.     That the matter in controversy exceeds $1,995.882, exclusive of interest and costs, in that the above-named plaintiffs are alleging actual damages to the class of passengers of canceled flight No. 943; as well as other similarly delayed or canceled international airfares, in the sum of $6552 per passenger, or in alternative in the sum of $200 per passenger members of proposed Classes, as well as general, special, incidental and consequential damages in the sum not yet certain but to be ascertained and proven at trial.

ANSWER:     As an answer to paragraph 63 of the First Amended Class Action

Complaint, denies the allegations therein and otherwise refers all questions of law to be decided

by the Court.

64.     That the above-cited federal treaties provide for the private cause of action against the above-named defendant for damages caused by delay or cancellation of international airfare occurred between signatories to those treaties."

ANSWER:     As an answer to paragraph 64 of the First Amended Class Action

Complaint, denies the allegations therein and otherwise refers all questions of law to be decided

by the Court.

65.     That the above-named Plaintiff s repeating, re-alleging, and adopting §§ 1-29 of preceding sections titled "Nature of this Civil Action"; §§ 30-49 of "Jurisdiction and Venue";  §§ 50-64  of "Parties" sections of this entire First Amended Class Action Complaint at Law, as set forth fully herein and incorporates them by reference:

ANSWER:     As an answer to paragraph 65 of the First Amended Class Action

Complaint, repeats, reiterates and realleges each and every admission and denial made in

response to the paragraphs identified therein with the same force and effect as if set forth herein

at length.

66.     That the above-named Plaintiff is hereby repeating, re-alleging, and adopting §§ 1-13 of "Jurisdiction" and §§ 14-21 of "Parties" sections of this entire Complaint at Law, as set forth fully herein and incorporates them by reference:

ANSWER:     As an answer to paragraph 66 of the First Amended Class Action

Complaint, repeats, reiterates and realleges each and every admission and denial made in

response to the paragraphs identified therein with the same force and effect as if set forth herein

at length.

67.     That, at all times material hereto, the above-named Plaintiff accepted an offer of international air fare transportation extended to her by the above-named Defendant, SCANDINAVIAN AIRLINES SYSTEM., thereby entering into legally binding contract for round-trip international airfare carriage to be performed by the above-named Defendant from the USA to the European Union and back to the USA.

ANSWER:     As an answer to paragraph 67 of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein and otherwise refers all questions of law to be decided by the Court.

68.     That said international airfare consisted of the following travel segments:

(a)     Travel on July 16, 2014 from Chicago, Illinois, USA to Moscow, Russian Federation via connecting stop at Stockholm, Sweden.

ANSWER:     As an answer to paragraph 68(a) of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

(b)     Return flight on August 24, 2014 from Moscow, Russia back to Chicago, Illinois, USA via connecting stop at Copenhagen, Denmark.

ANSWER:     As an answer to paragraph 68(b) of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

69.     That the true and correct copy of Plaintiff's international travel intermarries is appended herewith marked as Exhibit A, incorporated by reference and made a part of this entire Complaint at Law.

ANSWER:     As an answer to paragraph 69 of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

70.     That, at all times material hereto, the above-named Plaintiff received confirmed airfare tickets, reflecting the above-identified travel arrangements.

ANSWER:     As an answer to paragraph 70 of the First Amended Class Action

Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the

allegations therein.

71.     That said agreement for international airfare transportation was entered into at the above-stated place of plaintiff's domicile located within the Lake County, Illinois, USA.

ANSWER:     As an answer to paragraph 71 of the First Amended Class Action

Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the

allegations therein, and refers all questions of law to the Court.

72.     That in accordance with the above-referenced international airfare arrangement on August 24, 2014 the above-named Plaintiff was confirmed to depart from Copenhagen to Chicago on the board of SAS flight SK 943.

ANSWER:     As an answer to paragraph 72 of the First Amended Class Action

Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the

allegations therein.

73.     That true and correct copy of Plaintiff's boarding pass is appended herewith marked as Exhibit B, incorporated by reference and made a part of this entire Complaint at Law.

ANSWER:     As an answer to paragraph 73 of the First Amended Class Action

Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the

allegations therein

74.     That, upon information and believe, due to unknown reasons, timely departure of defendant's flight SK 943 on August 24, 2014 from Copenhagen, Denmark was initially delayed for excess of five (5) hours.

ANSWER:     As an answer to paragraph 74 of the First Amended Class Action

Complaint, admits that Flight SK 943 on August 24, 2014 experienced a delay in the originally

scheduled departure time.

21

75.    That due to such delay, cancellation and frustration of travel plans, the above-named Plaintiff arrived o Chicago Illinois at approximately 11:50PM instead of 5:30PM.

ANSWER:    As an answer to paragraph 75 of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

76.    That while subjecting the above-named Plaintiff to extensive delay of international airfare in excess of 5 hours, the above-named defendant did not provided to her with meaningful and or sufficient care or assistance, as mandated by Art. 9 of the EU 261/2004.

ANSWER:    As an answer to paragraph 76 of the First Amended Class Action Complaint, denies the allegations therein.

77.    That, while being subjected to the above-identified delays the above- named Plaintiff was subjected to travel related stress of additional travel time in excess of 5 hours, as well as to physical inconvenience and bodily exhaustion resulting, in subsequent incapacitation for period of several days.

ANSWER:    As an answer to paragraph 77 of the First Amended Class Action Complaint, denies the allegations therein.

78.    That, likewise, due to the above-identified delay of international airfare by the above-named Defendant, the above-named Plaintiff was subjected to psysican inconvinience resulting at arithmea, aliviated blood preasure, wamoting and diarreath.

ANSWER:    As an answer to paragraph 78 of the First Amended Class Action Complaint, denies the allegations therein.

79.    That such ilness cause the above-named Plaintiff to miss several days of her work upon her arrival back home to Chicago, Illinois, USA.

ANSWER:    As an answer to paragraph 79 of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

80.    That such ilness also caused the above-named Plaintiff to miss important business meetings causing further loss of wages upon her arrival back home to Chicago, Illinois, USA.

ANSWER:    As an answer to paragraph 80 of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

81.    That, at all times material hereto, the above-named Plaintiff was not provided by SAS with any meaningful and or sufficient travel-related assistance, which was at all times material hereto mandated by Art 9 of the EU 261/2004.

ANSWER:    As an answer to paragraph 81 of the First Amended Class Action Complaint, denies the allegations therein.

82.    That, subsequently upon late arrival to Chicago the above-named Plaintiffs timely lodged with the local office of the above-named defendant their grievance and demand for compensation mandated by Art 19 of the Montreal Convention and by Art. 7 of the EU Regulation 261/2004.

ANSWER:    As an answer to paragraph 82 of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

83.    That, said pre-suit demand was unequivocally and unjustifiably denied by the above-named defendant.

ANSWER:    As an answer to paragraph 83 of the First Amended Class Action Complaint, denies the allegations therein.

84.    That as a direct and proximate cause of delayed departure of flight No 943 from Copenhagen, the above-named Plaintiff was needlessly subjected to actual, general, special, incidental and consequential pecuniary damages, including but not limited to travel cancellation expenses, loss of vacation time, loss of benefit of their bargain, per diem and lodging expenses, indifferent treatment, inconvenience, physical discomfort, exhaustion, loss of time, delay, anxiety, frustration, uncertainty, loss of use of money and other legally cognizable damages, losses and injuries.[14]

---

[14] Cf. Lopez v. Eastern Airlines, Inc., 677 F.Supp.181 (holding that inconvenience, delay and uncertainty are compensable injuries even in absence of out-of pocket costs) also see Ben Daniel v. Virgin Atlantic Airways, 59 F.Supp.2d 986 (N.D. Cal. 1998)(holding passengers' inconvenience is legally cognizable harm under Articles 17 and 19 of Warsaw Convention) also see Warsaw Convention, Art. 17, 19; 49 U.S.C.A. § 40105 and 14 C.F.R. §§ 250.4-250.6 also see Charas v. Trans World Airlines, Inc. 160 F.3d

ANSWER:    As an answer to paragraph 84 of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

85.    That, subsequently upon plaintiff's late arrival back to Chicago the above-named Plaintiff submitted to local office of the above-named defendant her formal pre-suit notice of claim and demand for tender of compensation mandated by Art. 19 of the Montreal Convention, which was rejected in writing by the above-named defendant

ANSWER:    As an answer to paragraph 85 of the First Amended Class Action Complaint, denies the allegations therein.

86.    That due to defendant's rejection of plaintiff's pre-suit notice of claim and demand for settlement the above-named plaintiffs are entitled to reasonable attorneys fees pursuant to so called "settlement inducement provision" of Art XI of the Hague Protocol as incorporated by Article 22(6) of Montreal Convention.

ANSWER:    As an answer to paragraph 86 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

87.    That, upon information and believe, some passengers of the above- referenced cancelled flight submitted to the above-named defendant their formal pre-suit notice of claim and demand for tender of compensation mandated by Art. 19 of the Montreal Convention.

ANSWER:    As an answer to paragraph 87 of the First Amended Class Action Complaint, denies the allegations therein.

88.    That, upon information and believe, such pre-suit notices of claim and demands for settlement were rejected by SAS by erroneous invocation of "extraordinary circumstances" defense.

ANSWER:    As an answer to paragraph 88 of the First Amended Class Action Complaint, denies the allegations therein.

---

1259, C.A.9 (Cal.),1998 (holding that Airline Deregulation Act (ADA) does not preempt passengers' breach of contract claims) see also American Airlines, Inc. v. Wolens,115 S.Ct. 817, 513 U.S. 219, 130 L.Ed.2d 715, 63 USLW 4066 (U.S.Ill.,1995)(holding that Airline Deregulation Act did not preempt action against airline based on state contract law).

89.     That due to defendant's rejection of pre-suit settlement claims, the above-named plaintiffs are entitled to reasonable attorneys fees pursuant to Article 22(6) of Montreal Convention, [15] incorporating so-called "settlement inducement provision" contained in Article 22(4) and Art XI of Hague Protocol amendments. Id.

ANSWER:     As an answer to paragraph 89 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

90.     That the Hague Protocol as ratified by the U.S. Senate on July 31, 2002 is supreme law of this land, thereby establishing procedure for award of attorney's fees in the matter sub judice. [16]

## V.    GOVERNING LAW:

91.     That the above-named Plaintiff is repeating, re-alleging, and adopting §§ 1-29 of preceding sections titled "Nature of this Civil Action"; §§ 30-49 of "Jurisdiction and Venue"; §§ 50-64 of "Parties"; §§ 65-90 of "Allegations Relevant to Individual and Class Claims" sections of this entire First Amended Class Action Complaint at Law, as set forth fully herein and incorporates them by reference:

ANSWER:     As an answer to paragraph 91 of the First Amended Class Action Complaint, repeats, reiterates and realleges each and every admission and denial made in response to the paragraphs identified therein with the same force and effect as if set forth herein at length.

---

15 Montreal Convention preserved the so-called "settlement inducement provision" contained in Article 22(4) of the Hague Protocol amendments. To that extent settlement inducement provision" contained in Article 22(4) of the Hague Protocol amendments was codified in the Article 22(6) of the Montreal Convention, which states as follows:
    "The limits prescribed in Article 21 and in this Article shall not prevent the court from awarding, in accordance with its own law 15, in addition, the whole or part of the court costs and of the other expenses of the litigation incurred by the plaintiff, including interest. The foregoing provision shall not apply if the amount of the damages awarded, excluding court costs and other expenses of litigation, does not exceed the sum which the carrier has offered in writing to the plaintiff within a period of six months from the date of the occurrence causing the damage, or before the commencement of the action, if that is later."
[16] http://www.gpo.gov/fdsys/pkg/CDOC-107tdoc14/html/CDOC-107tdoc14.htm

A.    Warsaw Convention and Montreal Convention for the Unification of
      Certain Rules for International Carriage by Air, May 28, 1999:

92.    That the Convention for the Unification of Certain Rules Relating to International Carriage by Air, Signed at Warsaw on 12 October 1929 known as Warsaw Convention of 1929, and the Montreal Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 (entered into force on Nov. 4, 2003) (Montreal Convention), reprinted in S. Treaty Doc. No. 106-45, are the supreme laws of this land, governing liabilities of an airlines for damages caused to its passengers by delays and cancellations of international airfare contracts of carriages.

ANSWER:    As an answer to paragraph 92 of the First Amended Class Action

Complaint, admits that the rights and liabilities of the parties are exclusively governed by the

Montreal Convention and otherwise refers all questions of law to the Court.

93.    That Warsaw Convention regime of strict liability of an airlines for damages caused to its passengers was amended on November 4, 2003, whereby the Unites States Senate ratified the new legal regime known officially as the Montreal Convention or "Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999," [17] and is governing the filed of international airfare transportation since its adoption by the United States Senate on November 4, 2003.[18]   See, generally,  Multilateral Convention for International Carriage by Air, Montreal May  28, 1999., S. Treaty Doc. No. 106-45, reprinted in1999 WL 33292734 (2000). [19]

ANSWER:    As an answer to paragraph 93 of the First Amended Class Action

Complaint, admits that the rights and liabilities of the parties are exclusively governed by the

---

[17] Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, ICAO Doc. 9740, reprinted in S. TREATY DOC. NO. 106-45, 1999 WL 33292734 (2000).
[18] Ehrlich v. American Airlines, Inc., 360 F.3d 366, C.A.2 (N.Y.), 2004 (holding that the Montreal Convention is not an amendment to the Warsaw Convention, rather, the Montreal Convention is an entirely new treaty that unifies and replaces the system of liability that derives from the Warsaw Convention)(also holding that upon entry into force, the Montreal Convention will take precedence over the Warsaw Convention and any of its amendments and related instruments, and as a practical matter will supersede the private inter-carrier agreements, when the State or States relevant in a particular accident are party to the new Convention)
19 See Press Statement, United States Department of State, Ratification of the 1999 Montreal Convention (Sept. 5, 2003), available at http://www.state.gov/r/pa/prs/ps/2003/ 23851pf.htm; Press Release, United States Department of Transportation, United States Ratifies 1999 Montreal Convention, Putting Treaty Into Effect (Sept. 5, 2003), available at http://www.dot.gov/ affairs/dot10303.htm.

Montreal Convention and otherwise refers all questions of law to the Court.

94.     That nowadays the Montreal Convention is an international treaty, exclusively governing the rights and liabilities of passengers and carriers in international air transportation, providing remedy for claims arising out of the carriage of international passengers by air.[20]

ANSWER:     As an answer to paragraph 94 of the First Amended Class Action Complaint, admits the allegations therein.

95.     That the Montreal Convention[21]  unified the law that had developed under the older Warsaw Convention [22] and superseded the Warsaw Convention.

ANSWER:     As an answer to paragraph 95 of the First Amended Class Action Complaint, admits the allegations therein.

96.     That the Montreal Convention is the product of a United Nations effort to reform the Warsaw Convention so as to harmonize the hodgepodge of supplementary amendments and inter-carrier agreements of which the Warsaw Convention system of liability consists.[23]

ANSWER:     As an answer to paragraph 96 of the First Amended Class Action Complaint, admits the allegations therein.

97.     That the Montreal Convention is not an amendment to the Warsaw Convention, but rather takes precedence over the Warsaw Convention and any of its amendments and related instruments.[24]

ANSWER:     As an answer to paragraph 97 of the First Amended Class Action Complaint, admits the allegations therein.

---

[20] See, Montreal Convention Art. 29; also see El Al Israel Airlines, Ltd. v. Tseng, 525 U.S. 155, 162, 174-75 (1999); Booker v. BWIA West Indies Airways, 2007 WL 1351927 at *2 (E.D.N.Y. May 08, 2007), aff'd, 307 Fed. Appx. 491 (2d Cir. Jan. 13, 2009) (construing Montreal Convention).

[21] The Montreal Convention is available in the UNITED STATES CODE SERVICE (U.S.C.S.) volume titled International Agreements at 635 (2007). It is also available at S. Treaty Doc. No. 106-45, 1999 WL 33292734 at 29-45.

[22] See, Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934) [hereinafter Warsaw Convention],

[23] Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co., 522 F.3d 776, 780 (7th Cir. 2008).

[24] Ehrlich, 360 F.3d at 366.

98.     That the Montreal Convention unifies and replaces the system of liability that derives from the Warsaw Convention, explicitly recognizing the importance of ensuring protection of the interests of consumers in international carriage by air and the need for equitable compensation based on the principle of restitution.[25]

ANSWER:     As an answer to paragraph 98 of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

99.     That even though the Montreal Convention is directed more at consumers, it does not alter the original goal of the Warsaw Convention of maintaining limited and predictable damage amounts for airlines. [26]

ANSWER:     As an answer to paragraph 99 of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

100.     That pursuant to Article 1 the Montreal Convention applies to international airfare flights between countries – signatories to the Convention,[27] and applies to all international carriage of persons, baggage or cargo performed by aircraft for reward. Id. 1(1).

ANSWER:     As an answer to paragraph 100 of the First Amended Class Action Complaint, admits the allegations therein.

101.     That the term "international carriage" is defined as any carriage in which, according to the agreement between the parties, the place of departure and the place of destination, whether or not there be a break in the carriage . . ., are situated either within the territories of two States Parties, or within the territory of a single State Party if there is an agreed stopping place within the territory of another State, even if that State is not a State Party. Id., art. 1(2).

ANSWER:     As an answer to paragraph 101 of the First Amended Class Action Complaint, admits the allegations therein.

---

[25] Sompo, 522 F.3d at 780.
[26] Id. at 781.
[27] http://legacy.icao.int/icao/en/leb/mtl99.pdf

102.     That the Montreal Convention provides for the cause of action for damages resulted from delays in international carriage of passengers, their baggage and of cargo. Specifically, the Article 19[28] of the Convention provides:

> "The Carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo. Nevertheless, the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures." Id.

ANSWER:     As an answer to paragraph 102 of the First Amended Class Action Complaint, admits the allegations therein.

103.     That Article 19 creates potential liability only for "damage occasioned by delay".[29]

ANSWER:     As an answer to paragraph 103 of the First Amended Class Action Complaint, admits that Article 19 of the Convention addresses liability for "damage occasioned by delay," but otherwise refers all questions of law to the Court.

104.          That the carrier is not liable for the delay itself.[30]

ANSWER:     As an answer to paragraph 104 of the First Amended Class Action Complaint, admits that Article 19 of the Convention addresses liability for "damage occasioned by delay," but otherwise refers all questions of law to the Court.

105.     That to set forth a viable claim under Article 19, a plaintiff must show that they suffered any type of "compensable damage occasioned by delay" that is recoverable under Article 19.

ANSWER:     As an answer to paragraph 105 of the First Amended Class Action Complaint, Admits that Article 19 of the Convention addresses liability for "damage occasioned by delay," but otherwise refers all questions of law to the Court.

---

[28] Id. Art. 19 ("The carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo.").
[29] Montreal Convention Art. 19
[30] Paradis v. Ghana Airways, Ltd., 348 F. Supp. 2d 106, 114 (S.D.N.Y. 2004), aff'd, 194 Fed. Appx. 5 (2nd Cir. August 18, 2006).

106.   That as to all legally cognizable damages, a plaintiff can recover compensatory actual, general, special damages, including economic damages.[31]

ANSWER:   As an answer to paragraph 106 of the First Amended Class Action Complaint, admits that Article 19 of the Convention addresses liability for "damage occasioned by delay," but otherwise refers all questions of law to the Court.

107.   That although "purely emotional damages" such as damages for frustration, anguish, physical or mental upset independent of any physical injury may not be recovered under the Montreal Convention, courts have allowed recovery for physical and financial injuries, and even inconvenience causing financial injury.[32]

ANSWER:   As an answer to paragraph 107 of the First Amended Class Action Complaint, admits that purely emotional damages are not recoverable under the Montreal Convention and otherwise refers all questions of law to the Court.

108.   That the Montreal Convention provides a cap of 4694 SDR on recoverable damages.

---

[31] Ikekpeazu v. Air France, No. 3:04cv00711 (RNC), 2004 U.S. Dist. LEXIS 24580 at *4 (D. Conn. Dec. 6, 2004)(Plaintiff can also recover loss of work damages resulting at financial injury as economic damages).

[32] Cf., Daniel v. Virgin Atl. Airways Ltd, 59 F. Supp. 2d 986, 992 (N.D. Cal. 1998) (denying recovery for emotional injuries, but permitting claims for physical injuries and economic damages, including inconvenience); Ikekpeazu, 2004 U.S. Dist. LEXIS 24580 at *4 (recognizing financial injury as a cognizable claim, but not emotional injury). Lee v. American Airlines, Inc., No. 3:01-CV-1179-P, 2002 U.S. Dist. LEXIS 12029 at *13 (N.D. Tex. July 2, 2002), aff'd, 355 F.3d 386, 387 (5th Cir. Tex. 2004)( Yet, some court are reluctant to allow recovery for inconvenience); Rubin v. Air China Ltd. (N.D. Cal., 2011)(holding that pain and suffering independent of any physical injuries or illness are not recoverable, but the economic damages recoverable under Article 19 include foreseeable, consequential damages, such as lost wages or profits, that are occasioned by the delay)(also holding that to the extent Plaintiff intends to allege damages due to the inconvenience of being trapped in the Beijing airport for 13.5 hours, he may be able to recover damages if he can show that the inconvenience he suffered has an economic component that is independent of his other economic damages claims)(also holding that "damages for inconvenience do not fall within the rubric of 'emotional distress' but "time is money, after all, and thus the inconvenience of being trapped for hours in an unfamiliar airport is a compensable element of damages for delay in air travel");Stone v. Continental Airlines, 2005 NY Slip Op 25481 (NY 11/10/2005), 2005 NY Slip Op 25481 (NY, 2005)(holding that "it is well settled that an award for inconvenience, delay and uncertainty is cognizable under New York law").

ANSWER:    As an answer to paragraph 108 of the First Amended Class Action Complaint, admits that Article 22 of the Montreal Convention addresses limits of liability in relation to delay, baggage, and cargo, and otherwise refers all questions of law to the Court.

109.    That Art. 22(1) set forth the cap on damages and states in pertinent part that:

"In the case of damage caused by delay as specified in Article 19 in the carriage of persons, the liability of the carrier for each passenger is limited to 4 150 [33] Special Drawing Rights."

ANSWER:    As an answer to paragraph 109 of the First Amended Class Action Complaint, admits the allegations therein.

110.    That this cap on recoverable damages is subject to periodic adjustment and alignment with inflation rates.

ANSWER:    As an answer to paragraph 110 of the First Amended Class Action Complaint, admits the allegations therein.

## VI.    CLASS ACTION ALLEGATIONS:

111.    That the above-named Plaintiff is repeating, re-alleging, and adopting §§ 1-29 of preceding sections titled "Nature of this Civil Action"; §§ 30-49 of "Jurisdiction and Venue"; §§ 50-64 of "Parties"; §§ 65-90 of "Allegations Relevant to Individual and Class Claims"; §§ 91-110 of "Governing Law: The Warsaw Convention and the Montreal Convention" Sections of this entire First Amended Class Action Complaint at Law, as set forth fully herein and incorporates them by reference:

ANSWER:    As an answer to paragraph 111 of the First Amended Class Action Complaint, repeats, reiterates and realleges each and every admission and denial made in response to the paragraphs identified therein with the same force and effect as if set forth herein

---

[33] This limit was increased up to 4694 SDR (http://www.iatatravelcentre.com/e-ticket-notice/General/English/) On June 30, 2009, ICAO adjusted the liability limits set forth in Articles 21 and 22 of the Montreal Convention due to inflation. Accordingly, effective December 30, 2009, the liability limit set forth in Article 22(2) was increased from 1,000 SDRs to 1,131 SDRs. See U.S. Department of Transportation, Inflation Adjustments to Liability Limits Governed by the Montreal Convention Effective December 30, 2009, 74 F.R. 59017-18 (Nov. 16, 2009).

at length.

112.     That the above-named Plaintiffs are bringing this action on her own behalf and on behalf of a class of all other persons similarly situated (the "Class"), pursuant to Rule 23 of the Federal Rules of Civil Procedure.

ANSWER:     As an answer to paragraph 112 of the First Amended Class Action

Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the

allegations therein and otherwise leaves all questions of law to the Court.

113.     That the Plaintiffs are bringing this action as class representatives to recover compensation required to be paid under Art 19 of the Montreal Convention and under pendent theory of breach contract.

ANSWER:     As an answer to paragraph 113 of the First Amended Class Action

Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the

allegations therein and otherwise leaves all questions of law to the Court.

114.     That this action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of the Federal Rules of Civil Procedure Rule 23(a) and (b).

ANSWER:     As an answer to paragraph 114 of the First Amended Class Action

Complaint, denies the allegations therein.

115.     That the Plaintiffs are seeking certification of the following class:

All persons residing in the United States who meet the following requirements:

(1) Such person had a confirmed reservation on flight 943 operated by SAS from Copenhagen to Chicago on April 24, 2014;

ANSWER:     As an answer to paragraph 115(1) of the First Amended Class Action

Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the

allegations therein.

(2) Such flight was delayed or cancelled for a reason other than extraordinary circumstances;

32

ANSWER:    As an answer to paragraph 115(2) of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

        (3)  Such person was not informed adequately informed by SAS of the delay or cancellation less than seven days before the scheduled time of departure and was not offered meaningful re- routing, allowing them to depart no more than one hour before the scheduled time of departure and to reach their final destination less than two hours after the scheduled time of arrival;

ANSWER:    As an answer to paragraph 115(3) of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

        (4)  Such person affected by said delay or cancellation for at least three hours; and

ANSWER:    As an answer to paragraph 115(4) of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

        (5) Such person has not received an advance notice of cancellation of SCANDINAVIAN AIRLINE SYSTEM flight No. 943 operated by SAS from Copenhagen to Chicago on August 24, 2014.

ANSWER:    As an answer to paragraph 115(5) of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

116.    That as distinct and separate class action theory the Plaintiffs are also certification of the following class:

        All persons residing in the United States who meet the following requirements:

(1)   Such person had a confirmed reservation on any SAS international airfare flights operated by SAS since ratification of Montreal Convention on or about November of 2004;

ANSWER:     As an answer to paragraph 116(1) of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

(2)  Such international airfare flight was delayed or cancelled for a reason other than extraordinary circumstances;

ANSWER:     As an answer to paragraph 116(2) of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

(3)  Such person affected by said delay or cancellation for at least three hours; and

ANSWER:     As an answer to paragraph 116(3) of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

(4)  Such person requested compensation for damages caused by delay or cancellation of his or her international airfare, but was not provided by SCANDINAVIAN AIRLINE SYSTEM with meaningful compensation mandated by Art. 19 and 22 of Montreal Convention through erroneous invocation of "extraordinary circumstances" defense.

ANSWER:     As an answer to paragraph 116(4) of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

117.    That excluded from the above-identified Classes are:

(1)  Defendant and any entities in which Defendant has a controlling interest;

ANSWER:     As an answer to paragraph 117 (1) of the First Amended Class Action

Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein and otherwise leaves all questions of law to the Court.

> (2) Any entities in which Defendant's officers, directors, or employees are employed and any of the legal representatives, heirs, successors or assigns of Defendant;

ANSWER:     As an answer to paragraph 117 (2) of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein and otherwise leaves all questions of law to the Court.

> (3) The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

ANSWER:     As an answer to paragraph 117 (3) of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein and otherwise leaves all questions of law to the Court.

> (4) All persons or entities that properly execute and timely file a request for exclusion from the Class;

ANSWER:     As an answer to paragraph 117 (4) of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein and otherwise leaves all questions of law to the Court.

> (5) Any attorneys representing the Plaintiff or the Class; and

ANSWER:     As an answer to paragraph 117 (5) of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein and otherwise leaves all questions of law to the Court.

> (6) All governmental entities.

ANSWER:     As an answer to paragraph 117 (6) of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the

allegations therein and otherwise leaves all questions of law to the Court.

118.    That the Plaintiff reserves the right to modify or amend the definition of the Class and or both Classes before the Court determines whether certification is appropriate.

ANSWER:    As an answer to paragraph 118 of the First Amended Class Action Complaint, admits the allegations therein.

119.    That, upon information and believe, the Class and or both Classes are numerously comprised of over 100 people and most likely over ten thousand people who were passengers on flights operated by SAS, the joinder of which in one action would be impracticable.

ANSWER:    As an answer to paragraph 119 of the First Amended Class Action Complaint, denies the allegations therein.

120.    That the exact number or identification of the Class members is presently unknown.

ANSWER:    As an answer to paragraph 120 of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

ANSWER:    As an answer to paragraph 116(1) of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

121.    That identity of the Class members is ascertainable.

ANSWER:    As an answer to paragraph 121 of the First Amended Class Action Complaint, denies the allegations therein.

122.    That in addition to manifests, databases and rolls maintained by defendant and its agents, the Class members may be located and informed of the pendency of this action by a combination of electronic bulletins, e-mail, direct mail and public notice, or other means.

ANSWER:    As an answer to paragraph 122 of the First Amended Class Action Complaint, denies the allegations therein.

123.    That the disposition of the claims of the proposed class members through this class action will benefit both the parties and the Court.

ANSWER:    As an answer to paragraph 123 of the First Amended Class Action Complaint, denies the allegations therein.

124.    That common questions of law and fact predominate over individual issues.

ANSWER:    As an answer to paragraph 124 of the First Amended Class Action Complaint, denies the allegations therein.

125.    That there is a well-defined community of interest in the questions of law and fact involved affecting members of the Class.

ANSWER:    As an answer to paragraph 125 of the First Amended Class Action Complaint, denies the allegations therein.

126.    That the questions of law and fact common to the Class predominate over questions affecting only individual Class members, and include, but are not limited to, the following:

a)    Whether SCANDINAVIAN AIRLINE SYSTEM is required to pay compensation to the members of both Classes pursuant to art 19 of the Montreal Convention;

ANSWER:    As an answer to paragraph 126(a) of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

b)    Whether SCANDINAVIAN AIRLINE SYSTEM is required to pay compensation to the members of both Classes pursuant to art 5, 7, 9 and 14 of EU 261;

ANSWER:    As an answer to paragraph 126(b) of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

c)    Whether SCANDINAVIAN AIRLINE SYSTEM is continually engaged in sabotaging of remedies available to members of both Classes in accordance with Art. 19 of the Montreal Convention;

37

ANSWER:    As an answer to paragraph 126(c) of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

        d).    Whether SCANDINAVIAN AIRLINE SYSTEM is continually engaged in sabotaging of remedies available to members of both Classes in accordance with Art. 5, 6, 9 and 14 of EU261/2004;

ANSWER:    As an answer to paragraph 126(d) of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

        e)    Whether the "extraordinary circumstances" exception only applies in certain circumstances where the airline can prove that the cancellation or delay was caused by (i) political instability, (ii) meteorological conditions incompatible with the operation of the flight concerned, (ii) security risks, (iii) technical or mechanical problems where it was "revealed by the manufacturer of the aircraft compromising the fleet of the air carrier concerned, or by competent authority, that those aircraft, although already in service, are affected by a hidden manufacturing defect which impinges on the flight safety" or where there was "damage to aircraft caused by acts of sabotage" or (v) strikes that affect the operation of an operating aircraft;

ANSWER:    As an answer to paragraph 126(e) of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

        f)    Whether SCANDINAVIAN AIRLINE SYSTEM failed to compensate members of both Classes by erroneously raising defenses of extraordinary circumstances";

ANSWER:    As an answer to paragraph 126(f) of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

        g)    Whether defense of extraordinary circumstances is a valid defense in an action for breach of contract of voluntary undertaking;

38

<u>ANSWER</u>:    As an answer to paragraph 126(g) of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

> h)    Whether SCANDINAVIAN AIRLINE SYSTEM failed to compensate the Class Members in  the amounts specified in Art. 19 and 22 of Montreal Convention.

<u>ANSWER</u>:    As an answer to paragraph 126(h) of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

127.    That the above-named Plaintiffs are asserting a claims that are typical of the entire Class I and Class II, having all been entitled to receive financial compensation pursuant to the Art 19 of Montreal Convention and or Art 21 of the Warsaw Convention, and pursuant to Art 5, 7, 9 and 14 of EU 261/2004 and having not received such compensation.

<u>ANSWER</u>:    As an answer to paragraph 127 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

128.    That the above-named Plaintiff and the Class members have similarly suffered harm arising from defendant's failure to pay compensation as alleged in this First Amended Class Action Complaint at Law.

<u>ANSWER</u>:    As an answer to paragraph 128 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

129.    That the above-named Plaintiff is an adequate representatives of the Class because she fit within the class definition and their interests do not conflict with the interests of the members of the Class they seek to represent.

<u>ANSWER</u>:    As an answer to paragraph 129 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

130.    That the above-named Plaintiff will prosecute this action vigorously for the benefit of the entire Class.

ANSWER:    As an answer to paragraph 130 of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

131.    That the above-named Plaintiff is represented by experienced and able attorneys from the undersigned law firm, which will serve as class counsel.

ANSWER:    As an answer to paragraph 131 of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

132.    That the Class counsel has litigated several class actions, and Plaintiffs' counsel intends to prosecute this action vigorously for the benefit of the entire Class.

ANSWER:    As an answer to paragraph 132 of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

133.    That the Plaintiff and class counsel can and will fairly and adequately protect the interests of all of the members of the Class.

ANSWER:    As an answer to paragraph 133 of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

134.    That a class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class members' claims would be impracticable and individual litigation would be unduly burdensome to the courts.

ANSWER:    As an answer to paragraph 134 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

135.    That due to the size of each individual Class member's claims, it would not be practicable for Class members to individually seek legal redress for the wrongs identified in this Complaint.

ANSWER:    As an answer to paragraph 135 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

136.    That without the class action vehicle, the Class would have no reasonable remedy and would continue to suffer losses, as United Airlines Inc. continues to fail to compensate passengers as required under Art. 19 and 22 of Montreal Convention and or Warsaw Convention.

ANSWER:    As an answer to paragraph 136 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

137.    That further, individual litigation has the potential to result in inconsistent or contradictory judgments.

ANSWER:    As an answer to paragraph 137 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

138.    That a class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

ANSWER:    As an answer to paragraph 138 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

## VII. CLASSCLAIMS:

### CLASS ACTION COUNT ONE:
### Cause of Action for Damages Caused by Delay or Cancellation of International Airfare Pursuant to Article 19 of the Montreal Convention

139.    That the above-named Plaintiffs are repeating, re-alleging, and adopting §§ 1-29 of preceding sections titled "Nature of this Civil Action"; §§ 30-49 of "Jurisdiction and Venue";

§§ 50-64 of "Parties"; §§ 65-90 of "Allegations Relevant to Individual and Class Claims"; §§ 91-110 of "Governing Law: The Warsaw Convention [34] and the Montreal Convention"; §§ 111-138 of "Class Action Allegations" sections of this entire Complaint as set forth fully herein and incorporates them by reference:

ANSWER:     As an answer to paragraph 139 of the First Amended Class Action

Complaint, repeats, reiterates and realleges each and every admission and denial made in

response to the paragraphs identified therein with the same force and effect as if set forth herein

at length.

140.     That on or about August 24, 2014 the flight No. 943 operated by SAS from Copenhagen to Chicago was significantly delayed on departure for approximately 5.5 hours.

ANSWER:     As an answer to paragraph 140 of the First Amended Class Action

Complaint, admits that Flight 943 on August 4, 2014 experienced a delay in the originally

scheduled departure time.

141.     That subsequently the above-named Plaintiff and all members of proposed class arrived to Chicago being almost 6 hours late of her pre-planned arrival. [35]

ANSWER:     As an answer to paragraph 141 of the First Amended Class Action

Complaint, admits that Flight 943 on August 4, 2014 experienced a delay in the originally

scheduled departure time.

---

[34] See, Article 19 of the Montreal Convention, holding that "The carrier is liable for damages occasioned by delay in the carriage by air of passengers, baggage or cargo. Nevertheless, the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures." Id.

[35] Cf., Air France SA v Heinz-Gerke Folkerts, Luz-Tereza Folkerts, ECJ, Case C-11/11 (26 February 2013)(holding that "Article 7 of Regulation (EC) No 261/2004 of the European Parliament and of the Council of 11 February 2004 establishing common rules on compensation and assistance to passengers in the event of denied boarding and of cancellation or long delay of flights, and repealing Regulation (EEC) No 295/91 must be interpreted as meaning that compensation is payable, on the basis of that article, to a passenger on directly connecting flights who has been delayed at departure for a period below the limits specified in Article 6 of that regulation, but has arrived at the final destination at least three hours later than the scheduled arrival time, given that the compensation in question is not conditional upon there having been a delay at departure and, thus, upon the conditions set out in Article 6 having been met").

142.     That, upon information and believe, delay of the above-referenced defendant's flight was not caused by extraordinary circumstances, which could have been avoided in due exercise of due diligence or another pertinent legal standard of care by the above-named defendants.

ANSWER:     As an answer to paragraph 142 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

143.     That, upon information and believe, the above-named defendant did not pursue all meaningful actions required to avoid or mitigate impact of extraordinary circumstances. Cf., Ronald Huzar v. Jer2.com Limited, [2014] EWCA Civ. 791, Case No. Case No: B2/2013/3277/CCRTF (Royal Courts of Justice, London, England, 11 June 2014)(holding that technical problems, which may be unforeseeable, but are ultimately caused by an event inherent in the running of an aircraft, and cannot therefore be considered to be an extraordinary circumstance).[36]

ANSWER:     As an answer to paragraph 143 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

144.     That the term "extraordinary circumstances" as evolved under the Montreal Convention jurisprudence is very limited and applies only in certain circumstances where the airline can prove the cancellation or delay was caused by political instability, meteorological conditions incompatible with the operation of the flight concerned, security risks, unexpected flight safety shortcomings and strikes that affect the operation of an operating aircraft." Wallentin-Hermann v. Alitalia, European Court of Justice, Case No C-549/07, Judgment of December 22, 2008, ¶22 (emphasis added).

ANSWER:     As an answer to paragraph 144 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

145.     That moreover, even the listed events do not "themselves constitute extraordinary circumstances, but only . . . may produce such circumstances." Id.

---

[36] http://www.bailii.org/cgi-bin/markup.cgi?doc=/ew/cases/EWCA/Civ/2014/791.html&query=huzar+and+jet2&method=boolean

ANSWER: As an answer to paragraph 145 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

146. That "extraordinary circumstances" do not include technical or mechanical problems except in the rare instances where the airline can prove those problems are due to hidden, inherent manufacturing defects or aircraft damage caused by sabotage. Id. at ¶26 (mechanical problems may constitute extraordinary circumstances only when "it was revealed by the manufacturer of the aircraft compromising the fleet of the air carrier concerned, or by competent authority, that those aircraft, although already in service, are affected by a hidden manufacturing defect which impinges on the flight safety" or where there was "damage to aircraft caused by acts of sabotage); see also Sturgeon v. Condor Flugdienst GmbH, European Court of Justice, Case No. C-402/7, Judgment of November 19, 2009 (reiterating that technical problems are not extraordinary circumstances in context of "technical faults on the plane and illness among the crew").

ANSWER: As an answer to paragraph 146 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

147. That in accordance with Article 19 of the Montreal Convention and or Article 21 of the Warsaw Convention, the above-identified defendant is liable for damages caused by delay and or cancellation of international air carriage of passengers.[37]

ANSWER: As an answer to paragraph 147 of the First Amended Class Action Complaint, admits that the rights and liabilities of the parties are exclusively governed by the Montreal Convention and otherwise refers all questions of law to the Court.

148. That, likewise the above-named defendant is responsible for damages caused by delay or cancellation of international airfare. as asserted in relevant portion of Art. 15.1. of its General Condition of Carriage, which states in pertinent part as follows:

15.1.1 Unless otherwise stated herein, Carriage hereunder is subject to

---

[37] El Al Isr. Airlines, Ltd. v. Tsui Yuan Tseng, 525 U.S. 155, 176 (1999)(holding that the United States is a party to the Montreal Convention, which governs the international air carriage of passengers, baggage, and cargo. The Convention provides an airline passenger's exclusive remedy; a passenger may not maintain "an action for personal injury damages under local law when her claim does not satisfy the conditions for liability under the Convention."

the provisions relating to the liability established by the Convention, even where such Carriage is not international Carriage to which the Convention mandatory applies.[38]

ANSWER:    As an answer to paragraph 148 of the First Amended Class Action Complaint, denies the allegations therein.

149.    That, as a direct and proximate cause of delayed departure of international air flight No. 943 operated by SAS from Copenhagen to Chicago, the above-named Plaintiffs were subjected to additional lodging and per diem expenses, spoliation of their memorable trip, inconvenience[39], financial injury, physical discomfort, loss of time, loss of use of their monies, and was subjected to various actual, general, special, incidental and consequential damages in the sum to be ascertained at trial.[40]

ANSWER:    As an answer to paragraph 149 of the First Amended Class Action Complaint, denies the allegations therein.

---

[38] http://www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf

[39] Cf., Ikekpeazu, No. 3:04cv00711 (RNC), 2004 U.S. Dist. LEXIS 24580 at *4 (D. Conn. Dec. 6, 2004) (recognizing financial injury as a cognizable claim, but not emotional injury)(also holding that if Plaintiff can prove that his lost days of work were occasioned by the delay and resulted in financial injury, Plaintiff can recover for this economic loss under the Montreal Convention): also see Rubin. (N.D. Cal., 2011)(holding that although pain and suffering independent of any physical injuries or illness are not recoverable, yet the economic damages recoverable under Article 19 include foreseeable, consequential damages, such as lost wages or profits, that are occasioned by the delay)(also holding that to the extent Plaintiff intends to allege damages due to the inconvenience of being trapped in the Beijing airport for 13.5 hours, he may be able to recover damages  if he can show that the inconvenience he suffered has an economic component that is independent of his other economic damages claims)(also holding that "damages for inconvenience do not fall within the rubric of 'emotional distress.' Time is money, after all, and the Court finds that the inconvenience of being trapped for hours in an unfamiliar airport is a compensable element of damages for delay in air travel." citing Daniel v. Virgin Atl. Airways Ltd, 59. F. Supp. 2d 986, 992 (N.D.Cal. 1998)(holding that " damages for inconvenience do not fall within the rubric of 'emotional distress" because "time is money, after all, and the inconvenience of being trapped for hours in an unfamiliar airport is a compensable element of damages for delay in air travel.")(also holding that "the amount of compensation for inconvenience would "vary dramatically depending on what the passenger was prevented from doing as a result of the flight delay")(also holding that to be recoverable, such "inconvenience" damages must truly encompass economic damages, and cannot simply be based upon the "discomfort, annoyance, and irritation" plaintiff experienced during the delay).

[40] Cf. Kupferman v. Pakistan International Airlines, 108 Misc. 2d 485, 438 N.Y.S.2d 189 (holding that the law has evolved a liberal rule of damages where a customer has been subjected to humiliating indifference and has been accorded treatment inferior to the class of treatment that he had bargained for).

150.    That under the Article 19 of the Montreal Convention, and par 15.4 of its General Condition of Carriage, the above-identified common carrier S.A.S. is liable for damages caused by delay and or cancellation of international airfare and international carriage of airline passengers.

ANSWER:    As an answer to paragraph 150 of the First Amended Class Action Complaint, denies the allegations therein.

151.    That this liability for damages caused by delay and or cancellation of international airfare pursuant to Articles 19 and 22(1) of the Montreal Convention is limited by the of 4560 SDR.

ANSWER:    As an answer to paragraph 151 of the First Amended Class Action Complaint, admits that the rights and liabilities of the parties are exclusively governed by the Montreal Convention and otherwise refers all questions of law to the Court.

152.    That, upon information and believe, while being estranged at Copenhagen International Airport, the above-named Plaintiffs sought to obtain travel-related assistance from the above-named defendant, but employees of said defendant was recklessly indifferent to plaintiff's travel related and health-related needs.

ANSWER:    As an answer to paragraph 152 of the First Amended Class Action Complaint, denies the allegations therein.

153.    That, at all times material hereto, defendant's employees stationed at Copenhagen International Airport did not offer any meaningful assistance to the above- named plaintiff while they were estranged at Copenhagen International Airport for approximately six (6) hours.
ANSWER:    As an answer to paragraph 153 of the First Amended Class Action Complaint, denies the allegations therein.

154.    That, while being subjected to the above-identified delays, the above- named Plaintiff and all other members of proposed Class were subjected to psychical inconvenience, exhaustion and travel stress of additional travel time in excess of almost 5.5 hours causing them to further sustain financial injury.

ANSWER:    As an answer to paragraph 125 of the First Amended Class Action Complaint, denies the allegations therein.

155. That as a direct and proximate cause of delay and or cancellation of international airfare for more than 5.5 hours on August 24, 2014, the above-named Plaintiffs and all other similarly situated passengers of said flight and members of proposed Class incurred similar damages in the sum of $6,897.82 per passenger; or alternatively at the sum to be determined and ascertained at trial.

ANSWER:    As an answer to paragraph 155 of the First Amended Class Action

Complaint, denies the allegations therein and otherwise refers all questions of law to be decided

by the Court.

156. That in alternative, as a direct and proximate cause of delay of departure of SAS flight No. 943 on May 9, 2014 the above-named Plaintiffs and all other similarly situated passengers of said flight and members of proposed Class incurred similar compensable inconvenience damages recoverable under the Montreal Convention in the sum of $200 per passenger; or alternatively at the sum to be determined and ascertained at trial.

ANSWER:    As an answer to paragraph 156 of the First Amended Class Action

Complaint, denies the allegations therein and otherwise refers all questions of law to be decided

by the Court.

## CLASS ACTION COUNT TWO:

### Cause of Action for Breach of Contract: Breach of Self-Imposed Duty to Compensate for Damages Caused by Delay or Cancellation of International Airfare Pursuant to Article 19 of the Montreal Convention as Incorporated by Relevant Provisions of SAS Contract of Carriage

157. That the above-named Plaintiffs are repeating, re-alleging, and adopting §§ 1-29 of preceding sections titled "Nature of this Civil Action"; §§ 30-49 of "Jurisdiction and Venue"; §§ 50-64 of "Parties"; §§ 65-90 of "Allegations Relevant to Individual and Class Claims"; §§ 91-110 of "Governing Law: The Warsaw Convention and the Montreal Convention" ; §§ 111-138 of "Class Action Allegations"; §§ 139-157 of "Class Action: Count One" sections of this entire Complaint as set forth fully herein and incorporates them by reference:

ANSWER:    As an answer to paragraph 157 of the First Amended Class Action

Complaint, repeats, reiterates and realleges each and every admission and denial made in

response to the paragraphs identified therein with the same force and effect as if set forth herein

at length.

158.     That since adoption by the USA of the Montreal Convention numerous flights operated by the above-named defendant SAS was delayed or cancelled.

ANSWER:     As an answer to paragraph 158 of the First Amended Class Action Complaint, denies the allegations therein.

159.     That upon information and believe numerous U.S. passengers contacted the above-named defendant SAS requesting compensation for their damages caused by delay or cancellation of international airfare as mandated by Art. 19 of the Montreal Convention and as voluntarily assumed contractual duty pursuant to defendant's Contract of International Carriage.

ANSWER:     As an answer to paragraph 159 of the First Amended Class Action Complaint, denies the allegations therein.

160.     That, upon information and believe, on numerous occasions the above- named defendant responded to passengers grievance by forwarding to them the following response letter:

> "Dear ****:
>
> We offer our regrets for the inconvenience you experienced as a consequence of the delay of SAS Flight **** on **** from **** to ****. This was due to a technical malfunction. It is our intention to minimize the strain and consequences imposed on our passengers in such a situation, and we extend our regrets in the lapse in service. We can advise you that the EU compensation does not apply if the delay is caused by an extraordinary circumstance. Specifically, that the delay could not have been avoided, although all reasonable measures had been taken. If you have incurred any direct expenses such as the telephone calls, meals, we kindly request you forward the receipts for consideration of reimbursement.  They can be sent via email or fax. Our fax number is 201-896-3735. Again, we apologize for the lapse in service on this occasion and the inconvenience caused to you. We hope we shall have another opportunity of serving you again in the future and of meriting your full faith in our performance. In the interim, SAS remains at your
> service.
>
>                                         Kind regards,
>
>                                         Ellen Rosa
>                                         SAS Customer Care

301 Rt. 17 North, Suite 500"[41]

ANSWER:    As an answer to paragraph 160 of the First Amended Class Action Complaint, denies the allegations therein.

161.    That upon information and believe on numerous occasions the above- named defendant purposefully misrepresented to its arrived passengers the scope and applicability of "extraordinary circumstances" defense as defined on page 4 of defendants General Condition and Contract of Carriage,  thereby depriving numerous class of U.S. passengers of statutory and contractual damages as incorporated into the Tariff and par. 9.3 of SAS General Condition and Contract of Carriage, and as publicly posted by SAS on its webpage and as filed by SAS with pertinent the U.S. federal agencies.[42]

ANSWER:    As an answer to paragraph 161 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

162.    That at all times material hereto the above-named defendant acted with reckless disregard for statutory and self –assumed contractual duties to compensate its U.S. passengers for damages caused by delay or cancellation of international airfare.

ANSWER:    As an answer to paragraph 163 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

163.    That by forwarding to aggrieved passengers this standardized response letter the above-named defendant intentionally misrepresented to numerous passengers and to U.S. general public the scope and applicability of "extraordinary circumstances defense" while knowing that mechanical malfunction of airplane is not construed as "extraordinary circumstances." Cf., SAS Customer Service letter with Ronald Huzar v.Jer2.com Limited, [2014] EWCA Civ. 791, Case No. Case No: B2/2013/3277/CCRTF (Royal Courts of Justice, London, England, 11 June 2014)(holding

---

[41] Cf. Definition of "Extraordinary circumstances" as defined on page 4 of SAS contract of carriage stating as follows:  "Extraordinary Circumstances" means situations where an event could not have been avoided even if all reasonable measures had been taken.  Such circumstances may, in particular, occur in cases of political instability, meteorological conditions incompatible with the operation of the flight concerned, security risks, unexpected flight safety shortcomings, strikes that affect the operation of an operating air carrier or where the impact of an air traffic management decision in relation to a particular aircraft on a particular day gives rise to a long delay or the cancellation of one or more flights by that aircraft."
[42] http://www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf

that technical problems, which may be unforeseeable, but are ultimately caused by an event inherent in the running of an aircraft, and cannot therefore be considered to be an extraordinary circumstance);[43]

    <u>ANSWER</u>:    As an answer to paragraph 163 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

    164.    That the at all times material hereto the above-named defendant knew that term "extraordinary circumstances" as evolved under the Montreal Convention jurisprudence is very limited and applies only in certain circumstances where the airline can prove the cancellation or delay was caused by political instability, meteorological conditions incompatible with the operation of the flight concerned, security risks, unexpected flight safety shortcomings and strikes that affect the operation of an operating aircraft." See, generally, Wallentin-Hermann v. Alitalia, European Court of Justice, Case No C-549/07, Judgment of December 22, 2008, 22 (emphasis added); Nelson v. Deutsche Lufthansa AG; [2014] ECJ C-581/10 (holding that "Extraordinary circumstances should be deemed to exist where the impact of an air traffic management decision in relation to a particular aircraft on a particular day gives rise to a long delay, an overnight delay, or the cancellation of one or more flights by that aircraft, even though all reasonable measures had been taken by the air carrier concerned to avoid the delays or cancellations."); Jet.2.com Limited v. Ronald Huzar, [2014] EWCA Civ. 791, Case No. Case No: B2/2013/3277/CCRTF (Royal Courts of Justice, London, England, 11 June 2014)(holding that technical problems, which may be unforeseeable, but are ultimately caused by an event inherent in the running of an aircraft, and cannot therefore be considered to be an extraordinary circumstance).[44]

    <u>ANSWER</u>:    As an answer to paragraph 164 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

    165.    That "extraordinary circumstances" do not include technical or mechanical problems except in the rare instances where the airline can prove those problems are due to hidden, inherent manufacturing defects or aircraft damage caused by sabotage. [45]

---

[43] http://www.bailii.org/cgi-bin/markup.cgi?doc=/ew/cases/EWCA/Civ/2014/791.html&query=huzar+and+jet2&method=boolean

[44] http://www.bailii.org/cgi-bin/markup.cgi?doc=/ew/cases/EWCA/Civ/2014/791.html&query=huzar+and+jet2&method=boolean

[45] <u>Wallentin-Hermann</u> at ¶26 (mechanical problems may constitute extraordinary circumstances only when "it was revealed by the manufacturer of the aircraft compromising the fleet of the air carrier concerned, or by competent authority, that those aircraft, although already in service, are

ANSWER: As an answer to paragraph 165 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

166. That, at all times material hereto, the above-identified standardized letters, misrepresenting the scope and applicability of "extraordinary circumstances" defense contrary to its terms stated on page 4 of SAS General Conditions and Contract of Carriage, were sent to numerous aggrieved passengers, depriving them of statutory and contractual remedies while knowing that in accordance with Article 19 of the Montreal Convention and or Article 21 of the Warsaw Convention, SAS is liable for damages caused by delay and or cancellation of international air carriage of passengers; and while further knowing that "extraordinary circumstances" means situations where an event could not have been avoided even if all reasonable measures had been taken; and while further knowing that: "such circumstances may, in particular, occur in cases of political instability, meteorological conditions incompatible with the operation of the flight concerned, security risks, unexpected flight safety shortcomings, strikes that affect the operation of an operating air carrier or where the impact of an air traffic management decision in relation to a particular aircraft on a particular day gives rise to a long delay or the cancellation of one or more flights by that aircraft." [46]

ANSWER: As an answer to paragraph 166 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

---

affected by a hidden manufacturing defect which impinges on the flight safety" or where there was "damage to aircraft caused by acts of sabotage); see also Sturgeon v. Condor Flugdienst GmbH, European Court of Justice, Case No. C-402/7, Judgment of November 19, 2009 (reiterating that technical problems are not extraordinary circumstances in context of "technical faults on the plane and illness among the crew").

[46] Cf. Definition of "Extraordinary circumstances" as defined on page 4 of SAS contract of carriage stating as follows: "Extraordinary Circumstances" means situations where an event could not have been avoided even if all reasonable measures had been taken. Such circumstances may, in particular, occur in cases of political instability, meteorological conditions incompatible with the operation of the flight concerned, security risks, unexpected flight safety shortcomings, strikes that affect the operation of an operating air carrier or where the impact of an air traffic management decision in relation to a particular aircraft on a particular day gives rise to a long delay or the cancellation of one or more flights by that aircraft." with El Al Isr. Airlines, Ltd. v. Tsui Yuan Tseng, 525 U.S. 155, 176 (1999)(holding that the United States is a party to the Montreal Convention, which governs the international air carriage of passengers, baggage, and cargo. The Convention provides an airline passenger's exclusive remedy; a passenger may not maintain "an action for personal injury damages under local law when her claim does not satisfy the conditions for liability under the Convention."

167.     That, likewise the above-identified letters were sent to numerous passengers knowing that the named defendant is responsible for damages caused by delay or cancellation of international airfare. as asserted in relevant portion of Art. 15.1. of its General Condition of Carriage, which states in pertinent part as follows:

> 15.1.1 Unless otherwise stated herein, Carriage hereunder is subject to the provisions relating to the liability established by the Convention, even where such Carriage is not international Carriage to which the Convention mandatory applies.[47]

ANSWER:     As an answer to paragraph 167 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

168.     That, as a direct and proximate cause of misrepresenting to numerous aggrieved passengers the scope and applicability of "extraordinary circumstances" defense and repudiating of its contract language pertaining to "extraordinary circumstances" defense as stated on page 4of SAS General Conditional and Contract of Carriage,  the above-named defendant subjected numerous class of U.S. airfare passengers to standardized damages in the sum of $200 per passenger, or in the sum to be determined at trial.

ANSWER:     As an answer to paragraph 168 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

## CLASS ACTION COUNT THREE

### Cause of Action for Breach of Contract: Breach of Voluntary Self-Imposed Contractual Duty to Compensate for Delay as Mandated by Article 5, 6 and 7 of EU Directive No. 261/2004, as Incorporated by Relevant Provisions of SAS Contract of Carriage

169.     That the above-named Plaintiffs are repeating, re-alleging, and adopting §§ 1-29 of preceding sections titled "Nature of this Civil Action"; §§ 30-49 of "Jurisdiction and Venue"; §§ 50-64 of "Parties";  §§ 65-90  of "Allegations Relevant to Individual and Class Claims"; §§ 91-110  of "Governing Law: The Warsaw Convention and the Montreal Convention" ; §§ 111-138 of "Class Action Allegations"; §§ 139-156 of Class Claims: Count One; §§ 158-168 of Class Claims: Count Two sections of this entire Complaint at Law as set forth fully herein and incorporates them by reference:

---

[47] http://www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf

ANSWER:     As an answer to paragraph 169 of the First Amended Class Action Complaint, repeats, reiterates and realleges each and every admission and denial made in response to the paragraphs identified therein with the same force and effect as if set forth herein at length.

170.     That, at all time material hereto, the European Union Regulation No. 261 was adopted by the European Parliament and the Council of the European Union on February 11, 2004. [48]

ANSWER:     As an answer to paragraph 170 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

171.     That the purpose of EU Regulation 261/ 2004 is, in part, to provide standardized compensation - separate from individualized compensation which may be provided by other laws upon individualized proof - for the "serious trouble and inconvenience" inevitably suffered by all passengers who experience flight cancellations or lengthy delays, particularly on international carrier routes.
ANSWER:     As an answer to paragraph 171 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

172.     That pursuant to Article 3, EU Regulation 261 applies to passengers with confirmed reservations on (a) flights departing from an airport located in the territory of a member state of the European Union, and (b) flights departing from a country outside the European Union to an airport in the territory of a member state of the European Union, if the operating carrier of the flight concerned is an air carrier with an operating license granted by a member state of the European Union.

ANSWER:     As an answer to paragraph 172 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

---

[48] Regulation (EC) No 261/2004 of the European Parliament and of the Council of 11 February 2004 establishing common rules on compensation and assistance to passengers in the event of denied boarding and of cancellation or long delay of flights (OJ 2004 L 46, p.1).

173.    That pursuant to Article 5, confirmed passengers on flights covered by Article 3, in case of cancellation of the flight "have the right to compensation by the operating air carrier in accordance with Article 7 of the Regulation unless: (a) they are informed of the cancellation at least two weeks before the scheduled time of departure; or (b) they are informed of the cancellation between two weeks and seven days before the scheduled time of departure and are offered re-routing, allowing them to depart no more than two hours before the scheduled time of departure and to reach their final destination less than four hours after the scheduled time of arrival; or (c) they are informed of the cancellation less than seven days before the scheduled time of departure and are offered re-routing, allowing them to depart no more than one hour before the scheduled time of departure and to reach their final destination less than two hours after the scheduled time of arrival."

ANSWER:    As an answer to paragraph 173 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

174.    That also under Article 3, an "operating air carrier shall not be obliged to pay compensation in accordance with Article 7, if it can prove that the cancellation is caused by extraordinary circumstances which could not have been avoided even if all reasonable measures had been taken."

ANSWER:    As an answer to paragraph 174 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

175.    That pursuant to Article 7, passengers eligible under Articles 3 and 5 on flights that were cancelled, "shall receive compensation amounting to: (a) EUR 250 for all flights of 1500 kilometers or less; (b) EUR 400 for all intra-Community flights of more than 1500 kilometers, and for all other flights between 1500 and 3500 kilometers; (c) EUR 600 for all flights not falling under (a) or (b)."

ANSWER:    As an answer to paragraph 175 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

176.    That Article 7 also provides that the operating carrier may reduce the compensation amounts by 50% when "passengers are offered re-routing to their final destination on an alternative flight, the arrival time of which does not exceed the scheduled arrival time of the flight originally booked (a) by two hours, in respect of all flights of 1500 kilometers or less; or (b) by three hours, in respect of all intra-Community flights of more than 1500 kilometers and for all

54

other flights between 1500 and 3500 kilometers; or (c) by four hours, in respect of all flights not falling under (a) or (b)."

ANSWER: As an answer to paragraph 176 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

177. That on November 19, 2009, in Sturgeon v. Condor Flugdienst GmbH, the European Court of Justice ruled that "Article 5, 6 and 7 of Regulation No 261/2004 must be interpreted as meaning that passengers whose flights are delayed may be treated, for the purposes of the application of the right to compensation, as passengers whose flights are cancelled and may thus rely on the right to compensation laid down in Article 7 of the regulation where they suffer, on account of a flight delay, a loss of time equal to or in excess of three hours." [49]

ANSWER: As an answer to paragraph 177 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

178. That in addition, the European Court of Justice ruled that "Article 5(3) of Regulation No 261/2004 must be interpreted as meaning that a technical problem in an aircraft which leads to the cancellation or delay of a flight is not covered by the concept of "extraordinary circumstances" within the meaning of that provision, unless that problem stems from events which, by their nature or origin, are not inherent in the normal exercise of the activity of the air carrier concerned and are beyond its actual control."

ANSWER: As an answer to paragraph 178 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

---

[49] Sturgeon v Condor Flugdienst GmbH and Böck v Air France SA, Joined Cases C- 402/07 and C-432/07,[2010] 2 All E R (Comm) 983 (holding of CJEU that the Community principle of equal treatment, which requires that comparable situations should be treated in the same way, was applicable)(also holding that there was no justification for distinguishing between cancellations and delays where passengers suffer equal inconvenience and in such cases passengers subject to a qualifying delay should, like those similarly affected by cancellations, be entitled to compensation under Article 7, which should be payable where a passenger suffers, on account of flight delay, "a loss of time equal to or in excess of three hours, that is, where they reach their final destination three hours or more after the arrival time originally scheduled by the air carrier").

179.    That in its recent opinion dated June 11, 2014 the Court of Justice of the European Union confirmed its prior decision in Sturgeon v. Condor Flugdienst GmbH dated November 19, 2009, whereby the European Court of Justice ruled that "Article 5, 6 and 7 of Regulation No 261/2004 must be interpreted as meaning that passengers whose flights are delayed may be treated, for the purposes of the application of the right to compensation, as passengers whose flights are cancelled and may thus rely on the right to compensation laid down in Article 7 of the regulation where they suffer, on account of a flight delay, a loss of time equal to or in excess of three hours."[50]

ANSWER:    As an answer to paragraph 179 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

180.    That the right to compensation under Article 7 of EU Regulation 261 is separate from any right to compensation or damages, based upon individualized proof, any passenger may have premised on a separate cause of action under separate law.

ANSWER:    As an answer to paragraph 180 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

181.    That, at all times material hereto, the above-named defendant failed to tender to the above-named plaintiffs compensation required to be tendered by Articles 7 of the EU Directive 261/2004 despite the fact that such compensation for delay in performance of "community carrier" is mandated pursuant to binding legal decision of Sturgeon v. Condor Flugdienst GmbH.

ANSWER:    As an answer to paragraph 181 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

182.    That upon information and believe said duty to compensate for delay or cancellation of international airfare pursuant to Articles 6 and 7 of EU 261 is incorporated or should have been incorporated into the Tariff and Art. 9.3. and Art.15 - 5.4 of its Contract of General Condition of Carriage as publicly posted by the above- named defendant on its webpage and as filed by the above-named defendant with pertinent U.S. federal agencies.[51]

---

[50] http://curia.europa.eu/jcms/upload/docs/application/pdf/2012-05/cp120063en.pdf
[51] www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf

ANSWER:      As an answer to paragraph 182 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

183.    That such contractual term constitutes voluntary undertaking by the above-named defendant.

ANSWER:      As an answer to paragraph 183 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

184.    That at all times material hereto the above-named defendant perpetrated material breach of Art. 9.3 and Art. 15.4, as well as other pertinent articles of its General Conditions and Contract of Carriage and further breached entire contract for international airfare by failing to tender to the Plaintiff and all other members of proposed class the compensation in the sum of 600 Euro due to each member of proposed class.

ANSWER:      As an answer to paragraph 184 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

185.    That said breach of self-imposed obligation incorporated in Art. 9 and Art. 15.4, as well as other pertinent articles of defendant's General Condition and Contract of Carriage was a material breach of contractual condition subsequent, which was imposed upon the above-named Parties by terms of their entire contractual undertaking.

ANSWER:      As an answer to paragraph 185 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

186.    That as a direct and proximate cause of the above-identified failure of defendant to compensate the above-named Plaintiff and all other members of proposed Class for damages caused by delay on departure of its flight No. 943 on August 24, 2014, the above-named Plaintiff and all other members of proposed Class incurred pecuniary damages in the aggregated sum of 600 euros.

ANSWER:      As an answer to paragraph 186 of the First Amended Class Action

Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

## CLASS ACTION COUNT FOUR

### Cause of Action: Breach of Self-Assumed and Self-Imposed Voluntary Contractual "Duty of Inform" as Mandated by Article 14 of EU Directive No. 261/2004, as Incorporated by Relevant Provisions of SAS Contract of Carriage

187.    That the above-named Plaintiffs are repeating, re-alleging, and adopting §§ 1-29 of preceding sections titled "Nature of this Civil Action"; §§ 30-49 of "Jurisdiction and Venue"; §§ 50-64 of "Parties"; §§ 65-90 of "Allegations Relevant to Individual and Class Claims"; §§ 91-110 of "Governing Law: The Warsaw Convention and the Montreal Convention" ; §§ 111-138 of "Class Action Allegations"; §§ 139-156 of Class Claims: Count One; §§ 158-168 of Class Claims: Count Two; §§ 169-186 of Class Claims: Count Three sections of this entire Complaint-at-Law as set forth fully herein and incorporates them by reference:

ANSWER:    As an answer to paragraph 187 of the First Amended Class Action Complaint, repeats, reiterates and realleges each and every admission and denial made in response to the paragraphs identified therein with the same force and effect as if set forth herein at length.

188.    That at all times material hereto the above-named defendant owed to the above-named Plaintiff the "duty to inform " as promulgated by Art. 14 of the Regulation of European Union No. 261/2004.

ANSWER:    As an answer to paragraph 188 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

189.    That, at all times material hereto, Art. 14 of EU 261/2004 included the following language:

> "Article 14 Obligation to inform passengers of their rights
> 1. The operating air carrier shall ensure that at check-in a clearly legible notice containing the following text is displayed in a manner clearly visible to passengers: 'If you are denied boarding or if your flight is cancelled or delayed for at least two hours, ask at the check-in counter or boarding gate for the text stating your rights, particularly with regard to compensation and assistance'.

2. An operating air carrier denying boarding or canceling a flight shall provide each passenger affected with a written notice setting out the rules for compensation and assistance in line with this Regulation. It shall also provide each passenger affected by a delay of at least two hours with an equivalent notice. The contact details of the national designated body referred to in Article 16 shall also be given to the passenger in written form.

3. In respect of blind and visually impaired persons, the provisions of this Article shall be applied using appropriate alternative means." [52]

ANSWER:    As an answer to paragraph 189 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

190.    That at all times material hereto the above-named Defendant breached said duty by failing to adequately and meaningfully inform the above-named Plaintiff of particulars of delays and or cancellation of her flight and of all remedies available to her.

ANSWER:    As an answer to paragraph 190 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

191.    That upon information and believe said "duty to inform" as promulgated and mandated by Article 14 of EU 261 was incorporated into the Tariff and Art. 9.3 and other pertinent articles of defendant's General Condition and Contract of Carriage as publicly posted by the above-named defendant on its webpage and as filed by the above-named defendant with pertinent U.S. federal agencies.[53]

ANSWER:    As an answer to paragraph 191 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

192.    That the above-identified reckless indifference and withholding of "duty to inform" on the part of S.A.S. constituted breach of self-imposed contractual obligation as

---

[52] Official Text of the Regulation of European Union 261/2004 entered into force on 17 February 2005 at http://eurlex.europa.eu/ LexUriServ/LexUriServ.do?uri =OJ:L:2004: 046:0001:0007:EN:PDF
[53] http://www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf

evidenced by Art 9, 15 and other pertinent articles of defendant's filed Tariff and General Condition and Contract of Carriage.[54]

ANSWER:     As an answer to paragraph 192 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

193.    That the true and correct copy of SAS General Condition and Contract of Carriage setting forth such voluntary assumed contractual undertaking is appended herewith marked as Exhibit B, incorporated by reference and made a part of this First Amended Class Action Complaint at Law.

ANSWER:     As an answer to paragraph 193 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

194.    That such voluntarily assumed contractual "duty to inform" is a material contractual term and contractual covenant.

ANSWER:     As an answer to paragraph 194 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

195.    That such voluntarily assumed "duty of care" is a condition subsequent covenant of entire contractual undertaking voluntarily assumed by the above-named defendant.

ANSWER:     As an answer to paragraph 195 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

196.    That by withholding of performance of voluntarily assumed contractual "duty to inform", the above-named defendant perpetrated material breach of parties' contract of international airfare carriage.

ANSWER:     As an answer to paragraph 196 of the First Amended Class Action

---

[54] EU Directive 261/2004 is applicable to S.A.S. because of its domiciliary status at the country member of European Union.

Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

197.     That, at all times material hereto, the above-named Defendant breached said "duty to inform" by failing to adequately and meaningfully inform the above-named Plaintiff of particulars of delays and or cancellation of their flight and of all remedies available to them.

ANSWER:     As an answer to paragraph 197 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

198.     That, as a direct and proximate cause of the above-identified failure of the above-named defendant to tender its contractual performance due on material contractual term of "duty to inform," the above-named Plaintiff and all other members of proposed Class incurred actual, general, special, incidental and consequential damages in the sum to be ascertained and proven at trial.

ANSWER:     As an answer to paragraph 198 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

## CLASS ACTION COUNT FIVE
### Cause of Action for Breach of Contract: Breach of Voluntary Self-Imposed Contractual Duty of Care as Mandated by Article 9 of EU Directive 261/2004

199.     That the above-named Plaintiffs are repeating, re-alleging, and adopting §§ 1-29 of preceding sections titled "Nature of this Civil Action"; §§ 30-49 of "Jurisdiction and Venue"; §§ 50-64 of "Parties"; §§ 65-90 of "Allegations Relevant to Individual and Class Claims"; §§ 91-110 of "Governing Law: The Warsaw Convention and the Montreal Convention" ; §§ 111-138 of "Class Action Allegations"; §§ 139-156 of Class Claims: Count One; §§ 158-168 of Class Claims: Count Two; §§ 169-186 of Class Claims: Count Three; §§ 187-198 of Class Action Count Four sections of this entire Complaint as set forth fully herein and incorporates them by reference:

ANSWER:     As an answer to paragraph 199 of the First Amended Class Action Complaint, repeats, reiterates and realleges each and every admission and denial made in response to the paragraphs identified therein with the same force and effect as if set forth herein at length.

200.    That European Community Directive 261/2004 is latest strict liability international consumer protection law enacted by European Parliament in 2004.

ANSWER:    As an answer to paragraph 200 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

201.    That said Directive applies to any and all airlines domiciled within the European Union, as well as to airlines arriving or departing from any airports within the European Community.

ANSWER:    As an answer to paragraph 201 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

202.    That said Directive applies to in-bound and out-bound as well as intra-community flights operated by "community carriers" such as the above-named defendant.

ANSWER:    As an answer to paragraph 202 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

203.    That said Directive provides private right of action for any passengers who are entitle to compensation pursuant to Articles 7 and 9 of said Directive.

ANSWER:    As an answer to paragraph 203 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

204.    That Article 9 of said Directive establishes the right of estranged passengers to receive certain care from airline at airline expense such as local lodging, food coupons, telecommunication services and etc.

ANSWER:    As an answer to paragraph 204 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

205.     That despite clear obligation to provide the above-named plaintiff with food, local shelter and other assistance as mandated by Article 9 of EU 261/2004, at all times material hereto the above-named defendant willfully breached said obligation of care and refused to render any aid required to be rendered under Article 9 of EU 261/2004.

ANSWER:     As an answer to paragraph 205 of the First Amended Class Action

Complaint, denies the allegations therein and otherwise refers all questions of law to be decided

by the Court.

206.     That, Art. 9 of European Union Regulation 261/2004 states at following:

"Article 9: Right to care
1. Where reference is made to this Article, passengers shall be offered free of charge: (a) meals and refreshments in a reasonable relation to the waiting time;
(b) hotel accommodation in cases— where a stay of one or more nights becomes
necessary, or — where a stay additional to that intended by the passenger becomes necessary;
(c) transport between the airport and place of accommodation (hotel or other).
2. In addition, passengers shall be offered free of charge two telephone calls, telex or ax messages, or e-mails.
3. In applying this Article, the operating air carrier shall pay particular attention to the needs of persons with reduced mobility and any persons accompanying them, as well as to the needs of unaccompanied children."[55]

ANSWER:     As an answer to paragraph 206 of the First Amended Class Action

Complaint, denies the allegations therein and otherwise refers all questions of law to be decided

by the Court.

207.     That upon information and believe, compliance of Scandinavia Airline System with EU 261/2004 is a condition precedent of holding valid license issued by pertinent European air-transportation authorities.

ANSWER:     As an answer to paragraph 207 of the First Amended Class Action

Complaint, denies the allegations therein and otherwise refers all questions of law to be decided

---

[55] Official Text of the Regulation of European Union 261/2004 entered into force on 17 February 2005                                    at                                    http://eur
lex.europa.eu/LexUriServ/LexUriServ.do?uri=OJ:L:2004:046:0001:0007:EN:PDF

by the Court.

208.    That likewise the above-named defendant is obligated to render "duty of care" pursuant to recently pronounced controlling legal authorities.[56]

ANSWER:    As an answer to paragraph 208 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

209.    That at that times material hereto the above-named plaintiffs were not rendered any care required by the Article 9 of the EU 261/2004, which is applicable to defendant due to its domicile within European Community.

ANSWER:    As an answer to paragraph 209 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

210.    That despite clear legal obligation to provide the above-named plaintiff with food, water, refreshments, telecommunication services and local shelter and other assistance as mandated by Article 9 of EU 261/2004, at all times material hereto the above-named defendant willfully breached said obligation of care and refused to render any aid required to be rendered under Article 9 of EU 261/2004.

ANSWER:    As an answer to paragraph 210 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

211.    That recently the "duty of care" toward its passengers on the part of the above-named defendant was reaffirmed in the case of Denise McDonagh v Ryanair Ltd., European Court of Justice Case C-12/11,[57] which is now controlling legal precedent within European Community.[58]

---

[56] http://curia.europa.eu/jcms/upload/docs/application/pdf/2012-03/cp120032en.pdf

[57] http://eur- lex.europa.eu/LexUriServ/LexUriServ.do?uri=CELEX:62011CJ0012:EN:HTML

[58] See, Denise McDonagh v Ryanair Airlines Ltd, case C -11/12 (holding that Article 5 of Regulation (EC) No 261/2004 of the European Parliament and of the Council of 11 February 2004 establishing common rules on compensation and assistance to passengers in the event of denied boarding and of cancellation or long delay of flights, and repealing Regulation (EEC) No 295/91, must be interpreted as meaning that circumstances such as the closure of part of European airspace as a result of the eruption of the Eyjafjallajökull volcano constitute 'extraordinary

ANSWER:     As an answer to paragraph 211 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

212.     That said "duty of care" as promulgated and mandated by Article 14 of EU 261 was incorporated into the Tariff and par. 9.3 of defendant's General Condition and Contract of Carriage as publicly posted by the above-named defendant on its webpage and as filed by the above-named defendant with pertinent the U.S. federal agencies.[59]

ANSWER:     As an answer to paragraph 212 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

213.     That at all times material hereto defendant's customer services at Copenhagen International Airport was very poorly organized by Scandinavian Airlines, the employees of which were non-responsive and visibly indifferent to a travel-related needs of this elderly disable passenger.

ANSWER:     As an answer to paragraph 213 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

---

circumstances' within the meaning of that regulation which do not release air carriers from their obligation laid down in Articles 5(1)(b) and 9 of the regulation to provide care);(also holding that Articles 5(1)(b) and 9 of Regulation No 261/2004 must be interpreted as meaning that, in the event of cancellation of a flight due to 'extraordinary circumstances' of a duration such as that in the main proceedings, the obligation to provide care to air passengers laid down in those provisions must be complied with, and the validity of those provisions is not affected);(however, an air passenger may only obtain, by way of compensation for the failure of the air carrier to comply with its obligation referred to in Articles 5(1)(b) and 9 of Regulation No 261/2004 to provide care, reimbursement of the amounts which, in the light of the specific circumstances of each case, proved necessary, appropriate and reasonable to make up for the shortcomings of the air carrier in the provision of care to that passenger, a matter which is for the national court to assess).

[59] http://www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf

214.    That such reckless indifference and withholding of "right to care" on the part of the above-named defendant constituted breach of statutory "duty of care" imposed by Art. 9 of the EU 261.[60]

ANSWER:    As an answer to paragraph 214 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

215.    That such reckless indifference and withholding of "right to care" on the part of S.A.S. also constituted breach of self-imposed contractual obligation as evidenced by Art. 9.1. and Art 9.3. of defendant's filed Tariff and General Condition of Carriage.[61]

ANSWER:    As an answer to paragraph 215 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

216.    That such reckless indifference was manifested in the following:

(a)    Plaintiff was not offered any pecuniary compensation due under

Article 5, 7 and 9 of the EU Directive No. 261/2004; and

(b)    Plaintiff was not offered meaningful comparable re-routing

options or compensation due to him pursuant to Article 7(1)(c) of EU

261/2004 in the sum of €600 per passenger due under terms of EU

Directive 261/2004; and

(c)    Airline did not offer any food, water, meals and refreshments in

violation "duty to care" set forth by Article 9 of EU Directive 261/2004

and pertinent articles of its General Condition and Contract of Carriage.

---

[60] The European Union Directive No. 261/2004 is applicable to S.A.S. because of its domiciliary status at the Kingdom of Sweden, which is a country-member of the European Community, which is subsequent to the Treaty of Rome of 1957 as amended by the Treaty of Lisbon of 2009 presently known as the European Union.

[61] Conditions of Carriage as published on website of S.A.S. pursuant to the art. 205 sec. 3 of the Act of 3 July 2002 Aviation Law.(Journal of Laws of 2002, No. 130, item 1112) is outdated and appears to be in conflict with EU Directive 261/2004.

ANSWER:    As an answer to paragraph 216 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

217.    That at all times material hereto said "duty of care" as promulgated and mandated by Article 9 of EU 261 was incorporated into the Tariff and Condition and Art. 10.2 and other articles of defendant's General Condition and Contract of Carriage as publicly posted by the above-named defendant on its webpage and as filed by the above- named defendant with pertinent U.S. federal agencies.[62]

ANSWER:    As an answer to paragraph 217 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

218.    That the above-identified reckless indifference and withholding of "duty of care" on the part of S.A.S. Airline constituted breach of self-imposed contractual obligation as evidenced by defendant's filed Tariff as well as Art. 10.2 and other pertinent articles of SAS General Condition and Contract of Carriage.[63]

ANSWER:    As an answer to paragraph 218 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

219.    That such contractual terms as incorporated by relevant articles of SAS General Condition and Contract of Carriage, constitutes voluntary undertaking of contractual duty of care for its estranged passengers by the above-named defendant.

ANSWER:    As an answer to paragraph 219 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

220.    That such voluntarily assumed contractual "duty of care" is a material contractual term and covenant.

---

[62] http://www.lot.com/us/en/conditions-of-carriage
[63] EU Directive 261/2004 is applicable to Scandinavia Airlines System pursuant to the art. 205 sec. 2a of the Act of 3 July 2002 Aviation Law (Journal of Laws 02.130.1112).

ANSWER: As an answer to paragraph 220 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

221.    That such voluntarily assumed "duty of care" is a condition subsequent covenant of entire contractual undertaking voluntarily assumed by the above-named defendant.

ANSWER: As an answer to paragraph 221 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

222.    That by withholding of performance of voluntarily assumed contractual "duty of care", the above-named defendant perpetrated material breach of its General Condition and Contract of Carriage.[64]

ANSWER: As an answer to paragraph 222 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

223.    That as direct and proximate cause of said breach of voluntarily assumed duty of care and subsequent material breach of contract of international airfare carriage perpetrated by the above-named defendant, the above-named Plaintiff and all other members of proposed Class were forced to purchase local meals, food, refreshment and water for their needs at her own expense, thereby incurring actual, general, special, incidental and consequential damages in the sum to be proven at trial.

ANSWER: As an answer to paragraph 223 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

## CLASS ACTION COUNT SIX

### Cause of Action for Breach of SAS General Conditions & Contract of Carriage: Breach Voluntarily Assumed and Self-Imposed Contractual Duties

224.    That the above-named Plaintiffs are repeating, re-alleging, and adopting §§ 1-29 of preceding sections titled "Nature of this Civil Action"; §§ 30-49 of "Jurisdiction and Venue";

---

[64] http://www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf

§§ 50-64 of "Parties"; §§ 65-90 of "Allegations Relevant to Individual and Class Claims"; §§ 91-110 of "Governing Law: The Warsaw Convention and the Montreal Convention"; §§ 111-138 of "Class Action Allegations"; §§ 139-156 of Class Claims: Count One; §§ 158-168 of Class Claims: Count Two; §§ 169-186 of Class Claims: Count Three; §§ 187-198 of Class Action Count Four; §§ 199-223 of Class Action Count Five sections of this entire First Amended Complaint as set forth fully herein and incorporates them by reference:

ANSWER:    As an answer to paragraph 224 of the First Amended Class Action

Complaint, repeats, reiterates and realleges each and every admission and denial made in

response to the paragraphs identified therein with the same force and effect as if set forth herein

at length.

225.    That, at all times material hereto, the above-named parties entered into binding legal agreement for international airfare transportation of the above-named Plaintiff by the above-named Defendant from Chicago, Illinois to Moscow, Russian Federation via connecting stop at Copenhagen Denmark, and than on August 24, 2014 back to the USA via connecting stop at Copenhagen, Denmark.

ANSWER:    As an answer to paragraph 225 of the First Amended Class Action

Complaint, denies the allegations therein and otherwise refers all questions of law to be decided

by the Court.

226.    That at all times material hereto the above-referenced contract incorporated the following defendant's duties:

(a)    "duty to compensate" for delay or cancellation of the international

airfare as promulgated by Art. 19 of the Montreal Convention, as incorporated by Art.

9.3.1. and Art. 15.1.1 and other pertinent provisions of defendant's General Condition of Carriage;

ANSWER:    As an answer to paragraph 226(a) of the First Amended Class Action

Complaint, denies the allegations therein and otherwise refers all questions of law to be decided

by the Court.

(b)    "duty to compensate" for delay or cancellation of the international airfare as

promulgated by Art. 5 of EU 261/2004, as incorporated by Art. 15.4 and other

pertinent provisions of defendant's General Condition of Carriage;

ANSWER:    As an answer to paragraph 226(b) of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

(c)    "duty to render care" as set forth in Art 9 of the EU Regulation 261/2004, as incorporated by Art. 9.3 of defendant's General Condition of Carriage;

ANSWER:    As an answer to paragraph 226(c) of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

(d)    "duty to inform" as set forth by Art 14 of the EU Regulation 261/2004, as incorporated by Art. 2.4 and other pertinent provisions of defendant's General Condition of Carriage;

ANSWER:    As an answer to paragraph 226(d) of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

227.    That, at all times material hereto, all the above-identified contractual legal duties were voluntarily assumed and self-imposed by S.A.S.

ANSWER:    As an answer to paragraph 227 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

228.    That, at all times material hereto, all the above-numerated legal duties were incorporated in defendant's General Conditions and Contract of Carriage published by SAS via http://www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf.

ANSWER:    As an answer to paragraph 228 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided

by the Court.

229.    That, at all times material hereto, all the above-numerated legal duties were incorporated in defendant's Tariff filed by defendant with pertinent governmental agencies.

ANSWER:    As an answer to paragraph 229 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

230.    That, at all times material hereto, said legal duty was published on defendant's home page titled as "General Condition and Contract of Carriage" http://http://www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf.

ANSWER:    As an answer to paragraph 230 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

231.    That said contract for international airfare transportation and carriage was formed and entered into at the place of plaintiff's domicile at Chicago, Illinois, USA.

ANSWER:    As an answer to paragraph 231 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

232.    That at all times material hereto the above-named defendant breached said contractual voluntarily assumed and self-imposed contractual duties by:

(a)    refusing to compensate the Plaintiff and other members of proposed class for

delay on departure of flight No. 943 on or about August 24, 2013 in contravention of Art.

15.1.1 of its Contract of Carriage;

ANSWER:    As an answer to paragraph 232(a) of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

(b)     failing to adequately inform the Plaintiff and other members of proposed class in regard to cause of such scheduling irregularities as well as subsequent changes of their travel itineraries; and

ANSWER:     As an answer to paragraph 232(b) of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

(c)     failing to tender its contractual performance of rendition of meaningful and suitable assistance of local lodging, food and pier dime expenses to the above-named plaintiff and other members of proposed Class while said passengers were estranged at Copenhagen International Airport for more than 5 hours due to delay on departure of defendant's flight No. 943.

ANSWER:     As an answer to paragraph 232(c) of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

233.     That by failing to tender it contractual performance of duties set forth by Art. 5, 6, 7, 9 and 14 of EU 261/2004 as incorporated by relevant articles of its General Conditions and Contract of Carriage, the above-named defendant perpetrated material breach of pertinent contractual covenants, which were incorporated into said contractual agreement for international airfare transportation of the above-named Plaintiff on August 24, 2014 from Copenhagen to Chicago, USA.

ANSWER:     As an answer to paragraph 233 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

234.     That this breach of self - imposed voluntary contractual duties by the above-named defendant on August 24, 2014 was a material breach of essential condition precedent imposed upon the above-named defendant by operation of parties contract of carriage in lieu of international airfare transportation.

ANSWER:    As an answer to paragraph 234 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

235.    That alternatively said breach of contractual duties by the above-named defendant was material breach of essential *ex contractu* condition subsequent imposed upon the above-named defendant by operation of said contract.

ANSWER:    As an answer to paragraph 235 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

236.    That, at all times material hereto, the above-named plaintiff and all other members of proposed Class duly performed all conditions and covenants required to be performed by said contract o carriage in lieu of international airfare transportation.

ANSWER:    As an answer to paragraph 236 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

237.    That as a direct and proximate cause of said material breach of contract perpetrated by the above-named defendant on August 24, 2014, the above-named Plaintiff and all members of proposed Class incurred actual, general, special, and consequential damages in the standardized sum of $200 or in the sum to be determined and proven at trial.

ANSWER:    As an answer to paragraph 237 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

238.    That pursuant to Wolens doctrine, as recently affirmed by Northwest, Inc. v. S. Binyomin Ginsberg (2014 US ___), the common law cause of action ex contractu against the above-named defendant is not preempted by the Airline Deregulation Act, (ADA), 49 USC § 41713 (2010)(Public Law No. 95-504). 65

---

[65] American Airlines, Inc. v. Wolens,115 S.Ct. 817, 513 U.S. 219, 130 L.Ed.2d 715, 63 USLW 4066 (U.S.Ill.,1995)(holding that Airline Deregulation Act did not preempt action against airline based on state contract law).

ANSWER:    As an answer to paragraph 238 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

239.    That pursuant to binding legal authority of the Narkiewicz-Laine doctrine, the common law cause of action for breach of contract is not preempted by the Montreal Convention.[66]

ANSWER:    As an answer to paragraph 239 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

## CLASS ACTION COUNT SEVEN:

### Cause of Action for Breach of Contract: Breach of Self – Imposed Voluntarily Assumed Contractual Duty to Compensate for Damages Caused by Delay or Cancellation of International Airfare

240.    That the above-named Plaintiffs are repeating, re-alleging, and adopting §§ 1-29 of preceding sections titled "Nature of this Civil Action"; §§ 30-49 of "Jurisdiction and Venue"; §§ 50-64 of "Parties"; §§ 65-90 of "Allegations Relevant to Individual and Class Claims"; §§ 91-110 of "Governing Law: The Warsaw Convention and the Montreal Convention" ; §§ 111-138 of "Class Action Allegations"; §§ 139-156 of Class Claims: Count One; §§ 158-168 of Class Claims: Count Two; §§ 169-186 of Class Claims: Count Three; §§ 187-198 of Class Action Count Four; §§ 199-223 of Class Action Count Five; §§ 224-239 of "Class Action: Count Six sections of this entire Complaint as set forth fully herein and incorporates them by reference:

ANSWER:    As an answer to paragraph 240 of the First Amended Class Action Complaint, repeats, reiterates and realleges each and every admission and denial made in response to the paragraphs identified therein with the same force and effect as if set forth herein at length.

---

[66] Narkiewicz-Laine v. Scandinavian Airlines Sys., 587 F. Supp. 2d 888, 890 (N.D. Ill. 2008)(holding that "claims may be brought under the Montreal Convention or they may be brought 'in contract or in tort or otherwise' but such claims are subject to an affirmative defense based on the conditions and limits of liability set out in the Montreal Convention.") (quoting Montreal Convention, art. 29); accord Cosgrove-Goodman v. UAL Corp., No. 10 CV 1908, 2010 WL 2197674, at *3 (N.D. Ill. June 2, 2010).

241.    That at all times material hereto the above-named defendant SAS voluntarily assumed contractual duty to compensate for damages caused by delay or cancellation of international airfare by incorporating Art 19 remedies into its Contract of International Carriage, the true and correct copy of which is appended herewith marked as Exhibit B, incorporated by reference and made a part of this entire First Amended Complaint at Law.

ANSWER:    As an answer to paragraph 241 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

242.    That at all times material hereto said contractual damages were incorporated into Art. 15.1. of its General Condition of Carriage, which states in pertinent part as follows:

15.1.1 Unless otherwise stated herein, Carriage hereunder is subject to the provisions relating to the liability established by the Convention, even where such Carriage is not international Carriage to which the Convention mandatory applies.[67]

ANSWER:    As an answer to paragraph 242 of the First Amended Class Action Complaint, admits that Article 15 of SAS's General Condition of Carriage addresses liability, and otherwise refers questions of law to the Court.

243.    That, at all times material hereto, all the above-numerated legal duties were incorporated in defendant's Contract of Carriage published by SAS via http://www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf .

ANSWER:    As an answer to paragraph 243 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

244.    That, at all times material hereto, all the above-numerated legal duties were incorporated in defendant's Tariff filed by defendant with pertinent governmental agencies.

ANSWER:    As an answer to paragraph 244 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

---

[67] http://www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf

245. That, at all times material hereto, said legal duty was published on defendant's home page titled as "General Condition of Carriage" http://http://www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf.

ANSWER: As an answer to paragraph 245 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

246. That since adoption by the USA of the Montreal Convention numerous flights operated by the above-named defendant SAS was delayed or cancelled.

ANSWER: As an answer to paragraph 246 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

247. That upon information and believe numerous U.S. passengers contacted the above-named defendant SAS requesting compensation for their damages caused by delay or cancellation of international airfare as mandated by Art. 19 of the Montreal Convention and as voluntarily assumed contractual duty pursuant to defendant's Contract of International Carriage.

ANSWER: As an answer to paragraph 247 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

248. That upon information and believe on numerous occasions the above- named defendant breached this self-assumed and self imposed contractual duty by responding to its aggrieved passengers grievances in the following response manner:

> "Dear ****:
>
> We offer our regrets for the inconvenience you experienced as a consequence of the delay of SAS Flight **** on **** from **** to ****. This was due to a technical malfunction.
> It is our intention to minimize the strain and consequences imposed on our passengers in such a situation, and we extend our regrets in the lapse in service. We can advise you that the EU compensation does not apply if the delay is caused by an extraordinary circumstance. Specifically, that the delay could not have been avoided, although all reasonable measures had

76

been taken. If you have incurred any direct expenses such as the telephone calls, meals, we kindly request you forward the receipts for consideration of reimbursement. They can be sent via email or fax. Our fax number is 201-896-3735. Again, we apologize for the lapse in service on this occasion and the inconvenience caused to you. We hope we shall have another opportunity of serving you again in the future and of meriting your full faith in our performance. In the interim, SAS remains at your service.

Kind regards,

Ellen Rosa
SAS Customer Care
301 Rt. 17 North, Suite 500"

ANSWER: As an answer to paragraph 248 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

249. That upon information and believe on numerous occasions the above- named defendant purposefully misrepresented to its arrived passengers the scope and applicability of "extraordinary circumstances" defense, thereby depriving numerous class of U.S. passengers of statutory and contractual damages as incorporated into the Tariff and par. 9.3 of SAS General Condition and Contract of Carriage, and as publicly posted by SAS on its webpage and as filed by SAS with pertinent the U.S. federal agencies.[68]

ANSWER: As an answer to paragraph 249 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

250. That, at all times material hereto, by forwarding to its aggrieved passengers the above-cited standardized response letter, and by intentionally misrepresenting to its numerous passengers and to U.S. general public the scope and applicability of "extraordinary circumstances defense" SAS breached and repudiated its own voluntarily assumed contractual definition of "extraordinary circumstances" defense as stated on page 4 of SAS General Condition and Contract of Carriage.

---

[68] http://www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf

ANSWER:     As an answer to paragraph 250 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

251.    That by forwarding to its aggrieved passengers the above-cited standardized response letter, while knowing that mechanical malfunction of airplane is not construed as "extraordinary circumstances" per its own contractual language expressed on page 4 of its General Conditions and Contract of Carriage, SAS breached its own self-imposed and voluntarily assumed contractual duty to compensate its passengers for damages caused by delay or cancellation of international airfare. Cf., SAS Customer Service letter with SAS General Conditions and Contract of Carriage, p. 4; and Jer2.com Limited, [2014] EWCA Civ. 791, Case No. Case No: B2/2013/3277/CCRTF (Royal Courts of Justice, London, England, 11 June 2014)(holding that technical problems, which may be unforeseeable, but are ultimately caused by an event inherent in the running of an aircraft, and cannot therefore be considered to be an extraordinary circumstance);[69]

ANSWER:     As an answer to paragraph 251 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

252.    That the at all times material hereto the above-named defendant knew that term "extraordinary circumstances" as evolved under the Montreal Convention jurisprudence is very limited and applies only in certain circumstances where the airline can prove the cancellation or delay was caused by political instability, meteorological conditions incompatible with the operation of the flight concerned, security risks, unexpected flight safety shortcomings and strikes that affect the operation of an operating aircraft." See, generally, Wallentin-Hermann, European Court of Justice, Case No C-549/07, Judgment of December 22, 2008, ¶22 (emphasis added); Nelson; [2014] ECJ C-581/10 (holding that "Extraordinary circumstances should be deemed to exist where the impact of an air traffic management decision in relation to a particular aircraft on a particular day gives rise to a long delay, an overnight delay, or the cancellation of one or more flights by that aircraft, even though all reasonable measures had been taken by the air carrier concerned to avoid the delays or cancellations."); Jet.2.com Limited v. Ronald Huzar, [2014] EWCA Civ. 791, Case No. Case No: B2/2013/3277/CCRTF (Royal Courts of Justice, London, England, 11 June 2014)(holding that technical problems, which may be unforeseeable,

---

[69] http://www.bailii.org/cgi-bin/markup.cgi?doc=/ew/cases/EWCA/Civ/2014/791.html&query=huzar+and+jet2&method=boolean

but are ultimately caused by an event inherent in the running of an aircraft, and cannot therefore be considered to be an extraordinary circumstance).[70]

      <u>ANSWER</u>:    As an answer to paragraph 252 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

      253.    That the legal term "extraordinary circumstances" do not include technical or mechanical problems except in the rare instances where the airline can prove those problems are due to hidden, inherent manufacturing defects or aircraft damage caused by sabotage. [71]

      <u>ANSWER</u>:    As an answer to paragraph 253 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

      allegations therein, if any, and otherwise refers all questions of law to be decided by the Court.

      254.    That at all times material hereto the above-identified standardized letters were send to numerous aggrieved passengers denying them of statutory and contractual remedies while knowing that in accordance with Article 19 of the Montreal Convention, the above-identified defendant is liable for damages caused by delay and or cancellation of international air carriage of passengers. [72]

---

[70] http://www.bailii.org/cgi-bin/markup.cgi?doc=/ew/cases/EWCA/Civ/2014/791.html&query=huzar+and+jet2&method=boolean

[71] <u>Wallentin-Hermann</u> at ¶26 (mechanical problems may constitute extraordinary circumstances only when "it was revealed by the manufacturer of the aircraft compromising the fleet of the air carrier concerned, or by competent authority, that those aircraft, although already in service, are affected by a hidden manufacturing defect which impinges on the flight safety" or where there was "damage to aircraft caused by acts of sabotage"; see also <u>Sturgeon v. Condor Flugdienst GmbH</u>, European Court of Justice, Case No. C-402/7, Judgment of November 19, 2009 (reiterating that technical problems are not extraordinary circumstances in context of "technical faults on the plane and illness among the crew").

[72] <u>Tsui Yuan Tseng</u>, 525 U.S. 155, 176 (1999)(holding that the United States is a party to the Montreal Convention, which governs the international air carriage of passengers, baggage, and cargo. The Convention provides an airline passenger's exclusive remedy; a passenger may not maintain "an action for personal injury damages under local law when her claim does not satisfy the conditions for liability under the Convention.")

ANSWER: As an answer to paragraph 254 of the First Amended Class Action Complaint, admits that the rights and liabilities of the parties are exclusively governed by the provisions of the Montreal Convention and otherwise refers all questions of law to be decided by the Court.

255. That, likewise the above-identified letters were send to numerous passengers knowing that the named defendant is responsible for damages caused by delay or cancellation of international airfare. as asserted in relevant portion of Art. 15.1. of its General Condition of Carriage, which states in pertinent part as follows:

> 15.1.1 Unless otherwise stated herein, Carriage hereunder is subject to the provisions relating to the liability established by the Convention, even where such Carriage is not international Carriage to which the Convention mandatory applies.[73]

ANSWER: As an answer to paragraph 255 of the First Amended Class Action Complaint, denies the allegations therein.

256. That, as a direct and proximate cause of misrepresenting to numerous aggrieved passengers the scope and applicability of "extraordinary circumstances" defense the above-named defendant subjected numerous class of U.S. airfare passengers to standardized damages in the sum of $200 per passenger, or in the sum to be determined at trial.

ANSWER: As an answer to paragraph 256 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

## VIII. INDIVIDUAL CLAIMS:

### INDIVIDUAL CLAIM COUNT ONE:

**Cause of Action for Damages Caused by Delay or Cancellation of International Airfare Pursuant to Article 19[74] of the Montreal Convention**

---

[73] http://www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf

[74] See, Article 19 of the Montreal Convention, holding that "The carrier is liable for damages occasioned by delay in the carriage by air of passengers, baggage or cargo. Nevertheless, the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures." Id.

257.     That the above-named Plaintiffs are repeating, re-alleging, and adopting §§ 1-29 of preceding sections titled "Nature of this Civil Action"; §§ 30-49 of "Jurisdiction and Venue"; §§ 50-64 of "Parties"; §§ 65-90 of "Allegations Relevant to Individual and Class Claims"; §§ 91-110 of "Governing Law: The Warsaw Convention and the Montreal Convention" ; §§ 111-138 of "Class Action Allegations"; §§ 139-156 of Class Claims: Count One; §§ 158-168 of Class Claims: Count Two; §§ 169-186 of Class Claims: Count Three; §§ 187-198 of Class Action Count Four; §§ 199-223 of Class Action Count Five; §§ 224-239 of "Class Action: Count Six; §§ 240-256 of Class Action Count Seven sections of this entire First Amended Complaint at Law as set forth fully herein and incorporates them by reference:

ANSWER:     As an answer to paragraph 257 of the First Amended Class Action

Complaint, repeats, reiterates and realleges each and every admission and denial made in

response to the paragraphs identified therein with the same force and effect as if set forth herein

at length.

258.     That on or about August 24, 2014 the flight No. 943 operated by SAS from Copenhagen to Chicago was delayed on departure for approximately 5.5 hours.

ANSWER:     As an answer to paragraph 258 of the First Amended Class Action

Complaint, admits that Flight 943 on August 4, 2014 experienced a delay in the originally

scheduled departure time.

259.     That, upon information and believe, delay of the above-referenced defendant's flight was not caused by extraordinary circumstances, which could have been avoided in due exercise of due diligence or another pertinent legal standard of care by the above-named defendants.

ANSWER:     As an answer to paragraph 259 of the First Amended Class Action

Complaint, denies the allegations therein and otherwise refers all questions of law to be decided

by the Court.

260.     That, upon information and believe, the above-named defendant did not pursue all meaningful actions required to avoid or mitigate impact of extraordinary circumstances. Cf., Nelson; [2014] ECJ C-581/10 (holding that "Extraordinary circumstances should be deemed to exist where the impact of an air traffic management decision in relation to a particular aircraft on a particular day gives rise to a long delay, an overnight delay, or the cancellation of one or more flights by that aircraft, even though all reasonable measures had been taken by the air carrier concerned to avoid the delays or cancellations."); Jet.2.com Limited, [2014] EWCA Civ. 791, Case No. Case No: B2/2013/3277/CCRTF (Royal Courts of Justice, London, England, 11 June

2014)(holding that technical problems, which may be unforeseeable, but are caused by an event inherent in the running of an aircraft, and cannot therefore be considered to be an extraordinary circumstance). [75]

ANSWER:   As an answer to paragraph 260 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

261.   That the legal term "extraordinary circumstances" as evolved under the Montreal Convention jurisprudence is very limited and applies only in certain circumstances where the airline can prove the cancellation or delay was caused by political instability, meteorological conditions incompatible with the operation of the flight concerned, security risks, unexpected flight safety shortcomings and strikes that affect the operation of an operating aircraft." Wallentin-Hermann, European Court of Justice, Case No C-549/07, Judgment of December 22, 2008.

ANSWER:   As an answer to paragraph 261 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

262.   That the legal term "extraordinary circumstances" do not include technical or mechanical problems except in the rare instances where the airline can prove those problems are due to hidden, inherent manufacturing defects or aircraft damage caused by sabotage. Id. at ¶26 (mechanical problems may constitute extraordinary circumstances only when "it was revealed by the manufacturer of the aircraft compromising the fleet of the air carrier concerned, or by competent authority, that those aircraft, although already in service, are affected by a hidden manufacturing defect which impinges on the flight safety" or where there was "damage to aircraft caused by acts of sabotage); see also Sturgeon, European Court of Justice, Case No. C-402/7, Judgment of June 11, 2014 (reiterating that technical problems are not extraordinary circumstances in context of "technical faults on the plane and illness among the crew").

ANSWER:   As an answer to paragraph 262 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

---

[75] http://www.bailii.org/cgi-bin/markup.cgi?doc=/ew/cases/EWCA/Civ/2014/791.html&query=huzar+and+jet2&method=boolean

263.    That in accordance with Article 19 of the Montreal Convention, the above-identified defendant is liable for damages caused by delay and or cancellation of international air carriage of passengers.[76]

ANSWER:    As an answer to paragraph 263 of the First Amended Class Action Complaint, admits that the rights and liabilities of the parties are exclusively governed by the provisions of the Montreal Convention and otherwise refers all questions of law to be decided by the Court.

264.    That, likewise the above-named defendant is responsible for damages caused by delay or cancellation of international airfare. as asserted in relevant portion of Art. 15.1. of its General Condition of Carriage, which states in pertinent part as follows:

> 15.1.1 Unless otherwise stated herein, Carriage hereunder is subject to the provisions relating to the liability established by the Convention, even where such Carriage is not international Carriage to which the Convention mandatory applies.[77]

ANSWER:    As an answer to paragraph 264 of the First Amended Class Action Complaint, denies the allegations therein.

265.    That, as a direct and proximate cause of delayed departure of flight No.943 operated by SAS from Copenhagen to Chicago was delayed on departure for approximately 5.5 hours, the above-named plaintiff was subjected to actual, general, special, incidental and consequential pecuniary damages, including but not limited to travel cancellation expenses, loss of benefit of his travel bargain, inconvenience, physical discomfort, pain, exhaustion, loss of time, frustration of purpose to travel, anxiety, frustration, uncertainty, loss of use of money and other cognizable legal damages, losses and injuries.

ANSWER:    As an answer to paragraph 265 of the First Amended Class Action Complaint, denies the allegations therein.

---

[76] Tsui Yuan Tseng, 525 U.S. at 155 (holding that the United States is a party to the Montreal Convention, which governs the international air carriage of passengers, baggage, and cargo. The Convention provides an airline passenger's exclusive remedy; a passenger may not maintain "an action for personal injury damages under local law when her claim does not satisfy the conditions for liability under the Convention."

[77] http://www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf

266.    That under the Article 19 of the Montreal Convention, and par 15.4 of its General Condition of Carriage, the above-identified common carrier S.A.S. is liable for damages caused by delay and or cancellation of international airfare and international carriage of airline passengers.

ANSWER:    As an answer to paragraph 266 of the First Amended Class Action Complaint, denies the allegations therein.

267.    That this liability for damages caused by delay and or cancellation of international airfare pursuant to Articles 19 and 22(1) of the Montreal Convention is limited by the of 4560 SDR.

ANSWER:    As an answer to paragraph 267 of the First Amended Class Action Complaint, admits that the rights and liabilities of the parties are exclusively governed by the provisions of the Montreal Convention and otherwise refers all questions of law to be decided by the Court.

268.    That, while being estranged at Copenhagen International Airport, the above-named Plaintiff sought to obtain travel-related assistance from the above-named defendant, but employees of said defendant was recklessly indifferent to plaintiff's travel related and health-related needs.

ANSWER:    As an answer to paragraph 268 of the First Amended Class Action Complaint, denies the allegations therein.

269.    That, at all times material hereto, defendant's employees stationed at Copenhagen International Airport did not offer any meaningful assistance to the above- named plaintiff while they were estranged at Copenhagen International Airport for approximately six (6) hours.

ANSWER:    As an answer to paragraph 269 of the First Amended Class Action Complaint, denies the allegations therein.

270.    That, while being subjected to the above-identified delays, the above- named Plaintiff were subjected to psychical inconvenience, exhaustion and travel stress of additional travel time in excess of almost 5 hours.

ANSWER:    As an answer to paragraph 270 of the First Amended Class Action Complaint, denies the allegations therein.

84

271.     That as a direct and proximate cause of delay and or cancellation of international airfare for more than 5 hours on August 24, 2014, the above-named Plaintiff suffered physical discomfort resulting in physical exhaustion, fatigue and arrhythmia.

ANSWER:     As an answer to paragraph 271 of the First Amended Class Action Complaint, denies the allegations therein.

272.     That subsequent to Plaintiff's late arrival to Chicago, her daily living activities were severely limited for several days due to continuing arrhythmia, vomiting, diarrhea and alleviated blood pressure.

ANSWER:     As an answer to paragraph 272 of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

273.     That, as a direct and proximate cause of delayed departure of international air flight No. 943 operated by SAS from Copenhagen to Chicago, the above-named Plaintiffs were subjected to additional lodging and per diem expenses, spoliation of their memorable trip, inconvenience, financial injury, physical discomfort, loss of time, loss of use of their monies, and was subjected to various actual, general, special, incidental and consequential damages in the sum to be ascertained at trial.

ANSWER:     As an answer to paragraph 273 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

274.     That, upon plaintiff's late arrival to Chicago she contacted the above- named defendant with her pre – suit notice of claim and settlement demand for compensation in accordance with Article 22(6) of Montreal Convention and SAS General Conditions and Contract of Carriage for damages caused by delay and or cancellation of international airfare flight SK 943.

ANSWER:     As an answer to paragraph 274 of the First Amended Class Action Complaint, lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

275.     That, said notice of claim was rejected by the above-named defendant via the following e-mail:

ERosa@sasair.com

TO me

Dear Ms. Kogan:

We offer our regrets for the inconvenience you experienced as a consequence of the delay of SAS Flight 943 on August 24 from Copenhagen to Chicago. This was due to a technical malfunction.

It is our intention to minimize the strain and consequences imposed on our passengers in such a situation, and we extend our regrets in the lapse in service.

We can advise you that the EU compensation does not apply if the delay is caused by an extraordinary circumstance. Specifically, that the delay could not have been avoided, although all reasonable measures had been taken. If you have incurred any direct expenses such as the telephone calls, meals, we kindly request you forward the receipts for consideration of reimbursement. They can be sent via email or fax. Our fax number is 201-896-3735.

Again, we apologize for the lapse in service on this occasion and the inconvenience caused to you. We hope we shall have another opportunity of serving you again in the future and of meriting your full faith in our performance. In the interim, SAS remains at your service.

Kind regards,

Ellen Rosa
SAS Customer Care
301 Rt. 17 North, Suite 500
Rutherford, NJ 07070"

ANSWER:  As an answer to paragraph 275 of the First Amended Class Action Complaint, denies the allegations therein.

276.  That due to failure to answer pre-suit settlement claims on the part of all the above-named defendant, the above-named Plaintiff is entitle to reasonable attorney's fees pursuant to the Article 22(6) of the Montreal Convention.

ANSWER:  As an answer to paragraph 276 of the First Amended Class Action

Complaint, denies the allegations therein.

277.    That because said plaintiff's pre- suit notice of claim was rejected by the above-named defendant, and due to defendant failure to answer pre-suit settlement demand, the above-named Plaintiff is entitled to reasonable attorneys fees pursuant to the Article 22(6) of the Montreal Convention.

ANSWER:    As an answer to paragraph 277 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

278.    That due to SAS failure to answer pre-suit settlement claims, the above- named Plaintiff is entitled to reasonable attorneys fees pursuant to Article 22(6) of Montreal Convention,[78]  incorporating so-called "settlement inducement provision" contained in Article 22(4) of Hague Protocol amendments. Id.

ANSWER:    As an answer to paragraph 278 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

279.    That Hague Protocol as ratified by the U.S. Senate on July 31, 2002 is supreme law of this land, thereby establishing procedure for award of attorney's fees in the matter sub judice. [79]

ANSWER:    As an answer to paragraph 279 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

---

[78] Montreal Convention preserved the so-called "settlement inducement provision" contained in Article 22(4) of the Hague Protocol amendments.  To that extent settlement inducement provision" contained in Article 22(4) of the Hague Protocol amendments was codified in the Article 22(6) of the Montreal Convention, which states as follows:
"The limits prescribed in Article 21 and in this Article shall not prevent the court from awarding, in accordance with its own law, in addition, the whole or part of the court costs and of the other expenses of the litigation incurred by the plaintiff, including interest.  The foregoing provision shall not apply if the amount of the damages awarded, excluding court costs and other expenses of litigation, does not exceed the sum which the carrier has offered in writing to the plaintiff within a period of six months from the date of the occurrence causing the damage, or before the commencement of the action, if that is later."
[79] http://www.gpo.gov/fdsys/pkg/CDOC-107tdoc14/html/CDOC-107tdoc14.htm

## INDIVIDUAL CLAIM COUNT TWO

### Cause of Action for Breach of Contract: Breach of Voluntary Self-Imposed Contractual Duty to Compensate for Delay as Mandated by Article 5, 6 and 7 of EU Directive No. 261/2004

280.     That the above-named Plaintiffs are repeating, re-alleging, and adopting §§ 1-29 of preceding sections titled "Nature of this Civil Action"; §§ 30-49 of "Jurisdiction and Venue"; §§ 50-64 of "Parties"; §§ 65-90 of "Allegations Relevant to Individual and Class Claims"; §§ 91-110 of "Governing Law: The Warsaw Convention and the Montreal Convention" ; §§ 111-138 of "Class Action Allegations"; §§ 139-156 of Class Claims: Count One; §§ 158-168 of Class Claims: Count Two; §§ 169-186 of Class Claims: Count Three; §§ 187-198 of Class Action Count Four; §§ 199-223 of Class Action Count Five; §§ 224-239 of "Class Action: Count Six; §§ 240-256 of Class Action Count Seven; §§ 257-279 of Individual Claim: Count One sections of this entire First Amended Complaint at Law as set forth fully herein and incorporates them by reference:

ANSWER:     As an answer to paragraph 280 of the First Amended Class Action Complaint, repeats, reiterates and realleges each and every admission and denial made in response to the paragraphs identified therein with the same force and effect as if set forth herein at length.

281.     That, at all time material hereto, the European Union Regulation No. 261 was adopted by the European Parliament and the Council of the European Union on February 11, 2004.[80]

ANSWER:     As an answer to paragraph 281 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

282.     That the purpose of EU Regulation 261/ 2004 is, in part, to provide standardized compensation - separate from individualized compensation which may be provided by other laws upon individualized proof - for the "serious trouble and inconvenience" inevitably suffered by all passengers who experience flight cancellations or lengthy delays, particularly on international carrier routes.

---

[80] Regulation (EC) No 261/2004 of the European Parliament and of the Council of 11 February 2004 establishing common rules on compensation and assistance to passengers in the event of denied boarding and of cancellation or long delay of flights (OJ 2004 L 46, p. 1).

ANSWER:    As an answer to paragraph 282 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

283.    That pursuant to Article 3, EU Regulation 261 applies to passengers with confirmed reservations on (a) flights departing from an airport located in the territory of a member state of the European Union, and (b) flights departing from a country outside theEuropean Union to an airport in the territory of a member state of the European Union, if the operating carrier of the flight concerned is an air carrier with an operating license granted by a member state of the European Union.

ANSWER:    As an answer to paragraph 283 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

284.    That pursuant to Article 5, confirmed passengers on flights covered by Article 3, in case of cancellation of the flight "have the right to compensation by the operating air carrier in accordance with Article 7 of the Regulation unless: (a) they are informed of the cancellation at least two weeks before the scheduled time of departure; or (b) they are informed of the cancellation between two weeks and seven days before the scheduled time of departure and are offered re-routing, allowing them to depart no more than two hours before the scheduled time of departure and to reach their final destination less than four hours after the scheduled time of arrival; or (c) they are informed of the cancellation less than seven days before the scheduled time of departure and are offered re-routing, allowing them to depart no more than one hour before the scheduled time of departure and to reach their final destination less than two hours after the scheduled time of arrival."

ANSWER:    As an answer to paragraph 284 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

285.    That also under Article 3, an "operating air carrier shall not be obliged to pay compensation in accordance with Article 7, if it can prove that the cancellation is caused by extraordinary circumstances which could not have been avoided even if all reasonable measures had been taken."

ANSWER:    As an answer to paragraph 285 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided

by the Court.

286.     That pursuant to Article 7, passengers eligible under Articles 3 and 5 on flights that were cancelled, "shall receive compensation amounting to: (a) EUR 250 for all flights of 1500 kilometers or less; (b) EUR 400 for all intra-Community flights of more than 1500 kilometers, and for all other flights between 1500 and 3500 kilometers; (c) EUR 600 for all flights not falling under (a) or (b)."

ANSWER:     As an answer to paragraph 286 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

287.     That Article 7 also provides that the operating carrier may reduce the compensation amounts by 50% when "passengers are offered re-routing to their final destination on an alternative flight, the arrival time of which does not exceed the scheduled arrival time of the flight originally booked (a) by two hours, in respect of all flights of 1500 kilometers or less; or (b) by three hours, in respect of all intra-Community flights of more than 1500 kilometers and for all other flights between 1500 and 3500 kilometers; or (c) by four hours, in respect of all flights not falling under (a) or (b)."

ANSWER:     As an answer to paragraph 287 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

288.     That on June 11, 2014, in Sturgeon v. Condor Flugdienst GmbH, the European Court of Justice reaffirmed that "Article 5, 6 and 7 of Regulation No 261/2004 must be interpreted as meaning that passengers whose flights are delayed may be treated, for the purposes of the application of the right to compensation, as passengers whose flights are cancelled and may thus rely on the right to compensation laid down in Article 7 of the regulation where they suffer, on account of a flight delay, a loss of time equal to or in excess of three hours."

ANSWER:     As an answer to paragraph 288 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

289.     That in addition, the European Court of Justice ruled that "Article 5(3) of Regulation No 261/2004 must be interpreted as meaning that a technical problem in an aircraft which leads to the cancellation or delay of a flight is not covered by the concept of "extraordinary circumstances" within the meaning of that provision, unless that problem stems

from events which, by their nature or origin, are not inherent in the normal exercise of the activity of the air carrier concerned and are beyond its actual control."

ANSWER:    As an answer to paragraph 290 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

290.    That the remedies available pursuant to EU 261/2004 are not preempted by the Montreal Convention [81]  See, Joan Cuadrench Moré v Koninklijke Luchtvaart Maatschappij NV, ECJ Case C-139/11 (22 November 2012)(holding that compensation measure laid down by Regulation No 261/2004 falls outside of the scope of Montreal Convention, while remaining additional to the system for damages laid down by the Montreal Convention because EU law establishes an independent system to redress, in a standardized and immediate manner, the damage caused by the in convenience to which flight delays and cancellations give rise, which operates at an earlier stage than the Warsaw and Montreal Conventions).[82]

ANSWER:    As an answer to paragraph 290 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

291.    That the right to compensation under Article 7 of EU Regulation 261 is separate from any right to compensation or damages, based upon individualized proof, any passenger may have premised on a separate cause of action under separate law.

ANSWER:    As an answer to paragraph 291 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

292.    That, at all times material hereto, the above-named defendant failed to tender to the above-named plaintiffs compensation required to be tendered by Articles 7 of the EU Directive 261/2004 despite the fact that such compensation for delay in performance of "community carrier" is mandated pursuant to Sturgeon v. Condor Flugdienst GmbH.

ANSWER:    As an answer to paragraph 292 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided

---

[81] http://curia.europa.eu/jcms/upload/docs/application/pdf/2012-05/cp120063en.pdf
[82] http://curia.europa.eu/jcms/upload/docs/application/pdf/2012-11/cp120150en.pdf

by the Court.

293.    That upon information and believe said duty to compensate for delay or cancellation of international airfare pursuant to Articles 6 and 7 of EU 261 is incorporated or should have been incorporated into the Tariff and Art. 15.4 of its Contract of General Condition of Carriage as publicly posted by the above-named defendant on its webpage and as filed by the above-named defendant with pertinent U.S. federal agencies.[83]

ANSWER:    As an answer to paragraph 293 of the First Amended Class Action

Complaint, denies the allegations therein and otherwise refers all questions of law to be decided

by the Court.

294.    That such contractual term constitutes voluntary undertaking by the above-named defendant.

ANSWER:    As an answer to paragraph 294 of the First Amended Class Action

Complaint, denies the allegations therein and otherwise refers all questions of law to be decided

by the Court.

295.    That at all times material hereto the above-named defendant perpetrated material breach of Art. 15.4 of its General Conditions of Carriage and further breached entire contract for international airfare by failing to tender to the Plaintiff the compensation in the sum of 600 Euro.

ANSWER:    As an answer to paragraph 295 of the First Amended Class Action

Complaint, denies the allegations therein and otherwise refers all questions of law to be decided

by the Court.

296.    That said breach of self-imposed obligation incorporated in Art. 15.4 of defendant's General Condition of Carriage was a material breach of contractual condition subsequent, which was imposed upon the above-named Parties by terms of their entire contractual undertaking.[84]

ANSWER:    As an answer to paragraph 296 of the First Amended Class Action

---

[83] www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf

[84] Moré v Koninklijke Luchtvaart Maatschappij NV, ECJ Case C-139/11 (22 November 2012)(holding that the time-limits for bringing actions for compensation for flight cancellation under European Union law are determined in accordance with the rules of each Member State on the limitation of actions).

Complaint, denies the allegations therein and otherwise refers all questions of law to be decided

by the Court.

297. That as a direct and proximate cause of the above-identified failure of defendant to compensate the above-named Plaintiff for damages caused by delay on departure of its flight No. 943 on August 24, 2014, the above-named Plaintiff incurred pecuniary damages in the aggregated sum of 600 euros.

ANSWER:    As an answer to paragraph 297 of the First Amended Class Action

Complaint, denies the allegations therein and otherwise refers all questions of law to be decided

by the Court.

## INDIVIDUAL CLAIM COUNT THREE

### Cause of Action: Breach of Self-Imposed Voluntary Contractual "Duty of Inform" as Mandated by Article 14 of EU Directive No. 261/2004

298. That the above-named Plaintiffs are repeating, re-alleging, and adopting §§ 1-29 of preceding sections titled "Nature of this Civil Action"; §§ 30-49 of "Jurisdiction and Venue"; §§ 50-64 of "Parties"; §§ 65-90 of "Allegations Relevant to Individual and Class Claims"; §§ 91-110 of "Governing Law: The Warsaw Convention and the Montreal Convention" ; §§ 111-138 of "Class Action Allegations"; §§ 139-156 of Class Claims: Count One; §§ 158-168 of Class Claims: Count Two; §§ 169-186 of Class Claims: Count Three; §§ 187-198 of Class Action Count Four; §§ 199-223 of Class Action Count Five; §§ 224-239 of "Class Action: Count Six; §§ 240-256 of Class Action Count Seven; §§ 257-279 of Individual Claim: Count One; §§ 280-297 of Individual Claim: Count Two sections of this entire First Amended Complaint- at-Law as set forth fully herein and incorporates them by reference:

ANSWER:    As an answer to paragraph 298 of the First Amended Class Action

Complaint, repeats, reiterates and realleges each and every admission and denial made in

response to the paragraphs identified therein with the same force and effect as if set forth herein

at length.

299. That at all times material hereto the above-named defendant owed to the above-named Plaintiff the "duty to inform " as promulgated by Art. 14 of the Regulation of European Union No. 261/2004.

ANSWER:    As an answer to paragraph 299 of the First Amended Class Action

Complaint, denies the allegations therein and otherwise refers all questions of law to be decided

by the Court.

300.    That, at all times material hereto, Art. 14 of EU 261/2004 included the following language:

> "Article 14 Obligation to inform passengers of their rights
> 3.    The operating air carrier shall ensure that at check-in a clearly legible notice containing the following text is displayed in a manner clearly visible to passengers:
> 'If you are denied boarding or if your flight is cancelled or delayed for at least two
>
> hours, ask at the check-in counter or boarding gate for the text stating your rights, particularly with regard to compensation and assistance'.
>
> 4.    An operating air carrier denying boarding or canceling a flight shall provide each passenger affected with a written notice setting out the rules for compensation and assistance in line with this Regulation. It shall also provide each passenger affected by a delay of at least two hours with an equivalent notice. The contact details of the national designated body referred to in Article 16 shall also be given to the passenger in written form.
>
> 3. In respect of blind and visually impaired persons, the provisions of this Article shall be applied using appropriate alternative means." [85]

ANSWER:    As an answer to paragraph 300 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

301.    That at all times material hereto the above-named Defendant breached said duty by failing to adequately and meaningfully inform the above-named Plaintiff of particulars of delays and or cancellation of her flight and of all remedies available to her.

ANSWER:    As an answer to paragraph 301 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

---

[85] Official Text of the Regulation of European Union 261/2004 entered into force on 17 February 2005  at http://eurlex.europa.eu/ LexUriServ/LexUriServ.do?uri =OJ:L:2004: 046:0001:0007:EN:PDF

302.    That upon information and believe said "duty to inform" as promulgated and mandated by Article 14 of EU 261 was incorporated into the Tariff and par. 9.3 of defendant's General Condition and Contract of Carriage as publicly posted by the above-named defendant on its webpage and as filed by the above-named defendant with pertinent U.S. federal agencies.[86]

ANSWER:    As an answer to paragraph 302 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

303.    That the above-identified reckless indifference and withholding of "duty to inform" on the part of S.A.S. constituted breach of self-imposed contractual obligation as evidenced by defendant's filed Tariff and Contract of Carriage.[87]

ANSWER:    As an answer to paragraph 303 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

304.    That such contractual term constitutes voluntary undertaking by the above-named defendant.

ANSWER:    As an answer to paragraph 304 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

305.    That such voluntarily assumed contractual "duty to inform" is a material contractual term and contractual covenant.

ANSWER:    As an answer to paragraph 305 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

306.    That such voluntarily assumed "duty of care" is a condition subsequent covenant of entire contractual undertaking voluntarily assumed by the above-named defendant.

---

[86] http://www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf
[87] EU Directive 261/2004 is applicable to S.A.S. because of its domiciliary status at the country member of European Union.

ANSWER: As an answer to paragraph 306 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

307. That by withholding of performance of voluntarily assumed contractual "duty to inform", the above-named defendant perpetrated material breach of parties' contract of international airfare carriage.

ANSWER: As an answer to paragraph 307 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

308. That, at all times material hereto, the above-named Defendant breached said "duty to inform" by failing to adequately and meaningfully inform the above-named Plaintiff of particulars of delays and or cancellation of their flight and of all remedies available to them.

ANSWER: As an answer to paragraph 308 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

309. That, as a direct and proximate cause of the above-identified failure of the above-named defendant to tender its contractual performance due on material contractual term of "duty to inform," the above-named Plaintiff incurred actual, general, special, incidental and consequential damages in the sum to be ascertained and proven at trial.

ANSWER: As an answer to paragraph 309 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

## INDIVIDUAL CLAIM COUNT FOUR

### Cause of Action for Breach of Contract: Breach of Voluntary Self-Imposed Contractual Duty of Care as Mandated by Article 9 of EU Directive 261/2004

310. That the above-named Plaintiffs are repeating, re-alleging, and adopting §§ 1-29 of preceding sections titled "Nature of this Civil Action"; §§ 30-49 of "Jurisdiction and Venue"; §§ 50-64 of "Parties"; §§ 65-90 of "Allegations Relevant to Individual and Class Claims"; §§ 91-110 of "Governing Law: The Warsaw Convention and the Montreal Convention" ; §§ 111-138 of

"Class Action Allegations"; §§ 139-156 of Class Claims: Count One; §§ 158-168 of Class Claims: Count Two; §§ 169-186 of Class Claims: Count Three; §§ 187-198 of Class Action Count Four; §§ 199-223 of Class Action Count Five; §§ 224-239 of "Class Action: Count Six; §§ 240-256 of Class Action Count Seven; §§ 257-279 of Individual Claim: Count One; §§ 280-297 of Individual Claim: Count Two; §§ 298-309 of Individual Claim: Count Three sections of this entire Complaint as set forth fully herein and incorporates them by reference:

ANSWER: As an answer to paragraph 310 of the First Amended Class Action Complaint, repeats, reiterates and realleges each and every admission and denial made in response to the paragraphs identified therein with the same force and effect as if set forth herein at length.

311. That Article 9 of said Directive establishes the right of estranged passengers to receive certain care from airline at airline expense such as local lodging, food coupons, telecommunication services and etc.

ANSWER: As an answer to paragraph 311 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

312. That despite clear obligation to provide the above-named plaintiff with food, local shelter and other assistance as mandated by Article 9 of EU 261/2004, at all times material hereto the above-named defendant willfully breached said obligation of care and refused to render any aid required to be rendered under Article 9 of EU 261/2004.

ANSWER: As an answer to paragraph 312 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

313. That, Art. 9 of European Union Regulation 261/2004 states at following:

"Article 9: Right to care
1. Where reference is made to this Article, passengers shall be offered free of charge: (a) meals and refreshments in a reasonable relation to the waiting time; (b) hotel accommodation in cases— where a stay of one or more nights becomes necessary, or — where a stay additional to that intended by the passenger becomes necessary; (c) transport between the airport and place of accommodation (hotel or other).

2. In addition, passengers shall be offered free of charge two telephone calls, telex or ax messages, or e-mails.

3. In applying this Article, the operating air carrier shall pay particular attention to the needs of persons with reduced mobility and any persons accompanying them, as well as to the needs of unaccompanied children."[88]

ANSWER:     As an answer to paragraph 313 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

314.     That upon information and believe, compliance of Scandinavia Airlines with EU 261/2004 is a condition precedent of holding valid license issued by pertinent European air-transportation authorities.

ANSWER:     As an answer to paragraph 314 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

315.     That likewise the above-named defendant is obligated to render "duty of care" pursuant to recently pronounced controlling legal authorities.[89]

ANSWER:     As an answer to paragraph 315 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

316.     That at that times material hereto the above-named plaintiffs were not rendered any care required by the Article 9 of the EU 261/2004, which is applicable to defendant due to its domicile within European Community.

ANSWER:     As an answer to paragraph 316 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

---

[88] Official Text of the Regulation of European Union 261/2004 entered into force on 17 February 2005 at http://eur lex.europa.eu/LexUriServ/LexUriServ.do?uri=OJ:L:2004:046:0001:0007:EN:PDF

[89] http://curia.europa.eu/jcms/upload/docs/application/pdf/2012-03/cp120032en.pdf

317.    That despite clear legal obligation to provide the above-named plaintiff with food, water, refreshments, telecommunication services and local shelter and other assistance as mandated by Article 9 of EU 261/2004, at all times material hereto the above-named defendant willfully breached said obligation of care and refused to render any meaningful aid required to be rendered under Article 9 of EU 261/2004.

ANSWER:    As an answer to paragraph 317 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

318.    That recently the "duty of care" toward its passengers on the part of the above-named defendant was reaffirmed in the case of Denise McDonagh v Ryanair Ltd.,90 which is now controlling legal precedent within European Community.[91]

ANSWER:    As an answer to paragraph 318 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

319.    That said "duty of care" as promulgated and mandated by Article 14 of EU 261 was incorporated into the Tariff and par. 9.3 of defendant's General Condition and Contract of Carriage as publicly posted by the above-named defendant on its webpage and as filed by the above-named defendant with pertinent the U.S. federal agencies.[92]

---

90 Htpp://eur-lex.europa.eu/LexUriServ/LexUriServ.do?uri=CELEX:62011CJ0012:EN:HTML

[91] See, Denise McDonagh, case C -11/12 (holding that Article 5 of Regulation (EC) No 261/2004 of the European Parliament and of the Council of 11 February 2004 establishing common rules on compensation and assistance to passengers in the event of denied boarding and of cancellation or long delay of flights, and repealing Regulation (EEC) No 295/91, must be interpreted as meaning that circumstances such as the closure of part of European airspace as a result of the eruption of the Eyjafjallajökull volcano constitute 'extraordinary circumstances' within the meaning of that regulation which do not release air carriers from their obligation laid down in Articles 5(1)(b) and 9 of the regulation to provide care);(also holding that Articles 5(1)(b) and 9 of Regulation No 261/2004 must be interpreted as meaning that, in the event of cancellation of a flight due to 'extraordinary circumstances' of a duration such as that in the main proceedings, the obligation to provide care to air passengers laid down in those provisions must be complied with, and the validity of those provisions is not affected);(however, an air passenger may only obtain, by way of compensation for the failure of the air carrier to comply with its obligation referred to in Articles 5(1)(b) and 9 of Regulation No 261/2004 to provide care, reimbursement of the amounts which, in the light of the specific circumstances of each case, proved necessary, appropriate and reasonable to make up for the shortcomings of the air carrier in the provision of care to that passenger, a matter which is for the national court to assess).

[92] http://www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf

ANSWER:    As an answer to paragraph 319 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

320.    That at all times material hereto defendant did not provided the above- named Plaintiff with any meaningful care required to be provided by par 9.3 of its Contract of International Carriage.

ANSWER:    As an answer to paragraph 320 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

321.    That at all times material hereto defendant's employees stationed at Copenhagen International Airport were non-responsive and visibly indifferent to a travel- related needs of this passenger.

ANSWER:    As an answer to paragraph 321 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

322.    That such reckless indifference and withholding of "right to care" on the part of the above-named defendant constituted breach of statutory "duty of care" imposed by Art. 9 of the EU 261. [93]

ANSWER:    As an answer to paragraph 322 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

323.    That such reckless indifference and withholding of "right to care" on the part of S.A.S. also constituted breach of self-imposed contractual obligation as evidenced by Art. 9.194. and Art 9.3. of defendant's filed Tariff and General Condition of Carriage.[95]

---

[93] The European Union Directive No. 261/2004 is applicable to S.A.S. because of its domiciliary status at the Kingdom of Sweden, which is a country-member of the European Community, which is subsequent to the Treaty of Rome of 1957 as amended by the Treaty of Lisbon of 2009 presently known as the European Union.
[94] http://www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf

ANSWER:    As an answer to paragraph 323 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

324.    That such reckless indifference was manifested in the following:

(a)    Plaintiff was mislead by SAS as to remedies available and was not offered any pecuniary compensation due under Article 5, 7 and 9 of the EU Directive No. 261/2004 as incorporated by SAS Condition of International Carriage; and

ANSWER:    As an answer to paragraph 324(a) of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

(b)    Plaintiff was not offered meaningful comparable re-routing options or compensation due to him pursuant to Article 7(1)(c) of EU 261/2004 in the sum of €600 per passenger due under terms of EU Directive 261/2004 as incorporated by SAS Condition of International Carriage; and

ANSWER:    As an answer to paragraph 324(b) of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

(c)    SAS did not offer any food, water, meals and refreshments in violation "duty to care" set forth by Article 9 of EU Directive 261/2004 as incorporated by SAS Condition of International Carriage; and

ANSWER:    As an answer to paragraph 324(c) of the First Amended Class Action

---

[95] Conditions of Carriage as published on website of S.A.S. pursuant to the art. 205 sec. 3 of the Act of 3 July 2002 Aviation Law.(Journal of Laws of 2002, No. 130, item 1112) is outdated and appears to be in conflict with EU Directive 261/2004.

Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

(d)      SAS did not provided any telecommunication services in violation "duty to care" set forth by Article 9 of EU Directive 261/2004 as incorporated by SAS

Condition of International Carriage.

ANSWER:      As an answer to paragraph 324(d) of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

325.    That at all times material hereto said "duty of care" as promulgated and mandated by Article 9 of EU 261 was incorporated into the Tariff and Condition and Art. 10.2 of defendant's General Condition of Carriage as publicly posted by the above- named defendant on its webpage and as filed by the above-named defendant with pertinent U.S. federal agencies.[96]

ANSWER:      As an answer to paragraph 325 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

326.    That the above-identified reckless indifference and withholding of "duty of care" on the part of S.A.S. Airline constituted breach of self-imposed contractual obligation as evidenced by defendant's filed Tariff and Art. 10.2 of its Contract of Carriage.[97]

ANSWER:      As an answer to paragraph 326 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

327.    That such contractual term constitutes voluntary undertaking by the  above-named defendant.

ANSWER:      As an answer to paragraph 327 of the First Amended Class Action

---

[96] ht http://www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf
tp://www.lot.com/us/en/conditions-of-carriage
[97] EU Directive 261/2004 is applicable to LOT Polish Airlines pursuant to the art. 205 sec. 2a of the Act of 3 July 2002 Aviation Law (Journal of Laws 02.130.1112).

Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

328.     That such voluntarily assumed contractual "duty of care" is a material contractual term and covenant.

ANSWER:     As an answer to paragraph 328 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

329.     That such voluntarily assumed "duty of care" is a condition subsequent covenant of entire contractual undertaking voluntarily assumed by the above-named defendant.

ANSWER:     As an answer to paragraph 329 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

330.     That by withholding of performance of voluntarily assumed contractual "duty of care", the above-named defendant perpetrated material breach of its contract of international airfare carriage.

ANSWER:     As an answer to paragraph 330 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

331.     That as direct and proximate cause of said breach of voluntarily assumed duty of care and subsequent material breach of contract of international airfare carriage perpetrated by the above-named defendant, the above-named Plaintiff was forced to purchase local meals, food, refreshment and water for their needs at her own expense, thereby incurring actual, general, special, incidental and consequential damages in the sum to be proven at trial.

ANSWER:     As an answer to paragraph 331 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

## INDIVIDUAL CLAIM COUNT FIVE

### Cause of Action for Breach of International Contract of Carriage: Breach Voluntarily Assumed of Self-Imposed Contractual Duties

332.    That the above-named Plaintiffs are repeating, re-alleging, and adopting §§ 1-29 of preceding sections titled "Nature of this Civil Action"; §§ 30-49 of "Jurisdiction and Venue"; §§ 50-64 of "Parties"; §§ 65-90 of "Allegations Relevant to Individual and Class Claims"; §§ 91-110 of "Governing Law: The Warsaw Convention and the Montreal Convention" ; §§ 111-138 of "Class Action Allegations"; §§ 139-156 of Class Claims: Count One; §§ 158-168 of Class Claims: Count Two; §§ 169-186 of Class Claims: Count Three; §§ 187-198 of Class Action Count Four; §§ 199-223 of Class Action Count Five; §§ 224-239 of "Class Action: Count Six; §§ 240-256 of Class Action Count Seven; §§ 257-279 of Individual Claim: Count One; §§ 280-297 of Individual Claim: Count Two; §§ 298-309 of Individual Claim: Count Three; §§ 310-331 of Individual Claim: Count Four of this entire First Amended Complaint at Law as set forth fully herein and incorporates them by reference:

ANSWER:    As an answer to paragraph 332 of the First Amended Class Action Complaint, repeats, reiterates and realleges each and every admission and denial made in response to the paragraphs identified therein with the same force and effect as if set forth herein at length.

333.    That, at all times material hereto, the above-named parties entered into binding legal agreement for international airfare transportation of the above-named Plaintiff by the above-named Defendant from Chicago, Illinois to Moscow, Russian Federation via connecting stop at Copenhagen Denmark, and than on August 24, 2014 back to the USA via connecting stop at Copenhagen, Denmark.

ANSWER:    As an answer to paragraph 333 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

334.    That at all times material hereto the above-referenced contract incorporated the following defendant's duties:

(a)    "duty to compensate" for delay or cancellation of the international airfare as promulgated by Art. 19 of the Montreal Convention, as incorporated by Art. 9.3.1. and Art. 15.1.1 of defendant's General Condition of Carriage;

ANSWER:    As an answer to paragraph 334(a) of the First Amended Class Action

Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

(b) "duty to compensate" for delay or cancellation of the international airfare as promulgated by Art. 5 of EU 261/2004, as incorporated by Art. 15.4 of defendant's General Condition of Carriage;

ANSWER: As an answer to paragraph 334(b) of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

(c) "duty to render care" as set forth in Art 9 of the EU Regulation261/2004, as incorporated by Art. 9.3 of defendant's General Condition of Carriage;

ANSWER: As an answer to paragraph 334(c) of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

(d) "duty to inform" as set forth by Art 14 of the EU Regulation 261/2004, as incorporated by Art. 2.4 of defendant's General Condition of Carriage;

ANSWER: As an answer to paragraph 334(d) of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

335. That, at all times material hereto, all the above-identified contractual legal duties were voluntarily assumed and self-imposed by S.A.S.

ANSWER: As an answer to paragraph 335 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

336.    That, at all times material hereto, all the above-numerated legal duties were incorporated in defendant's Contract of Carriage published by SAS via http://www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf .

ANSWER:    As an answer to paragraph 336 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

337.    That, at all times material hereto, all the above-numerated legal duties were incorporated in defendant's Tariff filed by defendant with pertinent governmental agencies.

ANSWER:    As an answer to paragraph 337 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

338.    That, at all times material hereto, said legal duty was published on defendant's home page titled as "General Condition of Carriage" http:// http://www.flysas.com/upload/CoC/CoC_Eng_February_2013.pdf.

ANSWER:    As an answer to paragraph 338 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

339.    That said contract for international airfare transportation and carriage  was formed and entered into at the place of plaintiff's domicile at Chicago, Illinois, USA.

ANSWER:    As an answer to paragraph 339 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

340.    That at all times material hereto the above-named defendant breached said contractual voluntarily assumed and self-imposed contractual duties by:

(a)        refusing to compensate the Plaintiff for delay on departure of flight No. 943 on or about August 24, 2013 in contravention of Art. 15.1.1 of its Contract of Carriage;

ANSWER:    As an answer to paragraph 340(a) of the First Amended Class Action

106

Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

(b)       failing to adequately inform the Plaintiff in regard to cause of such scheduling irregularities as well as subsequent changes of their travel itineraries; and

ANSWER:    As an answer to paragraph 340(b) of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

(c)       failing to tender its contractual performance of rendition of meaningful and suitable assistance of local lodging, food and pier dime expenses to the above-named plaintiff while he was estranged at Copenhagen International Airport for more than 5 days due to delay on departure of defendant's flight No. 943.

ANSWER:    As an answer to paragraph 340(c) of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

341.    That by failing to tender it contractual performance of duties set forth by Art. 5, 6, 7, 9 and 14 of EU 261/2004, as incorporated by SAS Condition of International Carriage, the above-named defendant perpetrated material breach of pertinent contractual covenants, which were incorporated into said contractual agreement for international airfare transportation of the above-named plaintiff on August 24, 2014 from Copenhagen to Chicago, USA.

ANSWER:    As an answer to paragraph 341 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

342.    That this breach of self - imposed voluntary contractual duties by the above-named defendant on August 24, 2014 was a material breach of essential condition precedent imposed upon the above-named defendant by operation of parties contract of carriage in lieu of international airfare transportation.

ANSWER:    As an answer to paragraph 342 of the First Amended Class Action

Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

343.    That alternatively said breach of contractual duties by the above-named defendant was material breach of essential ex contractu condition subsequent imposed upon the above-named defendant by operation of said contract.

ANSWER:    As an answer to paragraph 343 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

344.    That, at all times material hereto, the above-named plaintiff duly performed all conditions and covenants required to be performed by said contract o carriage in lieu of international airfare transportation.

ANSWER:    As an answer to paragraph 344 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

345.    That as a direct and proximate cause of said material breach of contract perpetrated by the above-named defendant on August 24, 2014, the above-named plaintiff incurred actual, general, special, incidental and consequential damages in the sum to be determined at trial.

ANSWER:    As an answer to paragraph 345 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

346.    That pursuant to Wolens doctrine, as recently affirmed by our supreme court in Ginsberg doctrine, the common law cause of action ex contractu against the above-named defendant is not preempted by the Airline Deregulation Act, (ADA), 49 USC § 41713 (2010)(Public Law No. 95-504). [98]

ANSWER:    As an answer to paragraph 346 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided

---

[98] Wolens,115 S.Ct. at 817, 513 U.S. at 219, 130 L.Ed.2d at 715 (U.S.Ill.,1995)(holding that Airline Deregulation Act did not preempt action against airline based on state contract law).

by the Court.

347.     That pursuant to binding legal authority of the Narkiewicz-Laine doctrine, the common law cause of action for breach of contract is not preempted by the Montreal Convention.[99]

ANSWER:     As an answer to paragraph 347 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

348.     That due to failure to answer pre-suit settlement claims on the part of all the above-named defendant, the above-named plaintiffs are entitled to reasonable attorneys fees pursuant to Article 22(6) of Montreal Convention, [100]  incorporating so- called "settlement inducement provision" contained in Article 22(4) of Hague Protocol amendments. Id.

ANSWER:     As an answer to paragraph 348 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

349.     That the Hague Protocol as ratified by the U.S. Senate on July 31, 2002 is supreme law of this land, thereby establishing independent procedure for award of attorneys fees in the matter sub judice. [101]

---

[99] Narkiewicz-Laine, 587 F. Supp. 2d at 888 (N.D. Ill. 2008)(holding that "claims may be brought under the Montreal Convention or they may be brought 'in contract or in tort or otherwise' but such claims are subject to an affirmative defense based on the conditions and limits of liability set out in the Montreal Convention.") (quoting Montreal Convention, art. 29); accord Cosgrove-Goodman., No. 10 CV 1908, 2010 WL 2197674, at *3 (N.D. Ill. June 2, 2010).

[100] Montreal Convention preserved the so-called "settlement inducement provision" contained I n Article 22(4) of the Hague Protocol amendments.  To that extent settlement inducement provision" contained in Article 22(4) of the Hague Protocol amendments was codified in the Article 22(6) of the Montreal Convention, which states as follows:

> "The limits prescribed in Article 21 and in this Article shall not prevent the court from awarding, in accordance with its own law [100], in addition, the whole or part of the court costs and of the other expenses of the litigation incurred by the plaintiff, including interest.  The foregoing provision shall not apply if the amount of the damages awarded, excluding court costs and other expenses of litigation, does not exceed the sum which the carrier has offered in writing to the plaintiff within a period of six months from the date of the occurrence causing the damage, or before the commencement of the action, if that is later."

[101] http://www.gpo.gov/fdsys/pkg/CDOC-107tdoc14/html/CDOC-107tdoc14.htm

ANSWER:    As an answer to paragraph 349 of the First Amended Class Action Complaint, denies the allegations therein and otherwise refers all questions of law to be decided by the Court.

**AFFIRMATIVE DEFENSES**

Defendant SCANDINAVIAN AIRLINES SYSTEM (incorrectly sued as SAS GROUP D/B/A SCANDINAVIAN AIRLINES and hereafter "SAS"), by and through its attorneys, Bartholomew J. Banino of Condon & Forsyth LLP and Joseph F. Spitzzeri of Johnson & Bell, Ltd., pleading in the alternative and without prejudice to the denials contained in this Answer, and for its Affirmative Defenses herein states as follows:

**AS AND FOR A FIRST AFFIRMATIVE DEFENSE**

350.    As the claims of plaintiff and/or the purported class members arise out of delay in roundtrip international transportation from the United States to Moscow, Russia, the rights and liabilities of the parties in this action are governed exclusively by the Montreal Convention, which preempts all state law causes of action.

351.    Accordingly, Counts Two, Three, Four and Five of plaintiff's individual claims for relief, and Counts 2, 3, 4, 5, 6, and 7 of plaintiff's class claims, fail to state a claim upon which relief can be granted.

**AS AND FOR A SECOND AFFIRMATIVE DEFENSE**

352.    The transportation out of which the subject matter of this action arose was "international carriage" within the meaning of the Montreal Convention, and the rights and liabilities of the parties in this action are governed by the provisions of said Montreal Convention.

110

353.    Pursuant to Article 17 of the Montreal Convention, SAS is not liable to plaintiff and/or the purported class members because the alleged damage was not caused by an "accident" on board the aircraft or in the process of embarking or disembarking, as plaintiff and/or the purported class members alleges damages arising solely out of the delayed departure of Flight SAS 943.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

354.     Defendant SAS repeats, reiterates and realleges each and every allegation in paragraph 354 of this First Amended Class Action Answer with the same force and effect as if herein set forth in full.

355.     Pursuant to Article 19 of the Montreal Convention, defendant SAS is not liable for the damage caused by plaintiff's and/or the alleged class members' delay because SAS took all measures that could reasonably be required to avoid the damage.

356.     Specifically, upon information and belief, the subject aircraft operating as Flight SAS 943 experienced an operational irregularity with a fuel tank indication and immediate repairs were performed, resulting in an unavoidable delayed departure.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

357.     Defendant SAS repeats, reiterates and realleges each and every allegation in paragraph 357 of this First Amended Class Action Answer with the same force and effect as if herein set forth in full.

358.     Pursuant to Article 19 of the Montreal Convention, defendant SAS is not liable to plaintiff and/or the purported class members for any non-economic damages, as alleged in ¶ 265 of the First Amended Class Action Complaint ("loss of benefit of his [*sic*] travel bargain, inconvenience, physical discomfort, pain, exhaustion, loss of time, frustration of purpose to travel, anxiety, frustration, uncertainty, loss of use of money").  *See, e.g., Lee v. Am. Airlines*, 355 F.3d 386 (5th Cir. 2004) (holding that plaintiff's claims of inconvenience and mental anguish resulting from the delay of her flight were not compensable under the Montreal Convention); *Vumbaca v. Terminal One Group Ass'n L.P.*, 859 F. Supp. 2d 343, 367-68 (E.D.N.Y. 2012) ("The Supreme Court has indicated that Article 19 covers harms that are distinct from "personal injuries" recoverable under Article 17."); *see also Giannopoulos v. Iberia*

*Lineas Aereas de Espana, S.A.*, No. 11 C 775, 2011 WL 3166159, at *5 (N.D. Ill. July 27, 2011) (standardized compensation such as that set forth by Regulation (EC) 261 constitutes non-compensatory damages prohibited by Article 29 of the Montreal Convention).

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

359. Defendant SAS repeats, reiterates and realleges each and every allegation in paragraph 359 of this First Amended Class Action Answer with the same force and effect as if herein set forth in full.

360. Pursuant to Article 15.1.1 of SAS General Conditions of Carriage: ". . . Carriage hereunder is subject to the provisions relating to the liability established by the [Montreal] Convention . . .."

361. Pursuant to Articles 20, 21 and 22 of the Montreal Convention, as well as SAS General Conditions of Carriage as set forth in the relevant contract of transportation, defendant SAS is not liable to plaintiff and/or the purported class members, or, in the alternative, SAS's liability is limited.

362. As plaintiff's claims arise out of delay in international transportation, SAS's liability to plaintiff and/or the purported class members, if any, is limited to 4,694 Special Drawing Rights in accordance with Article 22 of the Montreal Convention.

363. To the extent that plaintiff's and/or the purported class members alleged damages occasioned by the delay of SAS Flight 943 "was caused or contributed to by the negligence or other wrongful act or omission" of plaintiff and/or the purported class members, SAS is entitled to limit its liability, if any, to the extent of any such negligence or other wrongful act or omission.

364.    To the extent that the Court should find Article 17 of the Montreal Convention applicable, SAS is entitled to limit its liability in accordance with Article 21 thereof.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

365.    To the extent plaintiff and/or the purported class members alleges a cause of action under Regulation (EC) 261, such a cause of action is preempted by the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

366.    SAS is not liable to plaintiff and/or the purported class members because SAS complied with all applicable laws and regulations.

### AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

367.    Plaintiff and/or the purported class members have failed to meet the requirements of Rule 23 of the Federal Rules of the Civil Procedure for certification of a class action for, without limitation, the following reasons:

a)  The types of claims alleged by plaintiff are matters in which individual questions predominate and, accordingly, are not appropriate for class treatment;

b)  Plaintiff's claims are not typical of the proposed class and plaintiff cannot fairly and adequately represent the interests of other potential plaintiffs;

c)  The named plaintiff lack standing to raise some or all of the claims of the purported class members;

d)  Plaintiff's claims do not meet the threshold requirements for class action treatment; and

e)  A class action is not the superior method for the fair and efficient adjudication of the controversy.

### AS AND FOR A NINTH AFFIRMATIVE DEFENSE

368.    SAS reserves its right to add those affirmative defenses which it deems necessary to its defenses during or upon the conclusion of investigation and discovery.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

369.     Plaintiff's class-action claims must be dismissed in their entirety because such claims were mooted by SAS's offer of full request for relief that preceded any motion for class certification.  *See Damasco v. Clearwire Corp.*, 662 F.3d 891, 895-297 (7th Cir. 2011); *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994).

## AS AND FOR A ELEVENTH AFFIRMATIVE DEFENSE

370.     The Complaint should be dismissed pursuant to the doctrine of *forum non conveniens* and for lack of proper venue.

## AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

371.     Certain of Plaintiffs' and/or the purported class members' claims may be preempted, either explicitly or implicitly, by foreign law.

**WHEREFORE,** defendant SCANDINAVIAN AIRLINES SYSTEM demands judgment dismissing the First Amended Class Action Complaint of ELLEN KOGAN in its entirety or, alternatively, judgment limiting SAS's liability to 4,694 Special Drawing Rights in accordance with Article 22 of the Montreal Convention.

JOHNSON & BELL, LTD.


By: /s/  Joseph F. Spitzzeri, Esq.
        33 West Monroe Street
        Suite 2700
        Chicago, Illinois 60603-5404
        (312) 372-0770

        -and-

CONDON & FORSYTH LLP
7 Times Square
New York, New York 10036
(212) 490-9100

*Attorneys for Defendant*
*SCANDINAVIAN AIRLINES SYSTEM*