UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELLEN KOGAN, | ) | |
| | ) | |
| Plaintiff, | ) | 14 C 9551 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| SCANDINAVIAN AIRLINES SYSTEM, a foreign corporation | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**M<small>EMORANDUM</small> O<small>PINION AND</small> O<small>RDER</small>**

Ellen Kogan sued Scandinavian Airlines System ("SAS") for breach of contract and violation of the Convention for the Unification of Certain Rules for International Carriage by Air ("Montreal Convention") after her flight from Copenhagen, Denmark, to Chicago was delayed by several hours. Doc. 22. Kogan initially sought to represent a class, Doc. 25, but she later abandoned her class claims, Doc. 99; Doc. 129 at ¶ 1; Doc. 140-3 at ¶ 1. Kogan also tried to add as a second plaintiff an individual who suffered delays on other SAS flights, Doc. 51, but the court denied her request, Doc. 64 (Bucklo, J.). SAS now moves for partial summary judgment on most of Kogan's claims. Doc. 128. The motion is granted.

**Background**

The facts are set forth as favorably to Kogan as the record and Local Rule 56.1 permit. *See Canen v. Chapman*, 847 F.3d 407, 412 (7th Cir. 2017). On summary judgment, the court must assume the truth of those facts, but does not vouch for them. *See Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015).

Kogan is an Illinois resident. Doc. 129 at ¶ 12; Doc. 140-3 at ¶ 12. SAS is an international airline based in Sweden. Doc. 129 at ¶ 13; Doc. 140-3 at ¶ 13. On August 24,

1

2014, Kogan was scheduled to fly from Copenhagen to Chicago on SAS Flight No. SK 943. Doc. 129 at ¶ 3; Doc. 140-3 at ¶ 3. Flight 943's arrival in Chicago was delayed by approximately five hours. Doc. 129 at ¶ 3; Doc. 140-3 at ¶ 3.

While delayed at the Copenhagen airport, Kogan spent $285 on sanitary napkins, water, and two meals. Doc. 129 at ¶ 10 (asserting this fact, with proper citation to Kogan's deposition testimony); Doc. 129-1 at 43, p. 63 (Kogan's testimony, supporting the assertion); Doc. 140-3 at ¶ 10 (denying the assertion, with citation to portions of the deposition that do not contradict it). Kogan also gave $150 in cash to another traveler after borrowing his cell phone to notify acquaintances in the United States of the delay. Doc. 129 at ¶ 10 (asserting that Kogan spent $150 for "international telecommunication expenses," with proper citation to her deposition testimony); Doc. 129-1 at 40, pp. 50-51 (Kogan's testimony, supporting the assertion); Doc. 140-3 at ¶ 10 (denying the assertion, with citation to portions of the deposition that do not contradict it). The delay also caused Kogan to miss a family reunion, for which she had already incurred $200 in prepaid expenses. Doc. 129 at ¶ 10 (asserting this fact, with proper citation to Kogan's deposition testimony); Doc. 129-1 at 44, pp. 66-67 (Kogan's testimony, supporting the assertion); Doc. 140-3 at ¶ 10 (denying the assertion, with citation to portions of the deposition that do not contradict it). Upon arriving at O'Hare International Airport in Chicago, Kogan paid $60 for a taxi home. Doc. 129 at ¶ 10 (asserting this fact, with proper citation to Kogan's deposition testimony); Doc. 129-1 at 42, p. 58 (Kogan's testimony, supporting the assertion); Doc. 140-3 at ¶ 10 (denying the assertion, with citation to portions of the deposition that do not contradict it). Kogan claims these expenses, which total $695, as economic damages stemming from the delay. Doc. 129 at ¶ 9 (asserting this fact, with proper citation to Kogan's interrogatory response); Doc. 129-1 at 81 (Kogan's interrogatory response, supporting the assertion); Doc.

140-3 at ¶ 9 (denying the assertion, with citation to portions of Kogan's deposition that do not contradict it). Although Kogan has no documentation of these expenses, Doc. 129 at ¶ 11; Doc. 140-3 at ¶ 11, SAS does not contest them.

In addition, Kogan asserts that the delay of Flight 943 caused her to miss a business meeting, harming her future employment prospects. Doc. 129-1 at 45-46, pp. 70-74; Doc. 140-4 at ¶¶ 1-3. According to her testimony, the meeting was to take place at 8:00 p.m. on the night of her scheduled arrival (a Sunday), with an individual whom she refused to identify, so that she could sign an employment contract worth $45,000 per year. Doc. 129-1 at 45, pp. 70-72. Although she claimed to have already interviewed for, had extensive discussions about, and even been offered the job in question, Kogan has no written job offer or any other corroborating documents. *Id*. at 46, pp. 73-74. Kogan testified that, because she missed the Sunday night meeting, somebody else got the job instead. *Id*. at 46, p. 74. Kogan also testified that she felt ill and vomited several times during the delay, the flight to Chicago, and the days that followed, causing her to miss three days of work. *Id*. at 34, p. 25; *id*. at 44-45, pp. 68-69; *id*. at 48, p. 84; Doc. 140-4 at ¶ 4.

**Discussion**

Kogan brings a direct claim for compensation under the Montreal Convention, as well as a claim under her airfare contract with SAS, which she alleges promised her compensation according to the terms of the Montreal Convention and/or European Union Regulation (EC) No. 261/2004 ("EU 261"). Doc. 22. SAS's motion for partial summary judgment seeks (1) a ruling that Kogan is not entitled to any compensation under the terms of EU 261 and (2) a ruling limiting her potential compensation under the Montreal Convention to $695. Doc. 128. SAS

does not at this stage dispute that Kogan is entitled to compensation under the Montreal Convention, either directly or via the Convention's incorporation into her airfare contract.

**I.      EU 261**

EU 261, a regulation setting forth a framework for ensuring that passengers are adequately compensated for flight delays and cancellations, is not directly enforceable in United States courts. *See Baumeister v. Deutsche Lufthansa, AG*, 811 F.3d 963, 966 (7th Cir. 2016); *Volodarskiy v. Delta Airlines, Inc.*, 784 F.3d 349, 357 (7th Cir. 2015) ("[W]e conclude that EU 261 is not judicially enforceable outside the courts of EU Member States."). The Seventh Circuit has left open the question whether an airline can incorporate EU 261 by reference into its airfare contract with a passenger, thereby voluntarily assuming an enforceable duty to comply with its terms. *See Baumeister v. Deutsche Lufthansa, AG*, 811 F.3d 963, 966 (7th Cir. 2016) ("We'll assume for purposes of this appeal that Baumeister can indeed bring a breach of contract suit to enforce [EU 261], although it can be questioned how a promise to abide by it could be enforced in U.S. courts given our holding in *Volodarskiy* that the regulation can be enforced only in European courts or agencies."). It is not necessary to resolve that question here because even if EU 261 could be rendered enforceable in that way, SAS's airfare contract with Kogan does not attempt to incorporate EU 261 by reference.

Kogan's contract claims are governed by Illinois law because she filed suit in a district court located in Illinois and neither party argues choice of law. *See Ryerson Inc., v. Fed. Ins. Co.*, 676 F.3d 610, 611 (7th Cir. 2012). To determine whether a contract incorporates by reference another document, the touchstone is the parties' intent. *See 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir. 2002) ("For a contract to incorporate all or part of another document by reference, the reference must show an intention to incorporate the document and

4

make it part of the contract."); *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 664 (7th Cir. 2002) ("The contract must show an intent to incorporate the other document and make it a part of the contract itself."); *Dochak v. Polskie Linie Lotnicze LOT S.A.*, 189 F. Supp. 3d 798, 802 (N.D. Ill. 2016) ("The party seeking to enforce the terms of the allegedly incorporated document must show an intention to incorporate the document and make it a part of the contract.") (internal quotation marks and ellipsis omitted). The intent to incorporate by reference must be discernible within the contract's four corners, *see Rosenblum*, 299 F.3d at 664, and the incorporation must be "clear and specific," *188 LLC*, 300 F.3d at 736. "Mere reference to another contract or document is not sufficient to incorporate its terms into a contract." *Rosenblum*, 299 F.3d at 666.

Kogan contends that SAS incorporated EU 261 into its airfare contract through Paragraph 17.2 of the Conditions of Carriage. Doc. 140 at 8-11. Paragraph 17.2 reads in its entirety:

> **17.2 Limitation of Actions**
>
> Any right to Damages according to the [Montreal] Convention shall be extinguished if an action is not brought within two years of the date of arrival at destination, or the date on which the aircraft was scheduled to arrive, or the date on which the Carriage stopped.
>
> All other actions including actions relating to passenger rights subject to Regulation (EC) 261/2004 shall be limited in accordance with national law.
>
> The method of calculating the period of limitation shall be determined by the law of the court where the case is heard.

Doc. 129-1 at 26. Also relevant is Article 9, which sets forth terms governing "delays, cancellation of flights and closing down of routes." *Id*. at 17. One of the terms covering delays is Paragraph 9.3.4, which states:

> If your flight is delayed 3 hours or more and if the delay is not caused by Extraordinary Circumstances which could not have been avoided if all reasonable measures had been taken you will be entitled to compensation if provided by applicable law. For travel within EU and from a non-EU country into EU applicable law is Regulation (EC) 261/2004.

5

*Id*. at 18-19.

Paragraph 17.2 reflects no intent to incorporate EU 261 by reference. It merely acknowledges the possibility that some passengers may have "rights subject to [EU 261]," and then explains that, if any such passenger goes to court to assert those rights, the relevant "national law" will dictate the statute of limitation. Beyond mentioning EU 261 in that way, Paragraph 17.2 contains nothing to suggest that the parties intended to incorporate that body of law by reference. *Compare Rosenblum*, 299 F.3d at 665-66 (holding that a contract did not incorporate another agreement by reference where it "identifie[d]" the other agreement but was "silent on incorporation"), *with Polinovsky v. Deutsche Lufthansa, AG*, 2012 WL 1080415, at *3 (N.D. Ill. Mar. 30, 2012) (holding that EU 261 was incorporated by reference where the airline's contract mentioned EU 261 *and* "included language stating its intent to provide compensation according to EU 261 regulations"). The paragraph's placement in Article 17, "Time limitation on claims and actions," Doc. 129-1 at 26, reinforces the conclusion that this provision was not meant to define the parties' substantive rights.

Airfare contracts that *have* been found to incorporate EU 261 by reference provide instructive examples of the sort of specific language that SAS's airfare contract might have used if incorporation by reference had been the parties' intent. In *Polinovsky*, the contract promised: "[I]n the case of a flight cancellation or flight delay we offer assistance and compensation to the concerned passengers *according to* [EU 261]." 2012 WL 1080415, at *3 (alterations in original) (emphasis added). And in *Giannopoulos v. Iberia Líneas Aéreas de España, S.A.*, 2011 WL 3166159 (N.D. Ill. July 27, 2011), the contract promised compensation "[a]s established in [EU 261]." *Id*. at *1 (alterations in original). The airfare contract here contains no such language.

Paragraph 9.3.4 is further evidence that the contract does not incorporate EU 261 by reference. Unlike Paragraph 17.2, Paragraph 9.3.4 *is* in the part of the contract that defines the parties' substantive rights, and it informs passengers that, in the event of an extended delay, they will be compensated "if provided by applicable law." Not "*as* provided"—but "*if* provided." This does not contractually promise any particular compensation for delays; instead, it simply gives passengers notice that an extrinsic body of law may independently provide compensation. *See Onoh v. Nw. Airlines, Inc.*, 613 F.3d 596, 600 (5th Cir. 2010) (holding that a body of international law was "not expressly incorporated into" an airfare contract, explaining that concluding otherwise would be "a large stretch from … simple references to the need to comply with all applicable law"); *Dochak*, 189 F. Supp. 3d at 803 (holding that the statement, "passengers are entitled to rights provided for in" EU 261, "does not plausibly incorporate EU 261 but instead explains that those rights are defined and subject to the rules of EU 261"); *Polinovsky v. British Airways, PLC*, 2012 WL 1506052, at *3 (N.D. Ill. Mar. 30, 2012) (holding that an airline's promise to compensate passengers "if required to do so by any law which may apply" did not incorporate EU 261 by reference).

Moreover, the next sentence of Paragraphs 9.3.4 gives passengers notice of *when* EU 261 may be that extrinsic body of law: when they are traveling "within EU" or "from a non-EU country into EU." Neither of those situations describes Kogan's flight from Copenhagen to Chicago, so even if Paragraph 9.3.4 were meant to incorporate EU 261 by reference for *some* passengers, Kogan would not be among them. *See Wilson v. Career Educ. Corp.*, 729 F.3d 665, 678-79 (7th Cir. 2013) (Hamilton, J., concurring in part and dissenting in part) (applying "the principle[] that … the expression of one or a few specific items … often implies the exclusion of

others" to interpret a contract under Illinois law). Kogan therefore may not seek compensation under the terms of EU 261.

## II. Montreal Convention

SAS also asks the court to grant partial summary judgment limiting Kogan's damages under the Montreal Convention to $695. Article 19 of the Montreal Convention permits recovery for provable economic damages, but not emotional or physical injuries. *See Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1170 (11th Cir. 2014) ("The parties agree that Article 19 permits the payment of economic damages but does not contemplate compensation for emotional loss or physical injury."); *Dochak*, 189 F. Supp. 3d at 807 ("Although the Seventh Circuit has not considered the question, Courts in other circuits have held that Article 19 permits the payment of economic damages from a delayed flight but disallows compensation for emotional loss, physical injury, or inconvenience.") (collecting cases). In July 2016, the parties agreed that Kogan would no longer pursue any damages based on income loss or illness. Doc. 100; Doc. 141 at 1. Alongside her summary judgment response, Kogan moved for leave to withdraw from that stipulation. Doc. 141. The court denied her motion on the grounds that it was untimely, offered no explanation whatsoever for her delay in bringing it, and would prejudice SAS if granted. Doc. 144. Accordingly, Kogan has waived any right to recover damages beyond $695—the value of her remaining asserted damages—and the court will enforce the parties' stipulation limiting damages under the Montreal Convention to that amount.

## Conclusion

For the foregoing reasons, SAS's motion for partial summary judgment is granted. SAS is awarded judgment on Kogan's contract claims insofar as they seek compensation according to

the terms of EU 261, and Kogan may seek no more than $695 on her Montreal Convention-related claims.

May 23, 2017

_____
United States District Judge